# WILMERHALE

May 12, 2025

**Debo P. Adegbile**

+1 212 295 6717 (t)
+1 212 230 8888 (f)
debo.adegbile@wilmerhale.com

**CONFIDENTIAL**

Jamie Storey
Federal Investigator
US EEOC-PDO
801 Market Street, Suite 1000
Philadelphia, PA 19107-3127

    Re:  **Commissioner's Charge No. 530-2024-01963**

Dear Jamie Storey:

    On behalf of the Trustees of the University of Pennsylvania ("Penn"), I write in response to the Commission's requests for information in the above-referenced matter, as set forth in your March 27, 2025 letter, addressed to Wendy White, Senior Vice President and General Counsel of the University of Pennsylvania and Penn Medicine.

    This letter is intended to serve as Penn's response to Requests Nos. 1, 4, 5, and 7. As part of today's responses, we are also producing documents marked Penn_EEOC_00000695 to Penn_EEOC_00000823.

    Some of the material we are producing today contains nonpublic, confidential, and private information. Penn claims an exemption from disclosure for the produced material under all applicable statutes, rules, and regulations, including, but not limited to, exemptions under the Freedom of Information Act (FOIA). *See, e.g.*, 5 U.S.C. § 552(b)(3), (b)(4), and (b)(6). Disclosure outside of the EEOC may also be prohibited under the Trade Secrets Act (18 U.S.C. § 1905), and the Privacy Act (5 U.S.C. § 552a).

    Finally, the production of these materials is not intended to, and does not, waive any applicable privilege, including the attorney-client privilege, or other legal basis for protecting documents and information from disclosure. If it were found that any of the documents contain otherwise privileged matters, such disclosure would be inadvertent, and Penn reserves the right to request the return of any such document and all copies and require that it not be referenced in any EEOC documentation of the investigation.

Attachment R

**WILMERHALE**

Jamie Storey
May 12, 2025
Page 4

      2. <u>Spring 2024 Division of Public Safety Complaint to Penn's Office of Equal Opportunity Programs and Center for Community Standards and Accountability</u>

On February 26, 2024, Penn's Department of Public Safety (DPS), Special Services, alerted the Office of Student Affairs and Penn's Office of Community Standards and Accountability (CSA), that it had received an online harassment report from a faculty member about Instagram posts made by an account named "penn.against.the.occupation," which was associated with a student group that called itself Penn Students Against the Occupation (PSAO). *See* Penn_EEOC_00000823 (produced in response to Request No. 4); Penn_EEOC_00000807. Specifically, the account had posted a group picture of faculty members who participated in a trip to Israel, and additional pictures of five individual Penn faculty with captions stating their names, positions, and the phrase "Supports Scholasticide." Penn_EEOC_00000807 to Penn_EEOC_00000808. DPS alerted CSA because CSA is responsible for student discipline, and there was a question as to whether the student group violated Penn's Code of Student Conduct. The DPS complaint was investigated by investigators at CSA and the Office of Equal Opportunity Programs (OEOP).[4]

The Office of Student Affairs spoke to a PSAO student contact about removing the post. The post was removed in the evening on February 26. Penn_EEOC_00000808.

CSA and OEOP investigated whether the incident violated Penn student conduct rules, conducting interviews with the Director of Special Services at DPS, the Executive Director of the Office of Student Affairs, the PSAO student representatives, and the faculty members affected by the incident. Penn_EEOC_00000807. The investigators were unable to obtain information on PSAO membership and group operations, including the persons responsible for the social media accounts and whether they were affiliated with Penn, because the group had been using an anonymous messaging system for communications. The group's anonymity violated rules for Penn registered groups, and as a result, Penn deregistered PSAO in April 2024. PSAO's deregistration means that the group is no longer able to access the privileges afforded to registered student organizations, such as the eligibility to reserve university space and access to funds from the University's Common Funding Application for undergraduate groups. The investigators were unable to make conclusions as to whether specific students associated with the group committed other policy violations due to the anonymity of the group. Penn_EEOC_00000812 to Penn_EEOC_00000813.

Separate from the CSA and OEOP investigation, DPS reached out to the faculty members who were the subject of the Instagram posts. DPS assisted faculty members in removing private information from the Internet as a safety precaution, provided additional security for the faculty

---

[4] None of the faculty subjects of the Instagram posts submitted a complaint about the student group to CSA.

Attachment R

WilmerHale

Jamie Storey
May 12, 2025
Page 5

members' classes the week of the incident, and reached out to children of faculty members who attended Penn to provide support.  Penn_EEOC_00000808 to Penn_EEOC_00000810.

DPS also investigated whether the Instagram posts may have violated Pennsylvania law and determined that they did not because they had used publicly available pictures of the faculty members and there had not been harassment or cyberbullying of the faculty members involved. DPS reported the incident to Instagram as a potential violation of its rules.[5] Penn_EEOC_00000809.

### 3. Fall 2024 Faculty Complaint to Dean of School of Social Policy and Practice

In November 2024, a professor in the School of Social Policy and Practice complained to the School's Dean about four incidents involving one student who was in a course that the professor taught.

The first incident occurred in early October 2024 when the student sent an e-mail through Canvas, a learning management system, to members of a different class, which was not taught by the complaining professor, regarding a screening of a movie described as a "historical drama film about a Palestinian girl's coming-of-age experience during the Nakba, the 1948 displacement of Palestinians from their homeland."  In response to the incident, School administrators, the Co-Directors of Penn's Office of Religious and Ethnic Interests (OREI) and the CSA had conversations with the student about appropriate communications on Canvas, and the student and the School of Social Policy and Practice engaged in a facilitated process through Restorative Practices at Penn.

The second incident occurred later in October 2024, when the complaining professor instructed their class to make a presentation on a vulnerable population of children and the clinical intervention they need.  According to the Dean, to whom the incident was reported, the student chose to present on children disabled by violence in Palestine.  During the student's presentation, the professor paused the presentation and left the class, and when they returned the student was no longer there.  Following the incident, the professor's Dean arranged for the student to complete their coursework as an independent study with another faculty member.

The third incident occurred in early November 2024, when the student wrote in chalk outside the School: "Prof. [name withheld] discriminates against students."  The professor's

---

[5] The Office of General Counsel reached out to Instagram and requested Instagram remove "Penn" from the Instagram account's name, explaining to Instagram that it is against Penn's policies to use its name in manner that implies institutional endorsement of a particular cause.  Instagram denied Penn's request, stating that the name did not violate Instagram policies or infringe on trademark rights.