# BEFORE THE UNITED STATES

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| **Commissioner Andrea Lucas** | ) | |
| | ) | |
| Charging Party | ) | |
| | ) | **CHARGE NO.  530-2024-01963** |
| v. | ) | **SUBPOENA NO. PA-25-07** |
| | ) | |
| **The Trustees of the University of Pennsylvania** | ) | |
| | ) | |
| Respondent. | ) | |

---

**PETITIONER**

Respondent

**PETITIONER'S ATTORNEYS**

Debo P. Adegbile
WILMER CUTLER PICKERING HALE
AND DORR, LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

## DETERMINATION REGARDING PETITION TO
## REVOKE OR MODIFY SUBPOENA PA-25-07

## I.  INTRODUCTION

This matter comes before the Equal Employment Opportunity Commission ("the Commission" or "EEOC") on The Trustees of the University of Pennsylvania's (Respondent) Petition to Revoke or Modify Subpoena in the above-referenced investigation. Subpoena No. PA-25-07 (the Subpoena) was issued pursuant to authority conferred by the Title VII of the Civil Rights Act of 1964, as amended ("Title VII") (*see, e.g.,* 42 U.S.C. §§ 2000e-5(b), 2000e-6(e), 2000e-8(a), 2000e-9 and 29 C.F.R. § 1601.16).  Having considered Respondent's Petition to Revoke or Modify Subpoena, the Commission finds that the subpoena should be modified in part with respect to Request No. 2 and the remainder of the subpoena should be enforced.

Attachment S

## II. BACKGROUND

The Commission's Philadelphia District Office ("PDO" or "the Commission") is investigating a Charge of Discrimination filed by then-Commissioner Andrea Lucas. The Charge alleges that Respondent is "subjecting Jewish faculty (including tenured, non-tenured, and adjunct professors), staff, and other employees (including, but not limited to, students employed by the university) to an unlawful hostile work environment based on national origin, religion, and/or race." In the course of the investigation, the EEOC sought from Respondent the identification of employees exposed to the alleged harassing conduct. Respondent has refused to furnish the requested information.

The Commission commenced an investigation of the Charge that revealed public displays of antisemitic behavior from at least November 2022 through the present, which escalated after October 7, 2023, throughout Respondent's campus, the entirety of which is Respondent's workplace. As a result, the PDO's requests for information, and its subsequent Subpoena, sought the identities of potential victims and witnesses to antisemitic behavior. Specifically, as part of its initial Request for Information (RFI) issued on March 27, 2025, the EEOC requested the following:

> Request No. 1:
>
> [C]omplaints by employees; including but not limited to: faculty (including, but not limited to, tenured, non-tenured, and adjunct professors), staff, and other employees (including, but not limited to, students employed by the University), of discrimination based on Jewish religion, faith, ancestry/ National Origin and/or complaints of anti-Semitism from November 1, 2022, to the present. For each complaint, produce the following information:
> >  a. First and Last name of complaining employee;
> >  b. Position title of complaining employee;
> >  c. Dates of employment of complaining employee;
> >  d. The complaint;
> >  e. The method of complaint (ie hotline, email, in-person, etc.);

Attachment S

f. Identify Respondent Official(s) by name (first and last) and position title who had a role in the investigation, disposition or outcome of the complaint;
g. What the Respondent did in response to the complaint; and,
h. Complete investigation to include witness interviews, disposition reports, corrective action issued, etc.

Request No. 5:

[A] list of all clubs, groups, organizations and recreation groups (hereinafter referred to as "organizations") related to the Jewish religion, faith, ancestry/National Origin. For each organization listed, produce the following information:
a. Name of organization;
b. Indicate if the organization is run by employees and/or volunteers;
c. Identify the organization Point of Contact by first and last name;
d. Produce the organizations Point of Contact's contact information to include phone number, email address and mailing address;
e. Produce a roster of organization members. For each member listed, indicate if they are a University employee or volunteer;
f. For employees identified on the roster, produce their last known contact information to include personal phone number, email address and mailing address; and,
g. Produce the organization's website, if applicable."

