# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
                          Petitioner,

            v.

THE TRUSTEES OF THE UNIVERSITY
OF PENNSYLVANIA,
                          Respondent.

Case No. 2:25-cv-06502 (GJP)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS OF THE AMERICAN ACADEMY OF JEWISH RESEARCH, THE JEWISH LAW STUDENTS ASSOCIATION OF THE UNIVERSITY OF PENNSYLVANIA CAREY LAW SCHOOL, THE NATIONAL AND UNIVERSITY OF PENNSYLVANIA CHAPTERS OF THE AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, AND THE PENN ASSOCIATION OF SENIOR AND EMERITUS FACULTY

Mark A. Aronchick
Matthew A Hamermesh
Eitan G. Kagedan
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200
maronchick@hangley.com
mhamermesh@hangley.com
ekagedan@hangley.com

Harold Craig Becker
Norman L. Eisen
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave., S.E., No. 15180
Washington, D.C. 20003
(202) 594-9958
norm@democracydefenders.org
craig@democracydefenders.org

Witold J. Walczak
Stephen Loney
Ariel Shapell
AMERICAN CIVIL LIBERTIES UNION
OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
(215) 592-1513
vwalczak@aclupa.org
sloney@aclupa.org
ashapell@aclupa.org

Seth Kreimer
3501 Sansom St.
Philadelphia, PA 19104
Telephone: (215) 898-7447
skreimer@law.upenn.edu

Amanda Shanor
3730 Walnut Street
Philadelphia, PA 19104
203-247-2195
shanor@upenn.edu

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................1

II.   BACKGROUND....................................................................................4

   A.   The EEOC Subpoena ......................................................................4

   B.   The Proposed Intervenors...........................................................5

III.  ARGUMENT.........................................................................................8

   A.   The Proposed Intervenors Are Entitled to Intervene as a
        Matter of Right ............................................................................8

        1.   The Motion to Intervene is Timely .................................8

        2.   The Proposed Intervenors Have Substantial
             Interests in the Underlying Litigation.........................9

        3.   Disposition of this Case is Likely to Impair the
             Interests of the Proposed Intervenors .....................13

        4.   The Interests of Existing Defendant Penn Diverges
             from Those of Proposed Intervenors..........................13

   B.   In the Alternative, the Court Should Grant Permissive
        Intervention ...............................................................................16

IV.   CONCLUSION...................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American Farm Bureau Federation v. Environmental Protection Agency*,
  278 F.R.D. 98 (M.D. Pa. 2011) ................................................................................14, 15, 16

*Americans for Prosperity Found. v. Bonta*,
  594 U.S. 595 (2021) .................................................................................................................10

*Brumfield v. Dodd*,
  749 F.3d 339 (5th Cir. 2014) ...............................................................................................13

*Choike v. Slippery Rock University of Pennsylvania of State System of Higher
  Education*,
  297 F. App'x 138 (3d Cir. 2008) ...........................................................................................9

*Common Cause of Pennsylvania, v. Commonwealth of Pennsylvania*,
  558 F.3d 249 (3d Cir. 2009) .................................................................................................10

*Commonwealth of Pennsylvania, v. President United States of America*,
  888 F.3d 52 (3d Cir. 2018) ...................................................................................................10

*Community Vocational Schools of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*,
  No. 09-cv-1572, 2017 WL 1376298 (W.D. Pa. Apr. 17, 2017) ..........................................9

*Constand v. Castor*,
  No. 15-cv-5799, 2016 WL 5681454 (E.D. Pa. Oct. 3, 2016) ..............................................8

*Doe No. 1 v. Noem*,
  No. 25-1962, 2025 WL 1574916 (E.D. Pa. May 20, 2025) ................................................12

*Donald J. Trump for President, Inc. v. Boockvar*,
  No. 2:20-cv-966, 2020 WL 14069341 (W.D. Pa. Aug. 3, 2020) .......................................17

*Food & Drug Administration v. Alliance for Hippocratic Medicine*,
  602 U.S. 367 (2024) ...............................................................................................................12

*In re Grand Jury Matter*,
  770 F.2d 36 (3d Cir. 1985) ...................................................................................................11

*Greene v. Phila. Hous. Auth.*,
  789 F. Supp. 2d 582 (E.D. Pa. 2011) ...................................................................................11

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ...............................................................................................................12

*Hoots v. Commonwealth of Pennsylvania*,
  672 F.2d 1133 (3d Cir. 1982)..................................................................13

*Indian River Recovery Co. v. The China*,
  108 F.R.D. 383 (D. Del. 1985) ..............................................................10

