# EXHIBIT A
# UNREDACTED VERIONS PROPOSED TO BE FILED UNDER SEAL

**DECLARATION ON BEHALF OF AMERICAN ACADEMY OF JEWISH RESEARCH ("AAJR")**

I, ███████ DECLARE as follows:

1. I serve as the current ███████ of the American Academy of Jewish Research ("AAJR").

2. Founded in 1920, the AAJR is the oldest organization of Jewish studies scholars in North America. Fellows are nominated and elected by their peers and thus represent many of the most distinguished senior scholars teaching Jewish studies at American universities. AAJR's primary mission is to further scholarly research and writing on Jewish studies and to enhance the professional opportunities and development of scholars in the field. AAJR's programming includes convening sessions on topics of current scholarly interest at annual Jewish studies conferences; workshops and fellowships for junior scholars; online collections of scholarly papers; and awards of grants and prizes. Throughout its history, AAJR has undertaken humanitarian work on behalf of individual Jewish scholars who face danger and hardship due to war and oppression around the world, including assisting Jewish scholars fleeing Europe in the 1930s and 1940s and, most recently, Jewish studies scholar in Ukraine.

3. The AAJR has grave concerns about the November 18, 2025, legal action filed by the U.S. Equal Employment Opportunity Commission ("EEOC") against the University of Pennsylvania and its impact on AAJR members, especially but not only those who teach and work at Penn. *U.S. Equal Employment Opportunity Commission v. Trustees of the University of Pennsylvania*, 2:25-cv-06502 (E.D.Pa.).

4. The AAJR has fellows (akin to members) who work at the University of Pennsylvania ("Penn") that would be impacted directly if Penn were forced to disclose information requested in EEOC's current subpoena.

    a. AAJR fellows are faculty and leaders in Penn's Jewish Studies Program.

    b. An AAJR fellow also leads the Katz Center for Advanced Judaic Studies, a program that sponsors research by American scholars, often from other institutions, who are paid by Penn and thus considered Penn employees under the terms of the subpoena.

    c. An AAJR led the Listening Sessions held in March 2024 as part of the University of Pennsylvania Task Force on Antisemitism (TFAS).

    d. AAJR has members who received the "University of Pennsylvania Task Force on Antisemitism's online Qualtrics Survey…."

5. AAJR's executive committee, officers and fellows oppose Penn disclosing their names and personal contact information to the EEOC or any other government agency without their consent. Our members also do not want to be forced to compromise their privacy by intervening individually in this litigation.

6. AAJR strongly objects to the government singling out Jewish affiliates and Jewish Studies scholars for the forced, nonconsensual disclosure of sensitive personal information.

7. AAJR, which includes many scholars who study the history and present-day manifestations of antisemitism, supports efforts to combat antisemitism and other forms of discrimination on university campuses and beyond. AAJR believes, however, that concerns about antisemitism and other forms of discrimination militate against, rather than in favor of, acceding to the EEOC's request that the University collect and compile names and personal contact information of Jewish studies scholars and other employees with connections to Jewish life. AAJR believes that targeting individuals in this way endangers the privacy, safety, and freedoms of Jews and those who pursue Jewish studies or participate in Jewish-affiliated organizations.

8. As scholars who study Jewish history, including the history of antisemitism and other forms of hate, AAJR is particularly concerned about compiling and sharing without consent individual and personal information of faculty, staff, and students based on race, ethnicity, religion, or other characteristics that have been the basis for exclusion, discrimination, and persecution in the past and present.

9. AAJR is concerned that if the EEOC or other government agencies can force universities to disclose personal information without individuals' consent, students and scholars may be discouraged and intimidated from studying topics related to Jewish studies, affiliating with Jewish studies programs, or participating in Jewish-identified academic, cultural, and religious organizations.

10. AAJR believes that Penn's compliance with the subpoena or with similar demands would endanger employees' privacy and safety; chill free speech, academic freedom, religious liberty and freedom of association; and violate employees' constitutional rights to privacy, associational freedom, speech, and religious liberty.

11. AAJR members whose personal contact information would be disclosed if Penn were to comply with the subpoena have a protected interest in privacy, associational freedom, speech, and religious liberty that is personal to each of them. These potential harms from non-consensual disclosure of identity and private personal information are separate and distinct from Penn's interests.

12. AAJR's interest in this litigation also extends beyond members at Penn whose information would be disclosed to the government pursuant to the subpoena. If the EEOC can compel Penn to collect and disclose the type of information requested in this subpoena, other universities and employers may be forced or pressured to do the same. Such an outcome not only would threaten the privacy and other constitutional rights of AAJR members at other universities, but of all American scholars and students, especially those affiliated with or potentially interested in Jewish studies or related fields and disciplines.

13. Since AAJR members' interests are threatened by the EEOC subpoena, they should have a voice in the resolution of this litigation to ensure that third parties do not compromise their rights. While Penn thus far has refused to comply with the subpoena, the University's interests and calculus may change under pressure from the government, which has tremendous financial leverage in the form of federal research funding.

14. The AAJR therefore wishes to intervene to defend the interests of the employees whose privacy and other constitutional rights would be compromised by disclosure of the requested information, and, in so doing, to safeguard AAJR's broader mission: to support and promote the academic discipline of Jewish studies by ensuring that those who wish to study, research, and learn about these topics are not subjected to infringements of their privacy and other constitutional rights.

15. I have requested that our attorneys submit this declaration with my identity under seal because I am concerned about the potential harm to my privacy and safety of having my name and personal information disclosed to the government and potentially to other entities.

16. Additionally, I want to protect my employer from any retaliation or other ill-consequences at the hands of the government or other entities due to my declaration.

**I, ███████ hereby DECLARE under penalty of perjury on this 13th day of January, 2026, that the foregoing statements are true and correct to the best of my information, knowledge and belief, and that I am authorized to so represent by AAJR's governing body.**

