## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. 2:25-CV-06502-GJP |
| THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, | ) ) ) | |
| Respondent. | ) ) ) | |

**PETITIONER EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE AS DEFENDANTS [SIC] OF THE AMERICAN ACADEMY OF JEWISH RESEARCH, THE JEWISH LAW STUDENTS ASSOCIATION OF THE UNIVERSITY OF PENNSYLVANIA CAREY LAW SCHOOL, THE NATIONAL AND UNIVERSITY OF PENNSYLVANIA CHAPTERS OF THE AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, AND THE PENN ASSOCIATION OF SENIOR AND EMERITUS FACULTY**

CATHERINE L. ESCHBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

DEBRA M. LAWRENCE
Regional Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Philadelphia District Office
31 Hopkins Pl., Suite 1432
Baltimore, MD 21201
410 801-6691
Debra.lawrence@eeoc.gov

## **Table of Contents**

Table of Authorities......................................................................................................... iii

Background ...................................................................................................................... 1

Argument ......................................................................................................................... 6

Standards for Intervention............................................................................................... 6

    Intervention As of Right............................................................................................... 6

        Movants Lack a Sufficient Interest in the Subpoena Enforcement Action ............................ 6

        Movants' Interest is Not Affected or Impaired by the Disposition of the Action. ................ 10

        Divergence Between the Interests of Penn and Movants is Lacking.................................... 12

    Permissive Intervention ........................................................................................... 14

Conclusion …………………………………………………………………………………17

## Table of Authorities

### Cases

*Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83 (D. Conn. 2014)..........................................................14

*Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236 (D.N.M. 2008) ...................14

*American College of Obstetricians and Gynecologists v. United States Food and Drug Administration,* 467 F. Supp. 3d 282 (D. Md. 2020)..........................................................13

*Americans for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021) ............................................10

*Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998).................................................................. 9

*Case New Holland, Inc. v. EEOC,* CA No. 1:13–cv–01176 (RBW), 2014 WL 6679884 (D.D.C. Oct. 17, 2014)......................................................................................................... 8

*Delaware Valley Citizens' Council for Clean Air v. Com. of Pa.*, 674 F.2d 970 (3d Cir. 1982) ...13

*EEOC v. Alliance Residential Co.,* 866 F. Supp.2d 636 (W.D. Tex. 2011 ................................16

*EEOC v. Camden Development,* Misc. Action No. 24-167 (RJL) Inc. ................................. 1, 16

*EEOC v. Centura Health,* 933 F.3d 1203 (10th Cir. 2019) ....................................................16

*EEOC v. Farmer's Pride, Inc.*, Civil Action No. 12–MC–148, 2014 WL 1053482 (E.D. Pa. Mar. 18, 2014) ......................................................................................................................15

*EEOC v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 639 F.3d 366 (7th Cir. 2011).............. 1, 16

*EEOC v. Sidley Austin Brown & Wood,* 315 F.3d 696 (7th Cir. 2002)......................................16

*EEOC v. Trinity Health Corp.,* 107 F. Supp.3d 934 (N.D. Ind. 2015) .......................................16

*EEOC v. UPS, Inc.*, 587 F.3d 136 (2d Cir. 2009) .............................................................. 1, 17

*EEOC v. WSSC,* 631 F.3d 174 (4th Cir. 2011) ....................................................................16

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)............................................................ 9

*Federal Election Comm'n. v. Machinists Non–Partisan Political League,* 655 F.2d 380
   (D.C.Cir.1981)......................................................................................................12

*First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F.Supp.2d 362 (E.D. Pa. 2013) ........... 6

*In re Safeguard Scis.*, 220 F.R.D. 43 (E.D. Pa. 2004) ...........................................................15

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997) .......................14

*McLane Co., Inc. v. EEOC,* 581 U.S. 72 (2017) ............................................................ 4, 16

*New Cingular Wireless PCS, LLC v. Kootenai County, Idaho,* 2:23-cv-00124-AKB, 2023 WL
   7283153 (D. Idaho Nov. 2, 2023) .............................................................................14

*NLRB v. PNC Bank, NA*, No. 3:21-mc-15 (JAM), 2021 WL 6502553 (D. Conn. July 23, 2021) 15

