IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>                        Petitioner,<br><br>              v.<br><br>THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,<br>                        Respondent. | Case No. 2:25-cv-06502 (GJP) |

**REPLY IN SUPPORT OF MOTION TO INTERVENE**

Mark A. Aronchick
Matthew A Hamermesh
Eitan G. Kagedan
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200
maronchick@hangley.com
mhamermesh@hangley.com
ekagedan@hangley.com

Harold Craig Becker
Norman L. Eisen
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave., S.E., No. 15180
Washington, D.C. 20003
(202) 594-9958
norm@democracydefenders.org
craig@democracydefenders.org

Witold J. Walczak
Stephen Loney
Ariel Shapell
AMERICAN CIVIL LIBERTIES
UNION OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
(215) 592-1513
vwalczak@aclupa.org
sloney@aclupa.org
ashapell@aclupa.org

Seth Kreimer
3501 Sansom St.
Philadelphia, PA 19104
Telephone: (215) 898-7447
skreimer@law.upenn.edu

Amanda Shanor
3730 Walnut Street
Philadelphia, PA 19104
203-247-2195
shanor@upenn.edu

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 1

II.   PROPOSED INTERVENORS CLEARLY SATISFY RULE 24'S REQUIREMENTS FOR INTERVENTION ................................................... 2

    A.   The EEOC Mischaracterizes the Proposed Intervenors' Interest in the Litigation .............................................................................. 2

    B.   Proposed Intervenors Assert Rights that Penn Cannot Adequately Protect ........................................................................................ 3

    C.   Statutory Confidentiality Requirements Do Not Adequately Protect Proposed Intervenors ............................................................... 4

    D.   The EEOC's Arguments Against Intervention Rest on Misstatements of the Law .............................................................................. 6

III.   THE EEOC MISCHARACTERIZES THE SUBPOENA'S SCOPE ........................... 8

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Americans for Prosperity Foundation v. Bonta*,
    594 U.S. 595 (2021) ........................................................................................................... 7

*Brumfield v. Dodd*,
    749 F.3d 339 (5th Cir. 2014) .............................................................................................. 4

*Buckley v. Valeo*,
    424 U.S. 1 (1976) ............................................................................................................... 6

*Commonwealth of Pennsylvania, v. President United States of America*,
    888 F.3d 52 (3d Cir. 2018) ................................................................................................. 6

*Equal Employment Opportunity Commission v. Farmer's Price, Inc.*,
    No. 12–MC–148, 2014 WL 1053482 (E.D. Pa. Mar. 18, 2014) ........................................ 7

*Flynn v. Square One Distribution, Inc.*,
    No. 6:16-mc-25-ORL-37TBS, 2016 WL 2997673 (M.D. Fla. May 25, 2016) ................. 7

*National Association for the Advancement of Colored People v. PNC Bank*,
    No. 3:21-MC-15 (JAM), 2021 WL 6502553 (D. Conn. July 23, 2021) ............................ 7

*Simon & Schuster, Inc. v. N.Y. Crime Victims Board*,
    502 U.S. 105 (1991) ........................................................................................................... 8

*United States v. Territory of Virgin Islands*,
    748 F.3d 514 (3d Cir. 2014) ...................................................................................... 2, 4, 6

**Rules, Statutes, and Other Authorities**

29 C.F.R. § 1601.22 .................................................................................................................... 4

42 U.S.C. 2000e-8 ....................................................................................................................... 4

Exec. Order 14243, 90 Fed. Reg. 13681 (March 20, 2025) ....................................................... 5

Fed. R. Civ. P. 24 ............................................................................................................... *passim*

*Antisemetism*, Southern Poverty Law Center (2024),
    https://www.splcenter.org/resources/extremist-files/antisemitism/#2024-
    antisemitic-hate-groups .................................................................................................... 5

Doha Madani et al., *Suspect charged in overnight arson at Pennsylvania Gov. Josh Shapiro's residence*, NBC News (April 13, 2025), https://www.nbcnews.com/news/us-news/gov-josh-shapiro-residence-arson-investigation-rcna201044 ......................................................................................................... 5

*Government databases*, Epic.org, https://epic.org/issues/surveillance-oversight/government-databases/ ...................................... 5

Hannah Natanson, *et. al.*, *DOGE aims to pool federal data, putting personal information at risk*, Wash. Post (May 7, 2025), https://www.washingtonpost.com/business/2025/05/07/doge-government-data-immigration-social-security/ ............................................................................................ 5