Request No. 7:

[A] list of employees in the Jewish Studies Program at the University of Pennsylvania department during the period of November 1, 2022, to the present. For each employee listed, produce the following information:
a. First and last name;
b. Position title;
c. Dates of employment;
d. Location/campus; and,
e. Last known contact information to include personal email address, phone number and mailing address.

On May 12, 2025, Respondent offered limited information in response to PDO's RFI, but declined to identify anyone who complained of discrimination (Request No. 1), citing privacy

Attachment S

concerns and its policy against identifying complainants without their consent. For Request No. 5, Respondent maintained that it was "impermissibly overbroad," irrelevant, "an unreasonable intrusion into the private lives of the members of these organizations," and then referred EEOC back to its response to Request No. 1.

On May 16, 2025, PDO issued a subpoena upon Respondent which included Request Nos. 1, 5, and 7 set forth above, renumbered as Request Nos. 1, 2 and 3, respectively, in the subpoena.[1]

---

[1] Request No. 1:

Produce complaints by employees; including but not limited to: faculty (including, but not limited to, tenured, non-tenured, and adjunct professors), staff, and other employees (including, but not limited to, students employed by the University), of discrimination based on Jewish religion, faith, ancestry/ National Origin and/or complaints of anti-Semitism from November 1, 2022, to the present. For each complaint, produce the following information:
a. First and Last name of complaining employee;
b. Position title of complaining employee;
c. Dates of employment of complaining employee;
d. The complaint;
e. The method of complaint (ie hotline, email, in-person, etc.);
f. Identify Respondent Official(s) by name (first and last) and position title who had a role in the investigation, disposition or outcome of the complaint;
g. What the Respondent did in response to the complaint; and,
h. Complete investigation to include witness interviews, disposition reports, corrective action issued, etc.

Request No. 2:

Produce a list of all clubs, groups, organizations and recreation groups (hereinafter referred to as "organizations") related to the Jewish religion, faith, ancestry/National Origin. For each organization listed, produce the following information:
       a. Name of organization;
       b. Indicate if the organization is run by employees and/or volunteers;
       c. Identify the organization Point of Contact by first and last name;
       d. Produce the organizations Point of Contact's contact information to include phone number, email address and mailing address;
       e. Produce a roster of organization members. For each member listed, indicate if they are a University employee or volunteer;
       f. For employees identified on the roster, produce their last known contact information to include personal phone number, email address and mailing address; and,
       g. Produce the organization's website, if applicable."

Request No. 3:

Produce a list of employees in the Jewish Studies Program at the University of Pennsylvania department during the period of November 1, 2022, to the present. For each employee listed, produce the following information:
       a. First and last name;
       b. Position title;
       c. Dates of employment;
       d. Location/campus; and,
       e. Last known contact information to include personal email address, phone number and mailing address.

Attachment S

Based on the limited information that Respondent did provide in its May 12, 2025 response, and EEOC's own discovery of Respondent's Task Force Report on antisemitism, PDO included additional requests in its subpoena:

> 4. Produce a list of staff and faculty members who participated in the Listening Sessions held in March 2024 as part of the University of Pennsylvania Task Force on Antisemitism (TFAS). For each staff or faculty member listed, produce the following information:
> a. First and last name;
> b. Position Title;
> c. Date of employment; and
> d. Last known contact information to include personal email address, phone number, and mailing address.

> 5. Produce all notes taken as part of the seven (7) listening sessions conducted in March 2024 as part of the University of Pennsylvania Task Force on Antisemitism (TFAS).

> 6. Produce a list of all faculty and staff members who received the University of Pennsylvania Task Force on Antisemitism's online Qualtrics survey. For each individual provide the following:
> a. First and Last name;
> b. Staff Member (Y/N);
> c. Faculty Member (Y/N);
> d. Position Title;
> e. Date of Employment;
> f. Copy all survey responses; and
> g. Last known contact information to include personal email address, phone number, and mailing address.

> 7. Produce a list of staff and faculty members who were identified in the February 26, 2024 social media post from the handle "penn.against.the.occupation" captioned "We Condemn…Any Penn faculty supporting the ongoing scholasticide in Palestine." For each staff or faculty member identified, provide the following information:
> a. First and last name;
> b. Position Title;
> c. Dates of employment;
> d. Last known contact information to include personal email address, phone number, and mailing address.