*Kleissler v. U.S. Forest Service*,
  157 F.3d 964 (3d Cir. 1998)....................................................................8

*Kobach v. U.S. Election Assistance Commission*,
  No. 13-cv-4095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) ...............15

*Landau v. Corporation of Haverford College*,
  No. 24-2044, 2024 WL 5108442 (E.D. Pa. Dec. 13, 2024)....................12

*Meek v. Metropolitan Dade County, Fla.*,
  985 F.2d 1471 (11th Cir. 1993) ..............................................................15

*National Association for the Advancement of Colored People v. State of Alabama
  ex rel. Patterson*,
  357 U. S. 449 (1958)................................................................................12

*National Labor Relations Board v. PNC Bank, N.A.*,
  No. 3:21-MC-15(JAM), 2021 WL 6502553 (D. Conn. July 23, 2021)....17

*Pleasant Gardens Realty Corp. v. H. Kohnstamm & Co.*,
  No. CIV. 08-5582JHRJS, 2009 WL 2982632 (D.N.J. Sep. 10, 2009) ....11

*Brody ex rel. Sugzdinis v. Spang*,
  957 F.2d 1108 (3d Cir. 1992)............................................................13, 16

*Trbovich v. United Mine Workers of America*,
  404 U.S. 528 (1972)................................................................................13

*United States v. Alcan Aluminum, Inc.*,
  25 F.3d 1174 (3d Cir. 1994)....................................................................10

*United States v. Territory of Virgin Islands*,
  748 F.3d 514 (3d Cir. 2014)..........................................................8, 13, 14

*Wallach v. Eaton Corp.*,
  837 F.3d 356 (3d Cir. 2016)......................................................................9

*Wm. T. Thompson Co. v. General Nutrition Corp.*,
  671 F.2d 100 (3d Cir. 1982)....................................................................11

**Rules, Statutes, and Other Authorities**

29 C.F.R. § 101.16 .................................................................................................................. 5

Fed. R. Civ. P. 24 ......................................................................................................... *passim*

U.S. CONST., amend. I ................................................................................................. *passim*

Alan Blinder, *How Universities Are Responding to Trump*, NEW YORK TIMES
    (Dec. 1, 2025), https://www.nytimes.com/article/trump-university-
    college.html ................................................................................................................ 14, 15

Alan Wise, *Trump Administration suspends $175 million in funding to University
    of Pennsylvania over trans athletes,* NPR (March 20, 2025),
    https://www.npr.org/2025/03/20/nx-s1-5333675/university-pennsylvania-
    Penn-trump-suspends-funding-trans-student-athletes ..................................................... 14

The American Academy of Jewish Research, the Jewish Law Students Association of the University of Pennsylvania Carey Law School, the National and University of Pennsylvania chapters of the American Association of University Professors, and the Penn Ascociation of Senior and Emeritus Faculty (the "Proposed Intervenors") submit this memorandum of law in support of their Motion to Intervene as Defendants pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, or, in the alternative, pursuant to Rule 24(b).[1]

## I.    INTRODUCTION

On July 23, 2025, the U.S. Equal Employment Opportunity Commission ("EEOC") issued a subpoena to the Trustees of the University of Pennsylvania ("Penn" or the "University") demanding, among other things, that Penn create and turn over a list of all its Jewish and Jewish-affiliated campus organizations, together with a roster of their members. Specifically, the Subpoena sought, among other things, (1) a comprehensive list of all Jewish-related clubs, groups, organization, or recreation groups, together with the name of every member; (2) the names of all employees affiliated with Penn's Jewish Studies Program; (3) a list of faculty and staff who participated in confidential Listening Sessions held in March 2024 as part of Penn's Task Force on Antisemitism ("TFAS") and notes from those meetings; and (4) a list of faculty and staff who received a survey from TFAS. The EEOC Subpoena also sought contact information, including *personal* email addresses, phone numbers, and mailing addresses, for each individual so identified. In

---

[1]    Notwithstanding this Motion, the Proposed Intervenors reserve the right to contend that, because of their interests in the Subpoena, they have a right to appear and oppose the Subpoena without needing to seek formal intervention. They submit this Motion only to protect their right to oppose the Subpoena if any other party opposes their participation in this action without intervention.

effect, these requests would require Penn to create and turn over a centralized registry of Jewish students, faculty, and staff – a profoundly invasive and dangerous demand that intrudes deeply into the freedoms of association, religion, speech, and privacy enshrined in the First Amendment. Such compelled disclosure will be experienced as a visceral threat to the safety of those who would find themselves so identified because compiling and turning over to the government "lists of Jews" conjures a terrifying history.