*Reich v. Webb,* 336 F.2d 153 (9th Cir. 1964) ....................................................................15

*Thomas v. Marina Assocs.,* 202 F.R.D. 433 (E.D. Pa. 2001).................................................. 6

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ............................................13

*U.S. v. Territory of Virgin Islands,* 748 F.3d at 519-20........................................................6,13

*United States ex rel. "Automatic" Sprinkler Corp. v. Fidelity & Deposit Co. of Md.,* 22 F.R.D.
   248 (M.D. Pa. 1958)...............................................................................................15

*United States ex rel. Frank M. Sheesley Co. v. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404
   (W.D. Pa 2006) .....................................................................................................15

*United States v. Institute for College Access & Success,* 27 F. Supp.3d 106 (D.D.C. 2014) .......12

## Statutes

29 U.S.C. § 161 ................................................................................................. 6

42 U.S.C. §§ 2000e-8 ....................................................................................... 6

42 U.S.C. §2000e-8(e) ...................................................................................... 5

Fed R. Civ. P. 24 (a) ........................................................................................ 5

Fed. R. Civ. P. 24(b)(1)(B) ..............................................................................14

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* .............................. passim

Background

This subpoena enforcement action arises from a Commissioner's charge filed in 2023 alleging an antisemitic hostile work environment at Respondent, University of Pennsylvania ("Penn"). To conduct its investigation, the Equal Employment Opportunity Commission ("EEOC") seeks information to identify likely witnesses to, and victims of, the alleged antisemitic harassment. Investigations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII") are subject to strict confidentiality protections and impose criminal penalties for disclosure of an ongoing investigation. Thus, the EEOC must work with a respondent employer, here Penn, to obtain contact information for likely victims and witnesses, while taking steps to protect employees who choose to cooperate with EEOC, by preventing the employer from gaining insight into which employees participate in the investigation, thereby guarding against potential retaliation.

The subpoena at issue in this enforcement action is no different from the wide range of subpoena requests in numerous EEOC investigations on a variety of protected bases seeking witness and victim contact information. There is nothing unusual or new about this type of data request from an employer subject to an EEOC investigation. *See, e.g., EEOC v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 639 F.3d 366 (7th Cir. 2011) (race); *EEOC v. Camden Development,* Misc. Action No. 24-167 (RJL) Inc., 2025 WL 3707138 (D.D.C. Dec. 22, 2025) (sex); *EEOC v. UPS, Inc.*, 587 F.3d 136 (2d Cir. 2009) (religious accommodation). EEOC's ability to communicate directly with witnesses and victims is essential to its ability to efficiently and effectively investigate alleged discrimination. Accordingly, EEOC confined its requests to faculty and staff who complained of antisemitic harassment, who belonged to Jewish affinity organizations, or who worked in the Jewish Studies Program—individuals who presumably

could shed light on the nature and extent of the alleged antisemitic activity at Penn. The

particular requests at issue are set forth below:

> Subpoena Item 2: Produce a list of all clubs, groups, organizations and recreation
> groups (hereinafter referred to as "organizations") related to the Jewish religion,
> faith, ancestry/National Origin. For each organization listed, produce the
> following information:
> a. Name of organization;
> b. Indicate if the organization is run by employees and/or volunteers;
> c. Identify the organization Point of Contact by first and last name;
> d. Produce the organizations Point of Contact's contact information to include
> phone number, email address and mailing address;
> e. Produce a roster of organization members. For each member listed, indicate if
> they are a University employee or volunteer;
> f. For employees identified on the roster, produce their last known contact
> information to include personal phone number, email address and mailing
> address; and,
> g. Produce the organization's website, if applicable.
>
> Subpoena Item 3: Produce a list of employees in the Jewish Studies Program at
> the University of Pennsylvania department during the period of November 1,
> 2022, to the present. For each employee listed, produce the following information:
> a. First and last name;
> b. Position title;
> c. Dates of employment;
> d. Location/campus; and,
> e. Last known contact information to include personal email address, phone
> number and mailing address.
>
> Subpoena Item 4: Produce a list of staff and faculty members who participated in
> the Listening Sessions held in March 2024 as part of the University of
> Pennsylvania Task Force on Antisemitism (TFAS). For each staff or faculty
> member listed, produce the following information:
>> a. First and last name;
>> b. Position Title;
>> c. Date of employment; and
>> d. Last known contact information to include personal email address,
> phone number, and mailing address.
>
> Subpoena Item 5: Produce all notes taken as part of the seven (7) listening
> sessions conducted in March 2024 as part of the University of Pennsylvania Task
> Force on Antisemitism (TFAS).