Inspector General, U.S. Department of Defense, *Evaluation of the Secretary of Defense's Reported Use of Commercially Available Messaging Application for Official Business*, Rpt. No. DODIG-2026-021 (Dec. 2, 2025), https://media.defense.gov/2025/Dec/04/2003 834916/-1/-1/1/DODIG_2026_021.PDF ........................................................................................ 5

Katie Rogers, *In Trump's Washington, Hate Is Not a Deal Breaker*, N.Y. Times (Oct. 21, 2025), https://www.nytimes.com/2025/10/21/us/politics/trump-ingrassia-republicans.html ................................................................................................................................ 5

Kim Lane Scheppele, *Bullying Universities*, The Contrarian (July 28, 2025), https://contrarian.substack.com/p/trumps-regulation-by-deal .................................................... 3

Meryl Kornfield, *Trump administration admits DOGE accessed personal Social Security data*, Wash. Post (Jan. 20, 2025), https://www.washingtonpost.com/politics/2026/01/20/doge-social-security-data-privacy-act/ ....................................................................................................................... 5

*Protected Whistleblower Disclosure of Charles Borges Regarding Violation of Laws, Rules & Regulations, Abuse of Authority, Gross Mismanagement, and Substantial and Specific Threat to Public Health and Safety at the Social Security Administration* (Aug. 26, 2025), https://whistleblower.org/wp-content/uploads/2025/08/08-26-2025-Borges-Disclosure-Sanitized.pdf ............................................................................................................ 5

Tom Dreisbach, *Multiple Trump White House officials have ties to antisemitic extremists*, NPR (May 14, 2025), https://www.npr.org/2025/05/14/nx-s1-5387299/trump-whitehouse-antisemitism ................................................................................................................................ 5

I.  **INTRODUCTION**

The Opposition frames the EEOC's subpoena as a routine request for information necessary to pursue its investigation of allegations of antisemitic discrimination and harassment without interference from movants' employer. The Proposed Intervenors do not object to the EEOC's investigation of such allegations. Instead, movants oppose the unlawful and unconstitutional manner in which the EEOC has pursued the laudable goal of combating antisemitism.

Much of the EEOC's Opposition is irrelevant to the only issue at stake here: Whether intervention is appropriate under Rule 24. This Reply addresses the aspects of the Opposition that are arguably related to that narrow question.

The EEOC treats the Proposed Intervenors' asserted interest in the litigation as deriving from organization members' status as "potential victims of or witnesses to the allegations in the Commissioner's charge." ECF 28, at 5. This is incorrect. Movants' interest stems instead from the immediate danger that enforcement of the subpoena would violate their constitutional and statutory rights. It is Proposed Intervenors who would be directly affected by enforcement of the EEOC's subpoena, which compels the collection and disclosure of the names and private personal information (including personal phone numbers, personal email addresses, and home mailing addresses) of Jewish-identified University affiliates and employees associated with Penn's Jewish Studies program, as well as the membership rosters of campus Jewish organizations.

There is nothing speculative about the risks that motivate Proposed Intervenors to protect their members' private personal contact information and affiliation with Jewish organizations and programs from disclosure to the government and from the risk of public exposure. The statutory confidentiality requirements the EEOC cites are wholly inadequate to protect movants from these

hazards. And contrary to the Opposition, Proposed Intervenors' interests are not adequately represented by Penn: the University cannot directly assert movants' constitutional and statutory rights, and if forced to accede to some or all of the EEOC's demands, it will leave those rights unprotected. Under Rule 24, intervention therefore is warranted as of right and certainly is permitted.

## II. PROPOSED INTERVENORS CLEARLY SATISFY RULE 24'S REQUIREMENTS FOR INTERVENTION

To support intervention as of right under Rule 24(a)(2), Proposed Intervenors need only show: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *United States v. Territory of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014). Permissive intervention is appropriate if Proposed Intervenors have "a...defense that shares with the main action a common question of law or fact" and the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights" under Rule 24(b).

### A. The EEOC Mischaracterizes the Proposed Intervenors' Interest in the Litigation

The EEOC contends that the Proposed Intervenors "lack a sufficient interest in the subpoena enforcement action." ECF 28, at 6. But Proposed Intervenors' interest does not rest on speculative involvement as potential witnesses or victims, as the EEOC suggests. *See id.*, at 5. Movants' members are not individuals who "may (or may not)" someday be affected by agency action. *Id.* at 15. Instead, the Proposed Intervenors' private personal information is the direct target of the subpoena. Proposed Intervenors seek to intervene on behalf of individuals whose rights will directly and certainly be impaired if the subpoena is enforced. *See* ECF 14-1 § II.B; ECF 21, at 3-7. Proposed Intervenors' First and Fifth Amendment and Religious Freedom Restoration Act

(RFRA) rights will be infringed the moment their names, Jewish affiliations, and personal contact information are collected by the University and disclosed to the EEOC.