> 8. Identify the individuals who reported the "penn.against.the.occupation" February 26, 2024 social media post to the University of Pennsylvania's Division

Attachment S

of Public Safety. For each individual identified, provide the following information:

      a. First and last name;
      b. Position Title;
      c. Dates of employment;
      d. Copy of complaint; and
      e. Last known contact information to include personal email address, phone number, and mailing address.

9. Provide the complete investigation for the "Penn Students Against the Occupation" investigative report, including witness interviews, notes, disposition reports, corrective action issued, etc.

There were service problems, however, with EEOC's initial subpoena, so a new one was issued on July 23, 2025, identical to the initial one and with the service problems cured.

On July 30, 2025, Respondent filed the instant Petition to Revoke or Modify Subpoena.[2] Respondent argues that the Subpoena seeks irrelevant, private, and confidential information. Having considered Respondent's Petition to Revoke or Modify Subpoena, the Commission finds that the subpoena should be modified in part with respect to Request No. 2 and the remainder of the subpoena should enforced.

### III. DISCUSSION

An EEOC administrative subpoena should be enforced if "'the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.'" *EEOC v. C & P Tel. Co.*, 813 F. Supp. 874, 875 (D.D.C. 1993) (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S. Ct. 357, 369, 94 L. Ed. 401 (1950) (quoting *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S. Ct. 494, 90 L. Ed. 614 (1946))).

---

[2] Respondent erroneously identifies the subpoena no. as PA-25-04, the one with problematic service. The corrected subpoena is PA-25-07.

Attachment S

EEOC's investigation of the Charge at issue is authorized because it is based on a Commissioner Charge alleging discrimination that the EEOC has the authority to investigate, which Respondent does not dispute. Similarly, Respondent does not dispute that it had notice and an opportunity to object to the Subpoena requests.  At issue is Respondent's contention that it cannot comply with the subpoena requests as they seek information, which is confidential, sometimes irrelevant, and at times, contrary to law. The following discussion addresses Respondent's objections and why they are meritless.

### A. Respondent's Attempt To Shield Witness And Victim Contact Information On The Grounds Of Privacy/Confidentiality Is Unwarranted.

For Request Nos. 1[3], 4[4], 5[5], 6[6], 7[7], 8[8], and 9[9], Respondent claims confidentiality as a basis for refusing to identify the potential victims and witnesses. According to Respondent, disclosing

---

[3] Request No. 1: Produce complaints by employees; including but not limited to: faculty (including, but not limited to, tenured, non-tenured, and adjunct professors), staff, and other employees (including, but not limited to, students employed by the University), of discrimination based on Jewish religion, faith, ancestry/ National Origin and/or complaints of anti-Semitism from November 1, 2022, to the present. For each complaint, produce the following information:
　　a. First and Last name of complaining employee;
　　b. Position title of complaining employee;
　　c. Dates of employment of complaining employee;
　　d. The complaint;
　　e. The method of complaint (ie hotline, email, in-person, etc.);
　　f. Identify Respondent Official(s) by name (first and last) and position title who had a role in the investigation, disposition or outcome of the complaint;
　　g. What the Respondent did in response to the complaint; and,
　　h. Complete investigation to include witness interviews, disposition reports, corrective action issued, etc.

[4] Request No. 4: Produce a list of staff and faculty members who participated in the Listening Sessions held in March 2024 as part of the University of Pennsylvania Task Force on Antisemitism (TFAS). For each staff or faculty member listed, produce the following information:
　　a. First and last name;
　　b. Position Title;
　　c. Date of employment; and
　　d. Last known contact information to include personal email address, phone number, and mailing address.

[5] Request No. 5: Produce all notes taken as part of the seven (7) listening sessions conducted in March 2024 as part of the University of Pennsylvania Task Force on Antisemitism (TFAS).