The Proposed Intervenors are five organizations whose members include Jewish students, faculty, and staff whose identities, personal information, safety, and fundamental Constitutional rights are directly threatened by the EEOC's Subpoena. The Proposed Intervenors are:

- The American Academy of Jewish Research ("AAJR")

- The Jewish Law Students Association of the University of Pennsylvania Carey Law School ("JLSA")

- The American Association of University Professors ("AAUP")

- The University of Pennsylvania chapter of the AAUP ("AAUP-Penn")

- The Penn Association of Senior and Emeritus Faculty ("PASEF")

The membership of the Proposed Intervenors consists of individuals from across the religious, ideological, and political spectrum, united in the fight to protect the identities and Constitutional rights of Penn's Jewish community. These organizations do not challenge the EEOC Subpoena in all regards and understand that Penn will make its own arguments and objections to the EEOC's efforts to obtain information regarding Penn's Jewish community. That said, the Proposed Intervenors have a direct personal stake and a unique interest in safeguarding their members' distinctive First Amendment

freedoms to associate and practice religion, and in protecting their personal information from disclosure to the EEOC, and, potentially, to other public entities and private actors.

The Proposed Intervenors are entitled to intervene directly and on behalf of their members as of right under Rule 24 because their motion is timely, their and their members' rights and interests are squarely at stake, and those rights and interests are not adequately represented by the existing defendant, Penn. The Proposed Intervenors' interests are unique because their members include the very people whose rights and safety are threatened by enforcement of the Subpoena – those whose names and contact information would appear on the lists the EEOC demands that Penn create and disclose. It is difficult to conceive of a group of intervenors with a stronger or more distinct and personal interest in ensuring that the EEOC's demand for a list of Jews and their personal contact information is turned away.

In addition, the Proposed Intervenors and their current members have a unique interest in resisting the EEOC's Subpoena because their future membership is threatened by the chilling effects of potential Subpoena enforcement. The prospect that the Subpoena or a similar future subpoena could be enforced will chill the Jewish community members' willingness to join and participate in these organizations for years to come.

The Proposed Intervenors have a unique, personal, and visceral motivation to interrogate the purpose, design, and necessity of the EEOC's request for lists of Penn's Jewish community members and their pedigree information (personal emails, telephone number, and home addresses). Their intervention is necessary to ensure the full development of the record here and aid the Court in its resolution of this case. While Penn has thus far resisted disclosure of the information requested by EEOC, the University's calculus could change under the pressure of financial and other sanctions threatened by

the federal government. Intervenors – whose personal information, interests and rights are most directly implicated – need to participate as full parties to defend their rights. Intervention as of right pursuant to Rule 24(a), or, in the alternative, permissive intervention pursuant to Rule 24(b), should be granted.

## II.    BACKGROUND

### A.    The EEOC Subpoena

On December 8, 2023, EEOC Chair Andrea Lucas issued Charge No. 530-2024-01963, which alleges that Penn is "subjecting Jewish faculty (including tenured, non-tenured, and adjunct professors), staff, and other employees (including, but not limited to, students employed by the University) to an unlawful hostile work environment based on national origin, religion, and/or race." *See* Attachment A to Exhibit 1 of the EEOC's Application for an Order to Show Cause (ECF 1).

On July 23, 2025, after informal discussions between EEOC and Penn concerning production of information proved unsuccessful, the EEOC issued the administrative subpoena that is the subject of this Action – Subpoena No. PA-25-07 (the "Subpoena"). The Subpoena commands Penn to produce nine categories of documents, including five categories that directly threaten the Constitutional rights of the Proposed Intervenors and their members:

> **Subpoena Item 2:** "Produce a list of all clubs, groups, organizations and recreation groups (hereinafter referred to as 'organizations') related to the Jewish religion, faith, ancestry/National Origin[,]" along with membership rosters and contact information.

> **Subpoena Item 3:** "Produce a list of employees in the Jewish Studies Program at the University of Pennsylvania department during the period of November 1, 2022, to the present," along with their contact information.

> **Subpoena Item 4:** "Produce a list of staff and faculty members who participated in the Listening Sessions held in March 2024 as part of the University of

Pennsylvania Task Force on Antisemitism (TFAS)," along with their contact information.

**Subpoena Item 5:** "Produce all notes taken as part of the seven (7) listening sessions conducted in March 2024 as part of the University of Pennsylvania Task Force on Antisemitism (TFAS)."