> Subpoena Item 6: Produce a list of all faculty and staff members who received the University of Pennsylvania Task Force on Antisemitism's online Qualtrics survey. For each individual provide the following:
>> a. First and Last name;
>> b. Staff Member (Y/N);
>> c. Faculty Member (Y/N);
>> d. Position Title;
>> e. Date of Employment;
>> f. Copy all survey responses; and
>> g. Last known contact information to include personal email address, phone number, and mailing address.

*Id.* Penn refuses to respond, thereby stalling the EEOC's investigation. Its objections, premised on alleged privacy issues and a proposal to inject itself as a filter between Penn employees and the EEOC—which would result in Penn being fully aware which employees are participating in the investigation—have resulted in the present subpoena enforcement action.

The parties are at this juncture even though EEOC has made clear all along (*see* ECF-01 at 19) of its confidentiality obligations to any individuals for whom it seeks contact information:

> It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than one year.

42 U.S.C. 2000e-8(e).

Shortly after this Court issued its briefing schedule, the potential intervenors—the American Academy of Jewish Research ("AAJR"), the Jewish Law Students Association of the University of Pennsylvania Carey Law School, the National and University of Pennsylvania Chapters of the American Association of University Professors ("AAUP"), and the Penn Association of Senior and Emeritus Faculty ("PASEF") ("Movants")—sought leave to intervene

in this administrative subpoena enforcement action.[1] Movants appear to misunderstand the summary nature of the proceedings before this Court. The judicial role in subpoena enforcement proceedings is "sharply limited" and "designed to be summary in nature." *See* ECF 01 at 13-14, and does not involve, for example, "a case management conference, … a case management schedule …. or discovery." ECF-014 at 9, Movants' Memorandum Of Law In Support Of Motion To Intervene As Defendants [sic] Of The American Academy Of Jewish Research, The Jewish Law Students Association Of The University Of Pennsylvania Carey Law School, The National And University Of Pennsylvania Chapters Of The American Association Of University Professors, And The Penn Association Of Senior And Emeritus Faculty ("Movants' brief"). Often such actions are resolved purely on the pleadings. *See, e.g., EEOC v. Camden Dev., Inc.* Misc. Action No. 24-167 (RJL) 2025 WL 3707138 at *2 (D.D.C. Dec. 22, 2025). The only germane legal issues are "whether the evidence sought is relevant to the specific charge before it or whether the subpoena is unduly burdensome in light of the circumstances." *McLane Co. v. EEOC*, 581 U.S. 72, 81 (2017).

Animated by highly charged rhetoric, Movants wholly ignore the context of the EEOC's subpoena—an investigation aimed at determining whether and to what extent Jewish employees of Penn suffered antisemitic harassment and if, as a result of that investigation cause is found, to then work to provide remedies to specific victims. This law enforcement mandate is the opposite of a "visceral threat to the safety of those who would find themselves so identified." Movants' brief, ECF 014-1 at 2. Movants ignore that EEOC is seeking to determine whether the civil rights of Jewish employees have been violated. Movants also fail to acknowledge that strict statutory

---

[1] Movants simultaneously sought leave to file under seal unredacted declarations revealing the identities of two of the declarants. ECF 015. While disagreeing with the premise of Movants' Motion, EEOC does not object to the filing under seal.

confidentiality requirements impose criminal penalties on agency staff in this, and every other Title VII investigation undertaken by EEOC. 42 U.S.C. §2000e-8(e). EEOC simply seeks to act in the public interest and eliminate antisemitism from the workplace. But Movants appear to want EEOC to be disadvantaged in those aims. Movants' wholly speculative and highly charged parade of horribles is insufficient to deny enforcement of this subpoena, let alone allow Movants to intervene.[2] At bottom, Penn's own descriptions of the escalating harassment throughout its workplace, and its tepid response resulting in intensified harassment, *see* ECF 01 at 3-7, sufficiently support the Commissioner's charge which led to the subpoena at issue. Enforcement of the subpoena to enable the EEOC to identify victims of and witnesses to the alleged harassment is essential to its investigation.