B.      **Proposed Intervenors Assert Rights that Penn Cannot Adequately Protect**

Proposed Intervenors seek to intervene to assert their own and their members' constitutional and statutory rights. Those rights belong to Proposed Intervenors and their members and cannot be directly asserted or adequately protected by the University. Proposed Intervenors assert a range of constitutional and statutory arguments – including violations of First Amendment rights to freedom of speech, academic freedom, and the free exercise of religion; the Fifth Amendment's guarantee of equal protection; and the RFRA's protection of religious liberty – that the University does not advance. *Compare* Respondent's Answer in Opposition to Application for an Order to Show Cause, ECF 20 *with* Proposed Intervenors' Opposition to the Application for an Order to Show Cause, ECF 21.

Further, while Penn currently opposes enforcement of the subpoena, the University may be forced to abandon that position, or to agree to modified demands that infringe Proposed Intervenors' rights. The federal government currently is engaged in a multi-front campaign targeting higher education, threatening to withhold billions of dollars in research funding; revoke nonprofit tax status; withdraw universities' ability to sponsor international faculty and students; and cut off the eligibility of universities' students to qualify for federally-sponsored student loans.[1] This pressure creates a genuine risk that Penn may ultimately determine it has no reasonable choice but to yield to the EEOC's demands.

---

[1] *See, e.g.*, Kim Lane Scheppele, *Bullying Universities*, The Contrarian (July 28, 2025), https://contrarian.substack.com/p/trumps-regulation-by-deal.

### C. Statutory Confidentiality Requirements Do Not Adequately Protect Proposed Intervenors

Rule 24 requires the Court to assess whether disposition of this action "may," as a practical matter, impair Proposed Intervenors' ability to protect their interests. *Territory of V.I.*, 748 F.3d at 519. That inquiry turns on risk, not certainty, of impairment. While speculation alone may not suffice, Rule 24 requires a showing of neither inevitable nor fully realized harm. *See Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014).

The EEOC argues that statutory confidentiality protections obviate the need for intervention here. The EEOC grossly overstates these statutory protections, which are both narrow and temporary. First, by its terms, Title VII prohibits only *public* disclosure of information obtained by the Commission *prior to the institution of proceedings*. *See* 42 U.S.C. 2000e-8(e) ("It shall be unlawful…to make *public*…any information obtained…*prior to the institution* of any proceeding under this subchapter involving such information.") (emphasis added); *see also* 29 C.F.R. § 1601.22 (expressly permitting disclosures "to representatives of interested Federal, State, and local authorities as may be appropriate or necessary to the carrying out of the Commission's function…."). After the institution of a proceeding, the information acquired pursuant to the subpoena is unprotected. The Act also does not prohibit dissemination of the information to other governmental entities – such as ICE or DOGE – and it imposes no confidentiality obligation at all once proceedings commence.

The limitations of these statutory protections are not theoretical. Recent breaches of data privacy and security and the government's professed desire to encourage and facilitate information sharing across government agencies both exacerbate the risks that the confidentiality of movants'

private personal information,² including home mailing addresses that may indicate physical location, will be compromised.³ On the day the EEOC's Opposition was filed, media reports described a government admission of disclosures that violated protections similar to those the EEOC relies on here.⁴ And because the Civil Rights Act provides no civil remedy for unlawful disclosure, any misuse of the Proposed Intervenors' personal information would leave them entirely dependent on this Administration's Department of Justice for enforcement. The Act's promise of confidentiality therefore offers cold comfort.