[6] Request No. 6: Produce a list of all faculty and staff members who received the University of Pennsylvania Task Force on Antisemitism's online Qualtrics survey. For each individual provide the following:

to EEOC the identity of those who complain would discourage employees from coming forward to complain. This leaves EEOC with just Respondent's account of whatever complaint it receives and deprives EEOC of first-hand information from the witnesses.

It is well-settled that an employer's claim of privacy or confidentiality is not a valid basis on which to withhold information requested in an EEOC investigation. Indeed, Respondent has previously argued that its status as an academic institution should shield relevant information from an EEOC investigation and that a heightened showing was warranted before it was required to divulge what it deemed to be confidential information. The Supreme Court rejected this argument and reaffirmed the subpoena standards articulated above as all that is needed to warrant enforcement of an EEOC subpoena. *Univ. of Pa. v. EEOC,* 493 U.S. 182, 191 (1990). In

---

a. First and Last name;
b. Staff Member (Y/N);
c. Faculty Member (Y/N);
d. Position Title;
e. Date of Employment;
f. Copy all survey responses; and
g. Last known contact information to include personal email address, phone number, and mailing address.

[7] Request No. 7: Produce a list of staff and faculty members who were identified in the February 26, 2024 social media post from the handle "penn.against.the.occupation" captioned "We Condemn…Any Penn faculty supporting the ongoing scholasticide in Palestine." For each staff or faculty member identified, provide the following information:
a. First and last name;
b. Position Title;
c. Dates of employment;
d. Last known contact information to include personal email address, phone number, and mailing address.

[8] Request No. 8. Identify the individuals who reported the "penn.against.the.occupation" February 26, 2024 social media post to the University of Pennsylvania's Division of Public Safety. For each individual identified, provide the following information:
a. First and last name;
b. Position Title;
c. Dates of employment;
d. Copy of complaint; and
e. Last known contact information to include personal email address, phone number, and mailing address.

[9] Request No. 9: Provide the complete investigation for the "Penn Students Against the Occupation" investigative report, including witness interviews, notes, disposition reports, corrective action issued, etc.

8

Attachment S

response to Respondent's concerns about disclosing what it deemed confidential information, the

Court noted that safeguards existed to address its concerns:

> Congress did address situations in which an employer may have an interest in the confidentiality of its records. The same [42 U.S.C.]§ 2000e–8 which gives the Commission access to any evidence relevant to its investigation also makes it "unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding" under the Act. A violation of this provision subjects the employee to criminal penalties.

*Id.* at 192. Whether addressing peer review documents underlying a tenure decision -- at issue in

the above case, or personnel contact information underlying harassment allegations -- at issue

here, the same result applies. Respondent cannot be the gatekeeper between the EEOC and

potential witnesses to and victims of harassment. *See, e.g., EEOC v. AAM Holding Corp,* 736 F.

Supp. 3d 186, 192 (S.D.N.Y 2024) (rejecting employer's argument in a class harassment case

that employee privacy considerations should allow it to withhold their contact information);

*EEOC v. MTV Food, Inc.,* 2024 WL 4164507, *5 (S.D.N.Y. Sept. 12, 2024) (same, and noting

that the employer failed to address the Supreme Court's decision in *Univ. of Pa. v. EEOC*);

*EEOC v. Alliance Residential Co.*, 866 F. Supp.2d 636, 645 (W.D. Tex. 2011) (rejecting

employer's privacy argument in an ADA class case in which the EEOC requested employees'

medical and contact information and noting the statutory safeguards highlighted by the Supreme

Court in *Univ. of Pa. v. EEOC).*

    Respondent fares no better in arguing that complaints of antisemitism from employees

are protected from disclosure by Family Educational Rights and Privacy Act ("FERPA"), 20

U.S.C. §1232g(A)(4)(a), simply because they also happen to be enrolled as students. First, the

subpoenaed information seeks particulars relating to the complainant (name, job title, dates of