**Subpoena Item 6:** "Produce a list of all faculty and staff members who received the University of Pennsylvania Task Force on Antisemitism's online Qualtrics survey," along with their contact information.

*See* Attachment Q to Exhibit 1 of the EEOC's Application for an Order to Show Cause (ECF 1).

Penn responded to the Subpoena on July 30, 2025, submitting a Petition to Revoke or Modify Subpoena pursuant to 29 C.F.R. § 101.16(b)(1). *See* ECF 1-3 ¶ 15. The EEOC responded to Penn's Petition on September 2, 2025, agreeing to partially modify the Subpoena but otherwise demanding compliance within 21 days thereof. *See* Attachment S to Exhibit A of the EEOC's Application for an Order to Show Cause (ECF 1).

On November 18, 2025, the EEOC initiated this administrative subpoena enforcement action by filing its Application for Order to Show Cause Why the EEOC's Administrative Subpoena Should Not Be Enforced (the "AOSC") (ECF 1). On January 5, 2026, the Court entered an Order directing that answers to the AOSC be filed on or before January 20, 2026 (ECF 13). The Proposed Intervenors intend to file a brief in response to the AOSC in accordance with that deadline.

### B.    The Proposed Intervenors

The Proposed Intervenors are a diverse collection of organizations whose members include individuals who would be identified in response to the Subpoena requests described above, if it were enforced:

- Founded in 1920, the **AAJR** is the oldest organization of Jewish studies scholars in North America. Fellows are nominated and elected by their peers and thus

represent many of the most distinguished senior scholars teaching Jewish studies at American universities. AAJR's primary mission is to further scholarly research and writing on Jewish studies and to enhance the professional opportunities and development of scholars in the field. AAJR's programming includes convening sessions on topics of current scholarly interest at annual Jewish studies conferences; workshops and fellowships for junior scholars; online collections of scholarly papers; and awards of grants and prizes. Throughout its history, AAJR has undertaken humanitarian work on behalf of individual Jewish scholars who face danger and hardship due to war and oppression around the world, including assisting Jewish scholars fleeing Europe in the 1930s and 1940s and, most recently, Jewish studies scholar in Ukraine. *See* AAJR Declaration, attached hereto as Exhibit A.

- **JLSA** is a cultural, social, and non-denominational affinity group at Penn Carey Law that works to represent Jewish students and welcome students of all backgrounds and affiliations. JLSA's mission is to build a vibrant community within Penn Carey Law by providing programming of Jewish cultural, religious, social, charitable, legal, and educational significance. The organization hosts Friday night dinners, social events, lunch and learn sessions, distinguished speakers, and other programs. JLSA seeks to develop an awareness within the campus community of legal issues relevant to the Jewish community and the role of Jewish ethics and values in the professional world. By offering engaging and meaningful programming and by connecting students with other Jewish organizations and alumni, JLSA hopes to contribute to the wellbeing of Jewish students at the Law School, the broader Penn community, and the Philadelphia Jewish community in which the group operates. *See* JLSA Declaration, attached hereto as Exhibit B.

- **AAUP** is a nonprofit membership association and labor union of faculty, graduate students, and other academic professionals with chapters at colleges and universities throughout the country, including at Penn. The AAUP's mission is to protect its members in relation to all aspects of their relationship to their employers and federal, state, and local governments; advance academic freedom and shared governance; define fundamental professional values and standards for higher education; promote the economic security of faculty, academic professionals, graduate students, postdoctoral fellows, and all those engaged in teaching and research in higher education; help the higher education community organize to accomplish their goals; and ensure higher education's contribution to the common good. Founded in 1915, the AAUP has helped to shape American higher education by developing the standards and procedures that maintain quality in education and academic freedom in the country's colleges and universities. *See* AAUP Declaration, attached hereto as Exhibit C.

- **AAUP-Penn** is a Chapter of the national AAUP. It is a membership organization that advocates for the interests of Penn faculty in all aspects of their relationship with the University and for a just university that meets its obligations to the city and the community. The organization welcomes members from all departments

and all schools at Penn. This includes all those employed primarily in research and/or teaching at a professional level regardless of title, including standing faculty, contingent faculty, graduate researchers and instructors, postdocs, and librarians, archivists, curators, and technicians whose work involves or substantially contributes to research or teaching. AAUP-Penn's goals include promoting academic freedom and meaningfully shared university governance; improving working conditions; and building solidarity among university workers across ranks and job categories at Penn and across institutions. *See* AAUP-Penn Declaration, attached hereto as Exhibit D.