As discussed below, that members of Movants' organizations are potential victims of or witnesses to the allegations in the Commissioner's charge does not elevate Movants' status to parties with standing to intervene in this administrative subpoena enforcement case. Accordingly, intervention under both Federal Rule of Civil Procedure 24(a)(2)[3] and 24(b) is unwarranted, as they fail to satisfy the standards under either provision, and the motion should be denied.

---

[2] Movants' rhetoric is further ignited by their claims that EEOC seeks identifying information about Jewish students, which is untrue. Because workers who happened to be students are covered by Title VII, EEOC initially included students in its subpoena. EEOC thereafter modified its subpoena to exclude all students. As a result, the Jewish Law Students Association of the University of Pennsylvania Carey Law School as a Movant must fail as a potential intervenor.

[3](a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

<u>Argument</u>

<u>Standards for Intervention</u>

A.  <u>Intervention As of Right</u>

The Third Circuit requires the following four factors to be satisfied for intervention as of right under Rule 24(a)(2): "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *US v. Territory of Virgin Islands,* 748 F.3d 514, 519 (3d Cir. 2014). Other than filing their Motion timely, Movants fail to satisfy the remaining three factors.

1.    <u>Movants Lack a Sufficient Interest in the Subpoena Enforcement Action</u>

Under Title VII, EEOC has broad authority to obtain evidence to aid in its investigatory functions. *See* 42 U.S.C. §§ 2000e-8 & 2000e-8 (incorporating the investigatory enforcement procedures under 29 U.S.C. § 161). Notably, these statutes provide no mechanism for third-party intervention in a subpoena enforcement action to try to limit the scope of an investigation or information an employer must provide to EEOC. Movants assert their entitlement to intervene, arguing contact information of potential victims and witnesses as privileged, and they rely on third-party subpoena cases for this argument. "Generally, 'a party does not have standing to quash a subpoena served on a third party.'" *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F.Supp.2d 362, 382 (E.D. Pa. 2013), citing *Thomas v. Marina Assocs.,* 202 F.R.D. 433, 434 (E.D. Pa. 2001). "This burden is 'particularly heavy to support a motion to quash as contrasted to some more limited protection' such as a protective order." *First Sealord*, 918 F.Supp.2d at 383 (citations omitted). While EEOC does not quarrel with the existence of an exception where privileged information is sought (e.g. attorney-client, attorney work product, accountant-client), Movants' simply have not established that their alleged interests in not having their members'

contact information disclosed to EEOC fall within any recognized category of privileged information. Movants' cited cases at ECF 14-1 at 11 are therefore unhelpful to their argument that identification of victims and witnesses to a law enforcement agency are privileged. And they cite no case where a court has recognized the information EEOC seeks from Penn through the subpoena as privileged. In addition to failing to establish the information sought by the subpoena is privileged, Movants' speculative and generalized concerns as expressed in the declarations— divorced from the actual processes, functions, and protections of EEOC investigations—do not rise to a level sufficient that would allow this Court to permit what would be an extraordinary step of allowing third parties to intervene in an attempt to dictate the EEOC's investigatory conduct.

The Penn Carey Jewish Law Students Association alleges harm were their pedigree information to be released to EEOC. Although EEOC strongly disputes that Penn's production of this information would pose any risk to any individuals, EEOC actually withdrew its request for student information in response to Penn's administrative Petition to Revoke or Modify. *See* ECF 01 at 13, n. 9. Accordingly, this Movant has no interest as a potential intervenor.