---

² *See, e.g.*, Inspector General, U.S. Department of Defense, *Evaluation of the Secretary of Defense's Reported Use of Commercially Available Messaging Application for Official Business*, Rpt. No. DODIG-2026-021 (Dec. 2, 2025), https://media.defense.gov/2025/Dec/04/2003834916/-1/-1/1/DODIG_2026_021.PDF; *Protected Whistleblower Disclosure of Charles Borges Regarding Violation of Laws, Rules & Regulations, Abuse of Authority, Gross Mismanagement, and Substantial and Specific Threat to Public Health and Safety at the Social Security Administration* (Aug. 26, 2025), https://whistleblower.org/wp-content/uploads/2025/08/08-26-2025-Borges-Disclosure-Sanitized.pdf; *Government databases*, Epic.org, https://epic.org/issues/surveillance-oversight/government-databases/; Exec. Order 14243, 90 Fed. Reg. 13681 (March 20, 2025) (ordering the "intra- and inter-agency sharing and consolidation" of data); Hannah Natanson, *et. al.*, *DOGE aims to pool federal data, putting personal information at risk*, Wash. Post (May 7, 2025), https://www.washingtonpost.com/business/2025/05/07/doge-government-data-immigration-social-security/.

³ This risk is particularly acute against the backdrop of rising antisemitism. *See, e.g.*, Katie Rogers, *In Trump's Washington, Hate Is Not a Deal Breaker*, N.Y. Times (Oct. 21, 2025), https://www.nytimes.com/2025/10/21/us/politics/trump-ingrassia-republicans.html; Tom Dreisbach, *Multiple Trump White House officials have ties to antisemitic extremists*, NPR (May 14, 2025), https://www.npr.org/2025/05/14/nx-s1-5387299/trump-whitehouse-antisemitism; Doha Madani et al., *Suspect charged in overnight arson at Pennsylvania Gov. Josh Shapiro's residence*, NBC News (April 13, 2025), https://www.nbcnews.com/news/us-news/gov-josh-shapiro-residence-arson-investigation-rcna201044; *Antisemetism*, Southern Poverty Law Center (2024), https://www.splcenter.org/resources/extremist-files/antisemitism/#2024-antisemitic-hate-groups.

⁴ Meryl Kornfield, *Trump administration admits DOGE accessed personal Social Security data*, Wash. Post (Jan. 20, 2025), https://www.washingtonpost.com/politics/2026/01/20/doge-social-security-data-privacy-act/ (describing "a secret agreement between a DOGE employee and an unidentified political advocacy group" which provided for "sharing Social Security data with the aim of overturning election results in certain states.").

Nor does the public availability of certain *professional* contact information for a subset of the Proposed Intervenors alter the analysis. *See* ECF 28, at 7-8. The posting of professional information (work phone number, university email addresses) does not diminish the expectation of privacy in one's *personal* phone number, *personal* email address, and *home* address – let alone as part of a consolidated list of Penn's Jewish employees *with* their Jewish-affiliations. That personal information is private, as the EEOC's demand for it – despite professional information being available online – demonstrates. And the Jewish Studies program is only one of several groups targeted by the subpoena: even professional contact information is not publicly available for many of the individuals whose personal data and organizational affiliations would be disclosed.

### D. The EEOC's Arguments Against Intervention Rest on Misstatements of the Law

Contrary to the EEOC's contention, the risk that Proposed Intervenors' rights will be impaired by enforcement of the subpoena is neither abstract nor speculative. The subpoena seeks immediate disclosure of Proposed Intervenors' constitutionally protected personal information. If enforced, that compelled disclosure itself would effect a concrete constitutional injury. *See Buckley v. Valeo*, 424 U.S. 1, 64 (1976). The risk of that injury alone satisfies Rule 24's impairment standard.

To avoid this result, the EEOC collapses the intervention inquiry into an examination of the merits, *i.e.*, the subpoena's enforceability. The Proposed Intervenors need only demonstrate a protectable interest that may be affected or impaired by disposition of the action, not prove that the subpoena is unenforceable (though it is). *See, e.g.*, *Commonwealth of Pa., v. President United States of Am.*, 888 F.3d 52, 58 (3d Cir. 2018); *Territory of V.I.*, 748 F.3d at 519. By demanding that the Proposed Intervenors litigate the substance of their constitutional claims as a condition of

participation, the EEOC seeks to impose a much higher threshold than that actually required by Rule 24.

The EEOC also incorrectly suggests that only evidentiary privileges can support objections to a subpoena. *See* ECF 28 at 6-7. To the contrary, courts long have recognized that non-parties may object to subpoenas that seek other forms of protected or confidential information, including the financial records at issue in *NLRB v. PNC Bank,* No. 3:21-MC-15 (JAM), 2021 WL 6502553 (D. Conn. July 23, 2021) (discussed in ECF 14-1 at 17 & ECF 28 at 15-16). The Proposed Intervenors' members' personal contact information and associational affiliations fall squarely within that protected category. *See, e.g.*, *Flynn v. Square One Distrib., Inc.*, No. 6:16-mc-25-ORL-37TBS, 2016 WL 2997673, at *2 (M.D. Fla. May 25, 2016) ("An individual...may invoke the First Amendment privilege in response to a Rule 26 discovery request when it can show – with an objectively reasonable probability – that compelled disclosure will chill associational rights." (cleaned up) (decided prior to *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021), which obviated the requirement of a demonstration of chill)).