Attachment S

employment, etc.) and are not "records" as defined by FERPA.[10] Second, Respondent has failed to offer any caselaw that suggests that a harassment complaint from an employee also enrolled as a student is protected from disclosure by FERPA, and indeed, caselaw makes clear that complaints from just students alleging unlawful behavior are not protected by FERPA. *See, e.g., Doe v. Loyalsock Twp. Sch. Dist.*, No. 4:21-CV-01343, 2024 WL 1468352 (M.D. Pa. Apr. 4, 2024), citing *Wallace v. Cranbrook Educ. Cmty.*, No. 05–73446, 2006 WL 2796135 (E.D. Mich. Sept. 27, 2006) (court ordered disclosure of identity of students who had complained anonymously of maintenance worker's improper sexual behavior**,** holding that investigatory notes and student statements did not constitute education records because they did not relate directly to the students and the information fell within one of FERPA's exceptions relating to employment records); *Briggs v. Bd. of Trustees Columbus State Cmty. Coll.,* No. 08–644, 2009 WL 2047899, at *5 (S.D. Ohio July 8, 2009) (student complaints of sexual harassment by a professor were not education records); *Ellis v. Cleveland Mun. Sch. Dist.*, 309 F. Supp. 2d 1019 (N.D. Ohio 2004) (FERPA inapplicable because the requested incident reports, student and employee witness statements, and disciplinary records of certain teachers contained information that directly related to teachers and only tangentially related to students). Though Respondent similarly relies on FERPA to justify its refusal to identify any student alleged to have harassed faculty and staff, implicated through Request No. 9, FERPA does not prohibit disclosure of student disciplinary records pertaining to harassing behavior when such records are sought

---

[10] (4) (A) For the purposes of this section, the term "education records" means, except as may be provided otherwise in subparagraph (B), *those records, files, documents, and other materials* which— (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution. 20 USC § 1232g(a)(4) (emphasis supplied).

Attachment S

through an EEOC subpoena. *See* 20 U.S.C. §1232g(b)(2)(B)[11] and 34 CFR 99.31(a)(9)(i).[12] FERPA, therefore, cannot shield Respondent from disclosing information sought through an EEOC subpoena.

Nor does Respondent's reliance on the EEOC's Technical Assistance Document No. EEOC-NVTA-2017-2 prevent EEOC from obtaining the identity of witnesses to and complainants of a hostile work environment. Though Respondent argues that EEOC advises employers "to understand and maintain the confidentiality associated with the complaint process," it ignores the same guidance qualifying that confidentiality is kept "*to the extent possible and permitted by law.*" Here, the law[13] requires that Respondent disclose the subpoenaed information, rendering Respondent's selective quoting unhelpful to it.

**B. Requests for Identification of Employee Members of Respondent's Jewish Affinity Groups and Academic Programs are Relevant to the Charge, as They are Potential Witnesses and Victims of Alleged Antisemitism.**

---

[11] "No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection, unless— … (B) … such information is furnished in compliance with judicial order, or *pursuant to any lawfully issued subpoena,* upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency…." (emphasis supplied).

[12] "An educational agency or institution may disclose personally identifiable information from an education record of a student without [] consent if …*The disclosure is to comply with a judicial order or lawfully issued subpoena.*" (emphasis supplied).

[13] "For the purpose of all hearings and investigations conducted by the Commission or its duly authorized agents or agencies, section 161 of Title 29 *[section 11 of the National Labor Relations Act]* shall apply." 42 U.S.C. §2000e-9.

Attachment S

For Request Nos. 2[14] and 3[15],  Respondent argues that it does not maintain a list of these clubs, nor any of the information set forth in the request. It further argues that it may have limited access to the membership rosters of these clubs or organizations, as they "are not connected to workplace activities within the ambit of Title VII." Respondent's Petition at 6. Moreover, Respondent argues that EEOC has not demonstrated how membership lists would lead to information relevant to a charge of a hostile work environment.  It also argues that membership rosters of these Jewish affinity organizations would somehow implicate "highly sensitive" information about its members and that disclosing such information could result in overinclusive and underinclusive information, i.e. identifying non-employees and/or non-Jewish individuals. Respondent finally argues that such requests interfere with the associational rights of the members.