- **PASEF** is a membership organization of and for senior (age 55+), emeritus and retired faculty from all schools at Penn. PASEF encompasses both standing faculty and associated faculty. Many of PASEF's emeritus and retired members continue to teach and pursue active research within the University itself, and stay involved within the University. PASEF's membership is large and largely Philadelphia-based. As of July 2025, PASEF had 2,245 members, including 1,354 senior faculty and 891 retired faculty. All standing faculty and associated faculty (Practice Professors, Research Professors, etc.) are automatically members upon reaching age 55. Per its mission statement, PASEF "informs and advocates on matters of concern to senior and retired faculty through dialogue with the University administration and communication with its members and the larger community." PASEF shares important information relevant to senior and emeritus faculty with its members and engages with the University administration when matters of concern to the membership arise. PASEF members sit *ex-officio* on the Faculty Senate Executive Committee and four Faculty Senate standing committees. PASEF's principal activities also include many membership programs, panel discussions and lectures each semester both in person and by Zoom, with videos available for later viewing. PASEF also sponsors activities for its members such as book discussion groups. *See* PASEF Declaration, attached as Exhibit E.

The Proposed Intervenors respect and honor the EEOC's historical mission of rooting out antisemitism and discrimination of all forms. However, that mission does not here justify and is not advanced by the forcible, non-consensual disclosure of Penn employees' private personal information and the infringement of the Constitutional rights of the Proposed Intervenors and their members – the very people the EEOC purports to be protecting.

## III.    ARGUMENT

The Proposed Intervenors seek to intervene in this action to protect their and their members' distinctive First Amendment rights and are clearly entitled to do so under Rule 24.

### A.    The Proposed Intervenors Are Entitled to Intervene as a Matter of Right

In the Third Circuit, a party is entitled to intervene as of right under Fed. R. Civ. P. 24(a)(2) upon establishing that:

> (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.

*United States v. Territory of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014) (cleaned up). Courts construe these factors consistent with a "policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970 (3d Cir. 1998) (quotation marks and citations omitted). The Proposed Intervenors satisfy all four of these considerations. The Court must therefore permit their intervention as a matter of right. *See Territory of V.I.*, 748 F.3d at 519 ("Intervention as of right *must be granted* when a party" meets the test) (emphasis added); *see also Constand v. Castor*, No. 15-cv-5799, 2016 WL 5681454, at *3 (E.D. Pa. Oct. 3, 2016) (noting that "Rule 24(a) contains mandatory language – the court 'must permit' intervention, so long as certain conditions are satisfied....").

### 1.    The Motion to Intervene is Timely

The Motion is being filed before any substantive proceedings have occurred in this action and thus is timely. Whether intervention is timely requires consideration of: "(1)

the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016) (quotation marks and citations omitted). Ultimately, "[t]he timeliness of a motion to intervene is determined from all the circumstances" and in the court's "sound discretion." *Choike v. Slippery Rock Univ. of Pa. of State Sys. of Higher Educ.*, 297 F. App'x 138, 140 (3d Cir. 2008) (quotation marks and citations omitted).

This action remains in its infancy. The EEOC initiated this litigation on November 18, 2025, and the only court action has been entry of an order setting a deadline – January 20 – for filing responses to the AOSC. The Court has not scheduled – let alone conducted – an initial case-management conference, and it has not entered a case-management schedule or established any discovery or other deadlines. Requests to intervene at the preliminary stages, like this one, are timely for purposes of Rule 24. *See, e.g.*, *Community Vocational Schs. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, No. 09-cv-1572, 2017 WL 1376298, at *5 (W.D. Pa. Apr. 17, 2017) (motion to intervene timely where "discovery [was] not yet closed [and] no schedule for summary judgment motions or trial [was] set"). The Proposed Intervenors' prompt intervention will not delay the timely advancement of the action or otherwise harm the parties. Where "'few legally significant events have occurred,'" courts have generally "not found prejudice." *Id.* (cleaned up). And, given these circumstances, there is no delay that the Proposed Intervenors need to explain. Accordingly, the Motion is timely.