Movant AAJR claims as its fellows (*i.e.*, members) faculty and leaders in Penn's Jewish Studies Program and the Katz Center for Advanced Judaic Studies. It also alleges potential harm to its fellows were Penn to disclose to EEOC their names and personal contact information. But AAJR's insistence that its fellows' identities cannot be shared with EEOC because of safety implications is undermined by Penn's public-facing website displaying the faculty members (and graduate students) belonging to its numerous academic departments, including those in the Jewish Studies Program and the Katz Center for Advanced Judaic Studies. These pages display each individual's photo, their work telephone numbers, and their email addresses. *See, e.g.,*

People | Jewish Studies Program, Current Fellows | Katz Center for Advanced Judaic Studies last accessed January 20, 2026. Given the public nature of their member's identities and contact information, Movant is hard-pressed to justify why enabling the EEOC to contact its members outside of their workspace poses any kind of threat. Speculating that doing so "endanger[s] the privacy, safety, and freedoms of Jews and those who pursue Jewish studies or participate in Jewish affiliated organizations" (ECF 014-3 at ¶7) is an abstract and alarmist projection, not a showing of any real or imminent threat to privacy, safety, or associational freedoms. While Penn already publicly has identified these individuals, this is insufficient because the EEOC declines to use Penn's communication platforms to contact these individuals. Its reasons are obvious: Penn's access to and ability to monitor communications occurring over their platforms, and EEOC's reluctance to interfere with potential victims' and witnesses' work obligations. EEOC's decision to refrain from using Penn's communication platforms and seek alternative methods of communication with potential witnesses and victims is well-founded. *See also Case New Holland, Inc. v. EEOC,* CA No. 1:13–cv–01176 (RBW), 2014 WL 6679884 (D.D.C. Oct. 17, 2014) (employer sued EEOC for Constitutional and Administrative Procedure Act violations for issuing questionnaires to potential victims of discrimination over the employer's email platform).

Movant AAUP similarly advances alarmist rhetoric by insisting that "the information sought in the subpoena is far outside the scope of anti-discrimination law, and constitutes a grave threat to associational privacy." ECF 014-5 at ¶9. Moreover, it attests that this threat extends to "members at other colleges or universities who are similarly concerned about their universities disclosing their identities and associations to the Trump administration…." *Id.* at ¶ 12. Setting aside its extreme fatalism, AAUP misunderstands the law. Colleges and universities do not enjoy immunity from EEOC investigations. Rather, they are covered by Title VII's definition of

employer[4] and are routinely subject to EEOC investigations based on diverse protected bases. EEOC's need to locate victims and witnesses is core to its law enforcement function, regardless of employer type. At bottom, AAUP's interest is insufficient for participation in this routine subpoena enforcement action.

Movant AAUP Penn fares no better in demonstrating a sufficient interest in this administrative subpoena enforcement proceeding. Its concerns range from potential security breaches of EEOC's IT systems (ECF 014-6 at ¶14) to likening EEOC's quest for victims and witnesses to the Nazi regime (*id.* at ¶12). These concerns ignore that Penn already stores the information sought on its IT systems and that EEOC operates under strict confidentiality obligations. Complaints of harassment, including complaints of antisemitism made to Penn's Task Force on Antisemitism (*id.* at ¶7 (e) and (f)), are relevant to whether the alleged incidents occurred and to what extent the employer took prompt remedial action to address the complaints. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998). Accepting AAUP Penn's premise would allow any employer to shield the records of any internal, confidential HR investigation from any subsequent EEOC investigation on the grounds of promised confidentiality. That is not and cannot be the law. Accordingly, these assurances of confidentiality to its members, as a matter of law, cannot undermine EEOC's law enforcement functions, and EEOC's repeated reminders that it too is bound by confidentiality remain unacknowledged by AAUP Penn and all other Movants.

Movant PASEF echoes other Movants with respect to potential security breaches (ECF 014-7 at ¶10) and similarly equates EEOC's request for contact information for potential victims

---

[4] The relevant provision which applies to Movants' members is set forth as follows: "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person …."  42 U.S.C. ¶2000e(b).

and witnesses, to the Holocaust (*id.* at 7). Its insistence that "non-consensual disclosure" of the identities of victims and witnesses will harm its members is simply untethered to the facts and ignores the axiom that subpoena powers do not depend on the consent of the subject subpoenaed. And again, Movants fail to address EEOC's statutory obligation of confidentiality and its long history of redressing discrimination in the workplace.