The cases cited by the EEOC are inapposite and, indeed, confirm the propriety of intervention here. In *EEOC v. Farmer's Price, Inc.*, No. 12–MC–148, 2014 WL 1053482 (E.D. Pa. Mar. 18, 2014) (*see* ECF 28, at 15), for example, the court rejected intervention because the movants were neither the recipients nor the targets of the subpoena and had not alleged a legitimate expectation of privacy with respect to the subpoenaed information. *Id.* at *4. Here, by contrast, Proposed Intervenors' members' private information is the *direct target* of the subpoena, and they possess a legitimate expectation of privacy in the information the EEOC demands.

The EEOC elides established First Amendment law by claiming that associational privacy does not "fall within any recognized category of privileged information." ECF 28 at 7.

Constitutional protections dating back nearly 70 years cannot so easily be brushed aside. *See* ECF 14-1 at 9-13. The EEOC's Opposition also rests on the mistaken premise that constitutional injury depends on the agency's intent. *See* ECF 28 at 11. It does not. The Supreme Court has made clear that intent is immaterial to First Amendment claims. *Simon & Schuster, Inc. v. N.Y. Crime Victims Bd.*, 502 U.S. 105, 117 (1991). In any event, like several of the Opposition's arguments, intent goes to the merits and has no bearing on the right to intervene.

### III. THE EEOC MISCHARACTERIZES THE SUBPOENA'S SCOPE

The EEOC asserts that it "modified its subpoena to exclude all students," and that the Jewish Law Students Association (JLSA) therefore is not an appropriate Intervenor. ECF 28 at 5 n.2, 7. That is incorrect. Although the EEOC agreed to remove *some* students from the scope of the subpoena, the subpoena's first paragraph expressly includes "other employees," which it defines as "including, but not limited to, students employed by the University." *See* ECF 1-20 at ¶ 1. Declarants for Proposed Intervenor JLSA state: "We and many other JLSA members are employed by the university, including as teaching assistants and research assistants, EEOC's request for information about Jewish employees and those associated with Jewish organizations would impact us and many other JLSA members directly." ECF 14-4, JLSA Decl. at ¶ 7. JLSA's members are included in the subpoena's plain terms.

*       *       *

This case involves precisely the circumstances Rule 24 is designed to address: a party seeking relief that will immediately impair the Proposed Intervenors' rights. Because the subpoena compels disclosure that cannot be undone, and because the University cannot adequately protect

- 9 -

the rights at stake, Rule 24 requires intervention. If intervention is not granted as of right, permissive intervention certainly is warranted.

Dated: January 26, 2026

Harold Craig Becker
Norman L. Eisen
Democracy Defenders Fund
600 Pennsylvania Ave., S.E., No. 15180
Washington, D.C. 20003
(202) 594-9958
norm@democracydefenders.org
craig@democracydefenders.org

Seth Kreimer
3501 Sansom St.
Philadelphia, PA 19104
(215) 898-7447
skreimer@law.upenn.edu

Amanda Shanor
3730 Walnut Street
Philadelphia, PA 19104
(203) 247-2195
shanor@upenn.edu

Respectfully submitted,

By: /s/ Matthew A Hamermesh
    Mark A. Aronchick
    Matthew A Hamermesh
    Eitan G. Kagedan
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200
maronchick@hangley.com
mhamermesh@hangley.com
ekagedan@hangley.com

Witold J. Walczak
Stephen Loney
Ariel Shapell
AMERICAN CIVIL LIBERTIES
UNION OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
(215) 592-1513
vwalczak@aclupa.org
sloney@aclupa.org
ashapell@acluepa.org

*Counsel for the Proposed Intervenors*

**CERTIFICATE OF SERVICE**

      I, Matthew A Hamermesh, hereby certify that on this 26th day of January, 2026, I caused to be filed a true and correct copy of the foregoing REPLY IN SUPPORT OF MOTION TO INTERVENE via the Court's electronic filing system, which will serve a copy on all counsel of record.

      Respectfully submitted,

      */s/ Matthew A Hamermesh*