The concept of relevancy in Commission investigations is far broader than that provided for by the Federal Rules of Civil Procedure.  During an investigation, the Commission is

---

[14] Request No. 2: Produce a list of all clubs, groups, organizations and recreation groups (hereinafter referred to as "organizations") related to the Jewish religion, faith, ancestry/National Origin. For each organization listed, produce the following information:
  a. Name of organization;
  b. Indicate if the organization is run by employees and/or volunteers;
  c. Identify the organization Point of Contact by first and last name;
  d. Produce the organizations Point of Contact's contact information to include phone number, email address and mailing address;
  e. Produce a roster of organization members. For each member listed, indicate if they are a University employee or volunteer;
  f. For employees identified on the roster, produce their last known contact information to include personal phone number, email address and mailing address; and,
  g. Produce the organization's website, if applicable.

[15] Request No. 3: Produce a list of employees in the Jewish Studies Program at the University of Pennsylvania department during the period of November 1, 2022, to the present. For each employee listed, produce the following information:
  a. First and last name;
  b. Position title;
  c. Dates of employment;
  d. Location/campus; and,
  e. Last known contact information to include personal email address, phone number and mailing address.

Attachment S

permitted "access to virtually any material that might cast light on the allegations against the employer." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68-69 (1984); *EEOC v. Randstad*, 685 F.3d 433, 448 (4th Cir. 2012) ("This definition of relevance necessarily is broader than 'evidentiary relevance' because in this context '[w]e determine relevancy in terms of the investigation,' not in terms of litigation of the merits of the underlying charge.") (quoting *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 113 (4th Cir. 1997)); *see also EEOC v. Kronos Inc.,* 620 F.3d 287, 296-97 (3d Cir. 2010) ("The relevance requirement is not particularly onerous."); *EEOC v. Franklin & Marshall Coll.*, 775 F.2d 110, 116 (3d Cir.1985) ("The concept of relevancy is construed broadly when a charge is in the investigatory stage."). The EEOC need not demonstrate that evidence sought in the subpoena is "necessary," only that it is relevant to the discrimination under investigation. *EEOC v. McLane Co., Inc.*, 857 F.3d 813, 816 (9th Cir. 2017); *McLane Co. Inc.*, 581 U.S. at 86 (Ginsburg, J., concurring in part) ("As the Ninth Circuit correctly conveyed, however: The EEOC does not have to show a particularized necessity of access, beyond a showing of mere relevance, to obtain evidence.") (internal quotations omitted). The EEOC's determination of relevance is entitled to deference. *Shell Oil Co.*, 46 U.S. at 68-69 ("In this and other areas, where an agency is tasked with investigation, we 'defer to an agency's own appraisal of what is relevant so long as it is not obviously wrong.'") (internal citations omitted). *Sandsen Fin. Consultants, Ltd. v Federal Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) (stating that an administrative subpoena will survive a relevancy challenge as long as the material requested "touches a matter under investigation") (quoting *Motorola v. McLain*, 484 F.2d 1339, 1345 (7th Cir. 1973)).

Here, the Commissioner's charge was necessary in light of the probable reluctance of Jewish faculty and staff to complain of a harassing environment due to fear of hostility and

potential violence directed against them. Request Nos. 2 and 3 are tailored to the identification of individuals who likely identify with, are interested in, or have an affinity towards Judaisim, which itself could lead to information about their exposure to antisemitism on campus. Respondent's argument that the identification of members of extracurricular groups are irrelevant (Request No. 2) ignores the likelihood that these individuals could inform on their exposure to antisemitism at Respondent. As noted earlier, the entire campus is the workplace of Respondent's employees, whether they are engaged in extracurricular activities or academic pursuits, rendering Respondent's distinction between the two inconsequential. To the extent Respondent maintains that Request No. 2 is overly broad in that it encompasses information about students, EEOC modifies these requests, through the italicized language below, as follows:

> Request No. 2: Produce a list of all clubs, groups, organizations and recreation groups (hereinafter referred to as "organizations") related to the Jewish religion, faith, ancestry/National Origin. For each organization listed, produce the following information:
>> a. Name of organization;
>> b. Indicate if the organization is run by employees and/or volunteers;
>> c. Identify the organization Point of Contact by first and last name *if such Point of Contact is an employee of Respondent*;
>> d. Produce the organizations Point of Contact's contact information to include phone number, email address and mailing address *if such Point of Contact is an employee of Respondent*;
>> e. Produce a roster of organization members *who are employees of Respondent*.
>> f. For employees identified on the roster, produce their last known contact information to include personal phone number, email address and mailing address; and,
>> g. Produce the organization's website, if applicable.