### 2.    The Proposed Intervenors Have Substantial Interests in the Underlying Litigation

The Proposed Intervenors and their members clearly have "sufficient" – *i.e.*, "significantly protectable" – interests in this action. Under Rule 24(a)(2), a protectable

interest is any "cognizable legal interest" that is more than a mere "interest of a general and indefinite character." *Commw. of Pa., v. President United States of Am.*, 888 F.3d 52, 58 (3d Cir. 2018) (citation omitted). Where a proposed party has standing to bring a claim, it plainly has a sufficient interest to support intervention. *See United States v. Alcan Aluminum, Inc.,* 25 F.3d 1174, 1185 (3d Cir. 1994) (a party has a sufficient interest to intervene "where it is the real party in interest and where the applicant would have standing to raise the claim"); *Indian River Recovery Co. v. The China,* 108 F.R.D. 383, 387 (D. Del. 1985) ("It follows that, if an applicant for intervention would have had standing to bring the action originally, it has satisfied the interest requirement of Rule 24(a)(2)."). Organizations have standing to assert the rights of their members, and thus intervene on their behalf, where (1) individual members would otherwise have standing; (2) the interests at stake are germane to the organization's purpose; and (3) neither the claim nor relief requires individual participation. *See Common Cause of Pa., v. Commw. of Pa.*, 558 F.3d 249, 261 (3d Cir. 2009) (citations omitted). Each of these elements is obviously present here.

      1.    The Proposed Intervenors' individual members have standing because the Subpoena seeks their Constitutionally protected information – i.e., information protected by the First Amendment. Information about the identity of members in an organization or religious group is protected from compelled disclosure by the First Amendment because forced exposure chills freedom of association and the free exercise of religion. *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) ("We have also noted that '[i]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of

association as [other] forms of governmental action.'") (quoting *NAACP v. Alabama ex rel. Patterson*, 357 U. S. 449 (1958)).

A third party "has standing to move to quash" a subpoena that seeks such privileged information concerning that party. *Greene v. Phila. Hous. Auth.*, 789 F. Supp. 2d 582, 586 (E.D. Pa. 2011); *see also In re Grand Jury Matter*, 770 F.2d 36, 38 (3d Cir. 1985) ("[A]n individual or entity claiming a property right or privilege in the subpoenaed documents has standing to contest the denial of a motion to quash the subpoena."); *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 103 (3d Cir. 1982) ("When a claim of property or privilege is made with respect to a third party subpoena our cases are clear that the party claiming the property right or privilege may appeal."). Indeed, the government itself has used this procedure. *Pleasant Gardens Realty Corp. v. H. Kohnstamm & Co.*, No. CIV. 08-5582JHRJS, 2009 WL 2982632, at *2 (D.N.J. Sep. 10, 2009) (allowing the United States, as a third party, to challenge "subpoenas directed to its former employees because [a party] is seeking to discover official information that belongs to the United States, some of which may be privileged or otherwise protected from discovery.") (citation omitted). Because the Subpoena seeks their privileged information, the Proposed Intervenors and their members have standing to oppose the Subpoena.

2.    The members' interests that the Proposed Intervenors seek to protect by intervening are germane to their organizational purposes. The organizations serve a variety of purposes, but each requires the protection of the Constitutional freedoms of its members. *See supra* § II.B; Exhibits [A to E] hereto.

3.    Participation of the Proposed Intervenors' individual members is not necessary for the claim or relief asserted herein, and in fact would undermine them. The involvement of the organizations is sufficient to address the issues the Proposed

Intervenors plan to raise in this action. The Proposed Intervenors seek to protect the same interests of the members of each organization – nondisclosure of their protected associations and religious identification, and the privacy of their personal contact information. The individuals are protected if the group is protected. There is no separate or distinct interest of or harm to particular members of any of the organizations implicated in this action.

Indeed, requiring participation of individual members of the organizations would undermine precisely the interests the Proposed Intervenors seek to protect. *See NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 459 (1958) ("To require that [the right to private association] be claimed by the members themselves would result in nullification of the right at the very moment of its assertion"). The entire purpose of this motion is to protect the privileged identifying information of those members. Requiring members to participate directly in this action would by itself reveal their identity and associations. This is precisely the result the Intervenors seek to avoid.[2]

Moreover, the Proposed Intervenors have standing to intervene directly on their own behalf because their future membership and ability to carry out their core activities are threatened by the chilling effects of enforcement of the Subpoena. *See Food & Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024); *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). The prospect that the Subpoena or a similar future subpoena could be enforced will chill the interest of Jewish community

---

[2]    The Court could protect those some of those interests by permitting the individuals to seek relief pseudonymously and sealing information bearing on the individuals' identity. *Cf. Landau v. Corp. of Haverford Coll.*, No. 24-2044, 2024 WL 5108442 (E.D. Pa. Dec. 13, 2024); *Doe No. 1 v. Noem*, No. 25-1962, 2025 WL 1574916, at *1 (E.D. Pa. May 20, 2025). Such a procedure is obviously unnecessary here.

members in joining and participating in these organizations for years to come, threatening the pursuit of the organizations' core objectives and, in turn, their very existence.