      2.      <u>Movants' Interest is Not Affected or Impaired by the Disposition of the Action.</u>

      Closely related to Movants' claimed interest in this action is the assertion that their contact information, as set forth in membership lists of various organizations, is protected by the First Amendment. Movants' characterization of membership lists containing their contact information as automatically shielded from disclosure by the First Amendment does not make it so, and their authorities for this proposition are highly distinguishable. Movants' cases involve circumstances where the government was seeking to investigate and probe the associational group itself, where the Supreme Court concluded under an exacting scrutiny standard, the asserted government interests did not outweigh the actual burdens on association. Any attempt by Movants to make this showing would be futile.

      In *Americans for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021), the California state government, after previously relaxing its requirement that registered charities submit complete donor information on a Schedule B, resumed enforcement of that disclosure rule, asserting it necessary to investigate fraud. In holding the requirement unconstitutional under the First Amendment, the Court noted that the petitioners—tax exempt charities—had faced past threats of violence and harassment, that donors would face similar risks if identified, that the State previously had inadvertently published Schedule B information, and that such disclosures rarely were used to audit or investigate charities. In so concluding, the Court explained that there was

"dramatic mismatch" between the state's asserted interest in the information and the disclosure regime implemented to that end, where the record did not reflect a single instance of the Schedule B information advancing regulatory or investigatory interests. *Id.* at 613. Here, there is not a generalized compelled, upfront disclosure; instead the EEOC has tailored a request likely to lead to relevant information about potential witnesses to or victims of antisemitic harassment at Penn. *Bonta* relied on *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449 (1958), in which the Alabama Attorney General attempted to oust from the State a newly opened local NAACP chapter, whose members had been threatened with economic reprisals and violence. There, the First Amendment prohibited compelled disclosure of its members' identities. Here, in stark contrast, EEOC is focused exclusively on identifying witnesses and victims in order to investigate and try to remedy any antisemitism if cause is found in that investigation. EEOC, pursuant to its law enforcement function, seeks information for the limited purpose of identifying potential witnesses or victims, and not to probe, penalize, or chill religious or associational activity, and thus the First Amendment would not shield EEOC's tailored collection of information sought in the subpoena. To that end, EEOC is amenable to collecting the contact information without reference to an individual's particular organizational affiliation.

Even if Movants' allegations could give rise to a non-futile First Amendment claim, intervention would not be warranted because claims of First Amendment protections do not automatically invalidate a lawfully issued government subpoena where EEOC can clearly demonstrate a compelling interest in enforcement. "Although the speech and associational protections afforded by the First Amendment have been invoked in defense of an administrative subpoena, the presence of First Amendment issues alone is not enough to thwart its enforcement." *See United States v. Institute for College Access & Success,* 27 F. Supp.3d 106, n.8

(D.D.C. 2014) (citation omitted). "A subpoena will be enforced if the government can demonstrate that it has a compelling interest in obtaining that information. '[A] compelling interest exists—and [] a subpoena will be enforced regardless of potential First Amendment issues—where the agency seeking the information is conducting an investigation pursuant to its statutory authority.'" *Id.*, citing *Federal Election Comm'n. v. Machinists Non–Partisan Political League,* 655 F.2d 380, 389–90 (D.C.Cir.1981). Here, of course, the compelling interest is a law enforcement agency's statutory mandate to remedy employment discrimination. Requiring Penn to produce contact information for potential witnesses and victims does not at all impact or impair their interests—Constitutional, privacy, or otherwise. If Penn's employees choose not to cooperate when contacted, they are entitled to that choice. If they believe they were unharmed by the events on Penn's campus, they could say so. But nowhere in Title VII and its subpoena authority is there any provision that restricts EEOC from reaching out to potential victims or witnesses only with their consent—a principle that Penn repeatedly has ignored resulting in this enforcement action.

       3.     <u>Divergence Between the Interests of Penn and Movants is Lacking.</u>

      Penn's steadfast refusal to disclose to EEOC the potential victims of and witnesses to discrimination undermines Movants' ability to satisfy the fourth factor—that the interest is not adequately represented by an existing party in the litigation. Since the issuance of the charge in December 2023, Penn vigorously has opposed providing contact information for the victims of and witnesses to discrimination, *see* ECF 01-3, Exhibit B, C, E, ¶15, and even was successful in having the subpoena modified to exclude students. The burden is on Movants to show that their interests are not adequately protected, *Delaware Valley Citizens' Council for Clean Air v. Com. of*

*Pa.*, 674 F.2d 970, 974 (3d Cir. 1982), and even with a "minimal burden" (*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)), Movants fail to make this showing:

    (1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests;

    (2) that there is collusion between the representative party and the opposing party; or

    (3) that the representative party is not diligently prosecuting the suit.