Interviewing employees regarding their experiences would clearly "cast light" on whether Respondent tolerated or fostered a workplace culture that facilitated and/or condoned antisemitic harassment. *Shell Oil Co.*, 466 U.S. at 68-69.

Attachment S

1.  Collecting Potential Employee Information from Members Of Jewish Affinity Groups and Programs Does Not Infringe Upon Associational Rights And Fundamental Freedoms.

Respondent describes a parade of horribles, lacking any real basis in fact, when it speculates that disclosing to EEOC the identities of the organizations' members would result in "chilling members' associational rights" (Petition at 8), "trespassing on fundamental freedoms" (*id.*), and "a chilling exercise in government overreach" (*id.* at 9). Rather, EEOC's attempts to discover victims of and witnesses to harassment are simply that. Respondent's articulated concerns of chilling and government overreach are speculative, have no basis in fact, and overlook EEOC's congressional mandate of ridding the work environment of harassment. Respondent's conclusory arguments cannot excuse compliance with the subpoena.

2.  The Subpoena Properly Requests Respondent To Compile Relevant Information.

Respondent's claim that it does not maintain a list or roster of the information sought in Request No. 2 also is not a basis for noncompliance. EEOC's subpoena power is not limited to the production of documents already in existence. As courts have recognized, unlike discovery in federal civil litigation, "[t]he subpoena power of the EEOC is not limited to the production of documents already in existence." *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 477 (4th Cir. 1986). "Rather, the enabling statute grants the EEOC broad authority to require 'the production of any evidence'" such that "all relevant information within the company's control is subject to the EEOC's subpoena power," including "evidence that does not presently exist in documentary form." *Id.* at 478–79 (enforcing a subpoena requiring the responding party gather, compile, and produce information about the race of former employees, even if doing so would require the employer to review ID pictures and interview employees about their own recollections); *see also EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1039 (10th Cir. 1993) (affirming enforcement

Attachment S

of a subpoena that required respondent to "develop and compile" summaries regarding employees "by examining personnel files or by interviewing employees"); *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 312 (7th Cir. 1981) (affirming enforcement of a subpoena that required respondent to submit a list that included employment dates, salary, and date and locations of any transfers); *Circle K Corp. v. EEOC*, 501 F.2d 1052, 1054 (10th Cir. 1974) (affirming enforcement of a subpoena that required the respondent to provide, *inter alia*, a "list of all applicants and present employees subjected to the polygraph examination, their racial-ethnic identity, and whether they were accepted or rejected"). Respondent further suggests that its "limited management and visibility" over these organizations (Petition at 6) may not allow it access to the subpoenaed information. That these organizations are sanctioned by Respondent whose members are comprised of Respondent's community makes this argument suspect. EEOC rejects Respondent's attempt to distance itself from these organizations and claim limited or no access to the membership information.  Rather, Respondent must collect and compile the information in accordance with the subpoena request.

## IV.  DETERMINATION

For the foregoing reasons, the Petition to Revoke or Modify Subpoena No. PA-25-07 is GRANTED in part with respect to Request No. 2 and DENIED with respect to the remainder of the Subpoena.

Petitioner is hereby DIRECTED to comply with the Subpoena within 21 days of issuance of this Determination.

ON BEHALF OF THE COMMISSION:

9-2-2025

_____

DATE

Thomas M. Colclough,
Director, OFP

Digitally signed by Thomas M. Colclough, Director, OFP
DN: cn=Thomas M. Colclough, Director, OFP, o=EEOC,
ou=Office of Field Programs (OFP),
email=thomas.colclough@eeoc.gov, c=US
Date: 2025.09.02 13:00:12 -04'00'

_____

THOMAS COLCLOUGH
DIRECTOR, OFFICE OF FIELD PROGRAMS

16

Attachment S