The Proposed Intervenors should be granted intervention to protect their members' Constitutional interests and the pursuit of their own core objectives.

### 3. Disposition of this Case is Likely to Impair the Interests of the Proposed Intervenors

The Proposed Intervenors satisfy the third prong of the intervention analysis because their interests "may be affected or impaired, as a practical matter by the disposition of the action." *Virgin Islands*, 748 F.3d at 519. They need not show that their interests "will" be impaired by disposition of the ligation; only that they "may" be. *See Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (citing 6 Moore's Federal Practice § 24.03[3][a], at 24–41 (3d Ed. 2008)). Indeed, the "very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Id.* at 345; *see also Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992). Here, a decision in favor of the EEOC would result in the very harms the Proposed Intervenors seek to avoid – the enforcement of the Subpoena and compelled disclosure of their membership rosters and sharing with the government of personal contact information and home addresses.

### 4. The Interests of Existing Defendant Penn Diverges from Those of Proposed Intervenors

The Proposed Intervenors also meet their "minimal" burden of demonstrating that the existing parties in the litigation may not protect their interests. *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n.10 (1972); *Hoots v. Commw. of Pa.*, 672 F.2d 1133, 1135 (3d Cir. 1982). "The possibility that the interests of the applicant and the parties

may diverge 'need not be great,'" *Am. Farm Bureau Fed'n v. Envtl. Prot. Agency*, 278 F.R.D. 98, 110 (M.D. Pa. 2011) (citing *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1254 (10th Cir. 2001)), and a proposed intervenor need show only that "although [its] interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote [them] proper attention[,]" *Virgin Islands,* 748 F.3d at 519-20.

Here, Penn has thus far resisted the Subpoena, but Penn's interests and that of the Proposed Intervenors are not squarely aligned. Penn's principal interest is in successfully defending against the charge of discrimination – not in protecting the rights of its faculty, staff and students. Penn does not share a direct, personalized interest in the particularized First Amendment and privacy rights of the Proposed Intervenors and their members.

Moreover, the University must consider multiple interests, separate and apart from the best interests of a subset of its employees. Penn may not adequately represent the interests of the Proposed Intervenors for reasons unrelated to this litigation. Penn answers to a variety of stakeholders and has its own interests in protecting itself as an institution in the face of an administration that already has exerted enormous pressure on the University. This Court can take judicial notice of the actions the current Administration has taken to pressure universities to make concessions on a range of subjects, including withholding billions of dollars in grant money universities depend on to fulfill their research functions. *See* Alan Blinder, *How Universities Are Responding to Trump*, NEW YORK TIMES (Dec. 1, 2025), https://www.nytimes.com/article/trump-university-college.html. In fact, the Administration's suspension of $175 million of grant funding has already led Penn to enter into an agreement with the Administration that to reverse its policies concerning the activities of transgender athletes. *See* Alan Wise, *Trump Administration suspends $175 million in funding to University of Pennsylvania*

- 14 -

*over trans athletes*, NPR (March 20, 2025), https://www.npr.org/2025/03/20/nx-s1-5333675/university-pennsylvania-Penn-trump-suspends-funding-trans-student-athletes; Blinder, *How Universities Are Responding to Trump*. The Proposed Intervenors cannot leave their rights to chance and must be permitted to protect their rights directly by intervening in this action. This divergence of interests between the University's general need to balance various considerations, and the Proposed Intervenors' personal and particular interest in the privacy of their own identities and personal contact information, and protection of their own First Amendment rights, strongly supports granting a motion to intervene. *See, e.g.*, *American Farm Bureau Fed'n,* 278 F.R.D. at 110-11 (public interest groups allowed to intervene in litigation in which EPA was a defendant, "[b]ecause the EPA represents the broad public interest ... not only the interests of the public interests groups" and similar stakeholders); *Kobach v. U.S. Election Assistance Comm'n*, No. 13-cv-4095, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (applicants who had shown their interests in protecting voter rights, particularly in minority and underprivileged communities, may have private interests that diverge from the public interest of the defendant Election Assistance Commission); *see also, e.g.*, *Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1478 (11th Cir. 1993) ("The intervenors sought to advance their own interests in achieving the greatest possible participation in the political process. Dade County, on the other hand, was required to balance a range of interests likely to diverge from those of the intervenors."), *abrogated on other grounds by Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007).