*U.S. v. Territory of Virgin Islands,* 748 F.3d at 519-20. Movants would be hard-pressed to argue the second and third factors, as there clearly is no collusion between EEOC and Penn, and Penn is aggressively defending the suit. With only the first factor at play, Movants' interest to not have their members identified is completely aligned with Penn's steadfast commitment to concealing their identities. Movants' belief that an alignment of interest is lacking because Penn is focused on protecting the institution whereas Movants are focused on protecting their members, in this situation, is a distinction without a difference, as Penn's refusal to comply with the subpoena is premised on its assertion of privacy interests on behalf of its employees, and not on some different institutional interest that is separate and apart from them.

    Movants speculate that were Penn eventually to voluntarily disclose the potential victims and witnesses to EEOC, somehow this disclosure would compromise the membership and viability of their organizations. With this rationale, any organization could intervene in an EEOC subpoena enforcement action based on an argument that some day, maybe, the named party will settle. But this pure speculation is insufficient to defeat the alignment of interests between Movants and Penn. *See, e.g., American College of Obstetricians and Gynecologists v. United States Food and Drug Administration,* 467 F. Supp. 3d 282, 291 (D. Md. 2020) (speculation that parties may diverge in the future does not support finding of inadequacy of representation); *New*

*Cingular Wireless PCS, LLC v. Kootenai County, Idaho,* 2:23-cv-00124-AKB, 2023 WL 7283153, *5 (D. Idaho Nov. 2, 2023) (same); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1307 (9th Cir. 1997) (same); *Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 257 (D.N.M. 2008) (same); *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 87-88 (D. Conn. 2014) (denying motion to intervene where argument that Defendant "might in some unspecified way sacrifice" defense of certain contracts "in order to salvage the larger program" was based on speculation).

*****

Movants cannot satisfy any factor for intervention as of right other than timeliness. And even if this Court were to disagree, on balance the factors weigh against granting intervention where the Movants fail to show (1) that they are seeking to protect information recognized as privileged; (2) that their purported interests justifying intervention are grounded in fact; (3) that they could overcome EEOC's tailored and compelling interest in the information sought; or (4) that their interests sufficiently diverge from Penn's. The motion should be denied.

B. Permissive Intervention

Movants fare no better under Federal Rule of Civil Procedure 24 (b), allowing for permissive intervention:

> On timely motion, the court may permit anyone to intervene who:
> * * *
> (B) has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b)(1)(B). The "question of law or fact" is the enforceability of the administrative subpoena, a question that the Court must decide solely as to EEOC and Penn and is not in any way shared by Movants or their members. Were intervention permitted, these summary subpoena enforcement proceedings would be bogged down with a plethora of proposed

14

intervenors who claim standing only because their members may (or may not) be covered by the subpoena at issue.

Permissive intervention is denied when it will delay the case, interfere with ongoing efforts, and drive-up litigation costs and expenses. *See In re Safeguard Scis.*, 220 F.R.D. 43, 49 (E.D. Pa. 2004). Movants have no claims to assert in this subpoena enforcement action between EEOC and Penn and no basis to be elevated to the status of parties. Accordingly, any basis for permissive intervention is wholly absent. "The purpose of the rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved." *United States ex rel. Frank M. Sheesley Co. v. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 415 (W.D. Pa 2006) (citing *Reich v. Webb,* 336 F.2d 153, 160 (9th Cir. 1964))). *See also United States ex rel. "Automatic" Sprinkler Corp. v. Fidelity & Deposit Co. of Md.,* 22 F.R.D. 248 (M.D. Pa. 1958) (using permissive intervention to congregate the totality of claims and defenses arising between the various contractors and sureties involved in a particular project). Movants simply lack any claims or defenses associated with an administrative subpoena enforcement proceeding.