The Proposed Intervenors meet each element of the test for intervention as of right. The Court must grant their Motion to intervene for that reason.

**B.    In the Alternative, the Court Should Grant Permissive Intervention**

Even if the Court concludes that the Proposed Intervenors are not entitled to intervene as a matter of right, the Court should, at minimum, exercise its broad discretion to grant permissive intervention. A court may grant permissive intervention when the motion to intervene is "timely," the proposed intervenors have "a claim or defense that shares with the main action a common question of law or fact," and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). The decision whether to grant permissive intervention is "highly discretionary." *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992). Permissive intervention is appropriate where, as here, the proposed intervenors may meaningfully contribute to the proper development of the factual or legal issues in dispute. *See, e.g.*, *American Farm Bureau Fed'n*, 278 F.R.D. at 111 ("In deciding whether to permit intervention under Rule 24(b), courts consider whether the proposed intervenors will add anything to the litigation." (internal quotation marks and citation omitted)).

Here, the Proposed Intervenors will contribute to the Court's resolution of key questions of law and fact in the main action. These questions include: whether federal law permits the EEOC to force Penn to give it the personal information it seeks, whether the EEOC's motivations and potential uses of the subpoenaed information are permissible, and the degree to which the enforcement of the EEOC's Subpoena would infringe and chill the exercise of First Amendment freedoms of the Proposed Intervenors' members. Here, Penn has asserted the associational privacy rights of the Proposed Intervenors' members as grounds to resist the Subpoena. *See, e.g.*, ECF 1-7 at 11. The Proposed Intervenors are uniquely situated to provide insight into that argument from those who would be most

directly affected by the Court's decision, as they can speak on behalf of their members regarding the dangers posed by the release of their personal information.

Courts have granted intervention in nearly identical situations. For example, in *NLRB v. PNC Bank, N.A.*, the National Labor Relations Board sought to enforce an administrative subpoena it had served on a bank seeking the financial records of the putative intervenors. *NLRB v. PNC Bank, N.A.*, No. 3:21-MC-15(JAM), 2021 WL 6502553 (D.Conn. 2021). There, like here, the intervenors "claim[ed] an interest" in the action because the agency sought "to enforce a subpoena that would require [the Respondent] to produce" records related to the intervenors, "which the Intervenors assert are confidential." *Id.* at *6. The court found that "the Intervenors' interest in the confidentiality of their financial records is sufficient to demonstrate that they have an interest in joining this action...." *Id.*

Finally, granting intervention at this early stage of the case would not delay or prejudice the adjudication of the original parties' rights under Fed. R. Civ. P. 24(b)(3). *See, e.g.*, *Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-cv-966, 2020 WL 14069341, at *3 (W.D. Pa. Aug. 3, 2020), ("[I]ntervention at this time will not unduly delay or prejudice the adjudication of the rights of Plaintiffs, since the case has not progressed to a stage where intervention would be burdensome."). But denying intervention would almost certainly deprive the Proposed Intervenors of the chance to defend their cognizable, significant, and protectable interests in this litigation.

Accordingly, if the Court determines that the Proposed Intervenors are not entitled to intervene as of right, the Court should exercise its discretion to allow them to intervene.

## IV.    CONCLUSION

For the foregoing reasons, the Proposed Intervenors respectfully request that this Court grant their Motion to Intervene and grant intervention as of right, or, in the alternative, via permissive intervention.

Respectfully submitted,

Dated: January 13, 2026

By: */s/ Matthew A Hamermesh*
    Mark A. Aronchick
    Matthew A Hamermesh
    Eitan G. Kagedan
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200
maronchick@hangley.com
mhamermesh@hangley.com
ekagedan@hangley.com

Harold Craig Becker
Norman L. Eisen
Democracy Defenders Fund
600 Pennsylvania Ave., S.E., No. 15180
Washington, D.C. 20003
(202) 594-9958
norm@democracydefenders.org
craig@democracydefenders.org

Seth Kreimer
3501 Sansom St.
Philadelphia, PA 19104
(215) 898-7447
skreimer@law.upenn.edu

Witold J. Walczak
Stephen Loney
Ariel Shapell
AMERICAN CIVIL LIBERTIES UNION
OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
(215) 592-1513
vwalczak@aclupa.org
sloney@aclupa.org
ashapell@acluepa.org

Amanda Shanor
3730 Walnut Street
Philadelphia, PA 19104
203-247-2195
shanor@upenn.edu

*Counsel for the Proposed Intervenors*