EEOC is unaware of charging parties, or other potential victims, witnesses, or their representative organizations, who have successfully intervened in a subpoena enforcement action, which again, is a highly contained judicial proceeding. *See EEOC v. Farmer's Pride, Inc.*, Civil Action No. 12–MC–148, 2014 WL 1053482 (E.D. Pa. Mar. 18, 2014) (charging party and his organization representative denied intervention in EEOC's subpoena enforcement action, for lack of standing).[5] And *NLRB v. PNC Bank, NA*, No. 3:21-mc-15 (JAM), 2021 WL 6502553 (D. Conn. July 23, 2021), relied upon by Movants, is not at all "nearly identical" as touted by them. There, a union charged certain nursing homes with unfair labor practices, and alleged that these

---

[5] There too, the Court not only denied intervention but ordered disclosure of employees' contact information and all complaints of harassment.

nursing homes were joint employers, single employers, or integrated enterprises. To obtain such proof, NLRB issued a third-party subpoena to PNC seeking the financial records of various nursing homes to determine whether they intermingled assets and to examine other indicia of joint employer/integrated enterprise status. The court acknowledged the confidential nature of third-party financial documents and accordingly permitted intervention of PNC and the charged and uncharged parties. Here, there is no third-party subpoena, nor any request for financial records. Rather, this is nothing more than a typical subpoena enforcement proceeding directed against a respondent employer seeking contact information of potential victims and witnesses. Permissive intervention would unduly complicate and delay a summary subpoena enforcement proceeding—as well as potentially add delay to the underlying administrative investigation. Movants' proposal to add multiple parties, new arguments, and additional briefing on Constitutional questions is not necessary to resolve the administrative standards governing enforcement.

Throughout its existence, EEOC has used its subpoena power to investigate potential discrimination and routinely has proceeded in this manner to obtain similar classwide information on various grounds: age (*EEOC v. Sidley Austin Brown & Wood,* 315 F.3d 696 (7th Cir. 2002); *EEOC v. WSSC,* 631 F.3d 174 (4th Cir. 2011)); race (*EEOC v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 639 F.3d 366 (7th Cir. 2011)); sex (*McLane Co., Inc. v. EEOC,* 581 U.S. 72 (2017); *EEOC v. Camden Development,* Misc. Action No. 24-167 (RJL) Inc., 2025 WL 3707138 (D.D.C. Dec. 22, 2025)); disability (*EEOC v. Alliance Residential Co.,* 866 F. Supp.2d 636 (W.D. Tex. 2011), *EEOC v. Trinity Health Corp.,* 107 F. Supp.3d 934 (N.D. Ind. 2015); *EEOC v. Centura Health,* 933 F.3d 1203 (10th Cir. 2019)); religious accommodation (*EEOC v. UPS, Inc.*, 587 F.3d 136 (2d Cir. 2009)). Despite this judicially endorsed use of EEOC

subpoenas, Movants suggest that universities, as employers, are beyond the reach of an EEOC investigation. They further misunderstand that EEOC's ability to obtain contact information of witnesses and victims, and to discover complaints of antisemitic harassment in the workplace, is a core function essential to rooting out discrimination.

Effectively shutting down an investigation because of emotionally charged concerns would simply nullify the efficacy of Title VII and EEOC's investigative authority. The enforceability of EEOC subpoenas cannot rise or fall based on consent from organizations that include individuals who may be covered by the subpoena. Movants' position, if accepted, places the victims EEOC seeks to protect in the precarious position of not being fully protected by Title VII's administrative procedures and at a disadvantage as to EEOC's law enforcement function. Admittedly, identifying Jewish workers fearful of coming forward, who are potential witnesses and/or victims, demands a tailored approach and cannot countenance the employer under investigation – particularly one accused of failing to protect Jewish employees -- acting as a mediator or conduit between those employees and EEOC. That is all EEOC has attempted to do here.

<u>Conclusion</u>

For the reasons discussed above, EEOC respectfully requests that this Court deny Movants' Motion to Intervene in this subpoena enforcement action.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
/s/
DEBRA M. LAWRENCE
Regional Attorney
Philadelphia District Office
31 Hopkins Pl., Suite 1432
Baltimore, MD 21201

410 801-6691
Debra.lawrence@eeoc.gov

CERTIFICATE OF SERVICE

I hereby certify that the above-referenced document was served this 20th day of January,

2026 via ECF to all counsel of record.

/s/_____
Debra M. Lawrence