**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

U.S. EQUAL EMPLOYMENT )
OPPORTUNITY COMMISSION, )
                       )
       Petitioner, )
                       )
       v. )  Civil Action No. 2:25-CV-06502-GJP
                       )
THE TRUSTEES OF THE UNIVERSITY )
OF PENNSYLVANIA, )
                       )
       Respondent. )
_____ )

**PETITIONER EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S**
**REPLY TO RESPONDENT'S ANSWER IN OPPOSITION TO**
**APPLICATION FOR AN ORDER TO SHOW CAUSE**

<div style="margin-left:50%">

CATHERINE L. ESCHBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

DEBRA M. LAWRENCE
Regional Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Philadelphia District Office
31 Hopkins Pl., Suite 1432
Baltimore, MD 21201
410 801-6691
Debra.lawrence@eeoc.gov

</div>

<u>Introduction</u>

The outcome here should be clear cut: the information sought is relevant to investigating a valid EEOC charge and the subpoena therefore must be enforced. Any other outcome would represent a radical departure from longstanding, binding caselaw and constitute clear error. The subpoena at issue, seeking contact information for potential victims and witnesses, is no different from the wide range of subpoena requests in numerous EEOC investigations on a variety of protected bases seeking witness and victim contact information. This type of data request from an employer subject to an EEOC investigation is not new or unusual. *See, e.g., EEOC v. Camden Development,* Misc. Action No. 24-167 (RJL) Inc., 2025 WL 3707138 (D.D.C. Dec. 22, 2025); *EEOC v. Centura Health,* 933 F.3d 1203 (10th Cir. 2019); *McLane Co., Inc. v. EEOC,* 581 U.S. 72 (2017); *EEOC v. WSSC,* 631 F.3d 174 (4th Cir. 2011); *EEOC v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 639 F.3d 366 (7th Cir. 2011); *EEOC v. UPS, Inc.*, 587 F.3d 136 (2d Cir. 2009). Courts routinely enforce EEOC's subpoenas, including to obtain information necessary to communicate directly with victims and witnesses, as central to the agency's ability to efficiently and effectively investigate and root out unlawful discrimination.

Rather than comply with EEOC's requests aimed at identifying possible victims of and witnesses to a hostile work environment based on religion, national origin, and race, Respondent has instead chosen to undertake an intensive and relentless public relations campaign against the EEOC. Its brief, and those of potential intervenors and amici, forecast highly speculative and deeply nefarious outcomes should the EEOC's subpoena be enforced. This dark prognosticating has been predictably (and immediately) reported in national, local, and campus outlets.[1] But an

---

[1] *See, e.g. The New York Times*; Penn's legal filing pushes back on EEOC demand for a list of faculty and staff; Over 150 Penn Jewish faculty file brief in support of University response to antisemitism lawsuit - The Daily Pennsylvanian; The Trump Agenda: Penn Slams Trump Administration's Demand for Personal Information of Jewish Employees (last accessed Jan. 26, 2026).

EEOC subpoena's enforceability is governed by law, not by the intensity of the parties' rhetoric, and decided by the courts, not the press. As set forth below, Respondent's offer to "send notices to *all of its employees* informing them of the agency's desire to hear about any experiences of antisemitism, together with instructions about how to contact the EEOC directly" is unworkable and would undermine the integrity of the agency's investigation. Respondent's Answer In Opposition To Application For An Order To Show Cause (hereinafter "Respondent's brief") at 1 (emphasis in original). Messages from EEOC to employees filtered through an employer always risk creating confusion, fear, and mistrust among recipients. Respondent's contention that EEOC's request for contact information is an "[e]xtraordinary and unconstitutional demand" (*id*.) that would result in "a threat to the safety of Jews and others who have engaged with Jewish life or scholarship" (ECF-20-18) is untethered from both the law and the reality of these proceedings, where the EEOC seeks only to investigate allegations of serious, widespread antisemitic harassment in Respondent's workplace. Against that backdrop, Respondent's suggestion that it invite its workforce to contact EEOC, if they wish, is performative at best, and unlikely to yield potential victims of and witnesses to any hostile work environment.

Equally unworkable is Respondent's invitation for EEOC to use Respondent's communication platforms to contact potential victims and witnesses. EEOC's need to conduct its investigation outside of Respondent's infrastructure is obvious: Any employer's access to and ability to monitor communications occurring over its platforms heightens the possibility of retaliation against employees who cooperate with the agency. Nor does EEOC want to interfere with employees' work obligations, or to alienate them by contacting them at work. EEOC's decision to refrain from using Penn's communication platforms and seek alternative methods of communication is well-founded. *See also Case New Holland, Inc. v. EEOC,* CA No. 1:13–cv–

2

01176 (RBW), 2014 WL 6679884 (D.D.C. Oct. 17, 2014) (employer asserted EEOC violated the Constitution and Administrative Procedure Act by issuing questionnaires to potential victims of discrimination over the employer's email platform).

1. Respondent's Challenge to the Subpoena's Enforceability is Toothless

As made clear in EEOC's initial brief, a subpoena enforcement proceeding is summary in nature and the subpoena will be enforced upon a showing that the charge is proper, the information requested is relevant to the charge, the subpoena is not too indefinite, and is not issued for an illegitimate purpose or unduly burdensome. *See McLane Co., Inc. v. EEOC,* 581 U.S. 72, 76-77 (2017). Notably, in the administrative process during which Respondent *twice* submitted a Petition to Revoke or Modify the Subpoena, it failed to challenge any of these criteria and focused solely on privacy and confidentiality concerns. Respondent's newfound arguments challenging these criteria are meritless.

a. The Charge is Valid.

Respondent's argument that the Commissioner's charge is invalid because "it lacks *any* employee complaint the agency received, *any* allegation made by or concerning employees, or *any* specific alleged workplace incident(s) or practice(s)," ECF 20, Respondent brief at 9, misunderstands the nature of a Commissioner charge and further fails to comprehend that the instant proceeding is not a merits-based determination. EEOC's procedural regulations at 29 CFR § 1601.12 (3), merely require that a Commissioner's charge contain "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." Consistent with those requirements, this charge alleges a time frame, an unlawful employment practice (hostile work environment), the individuals potentially affected by that alleged unlawful employment practice (Jewish employees), and the publicly available sources

3

(*e.g.,* Title VI complaints filed in federal court and with the U.S. Department of Education;

sworn testimony before the U.S. House Committee on Education and the Workforce) describing

the bases for the Commissioner's allegations. Nothing more is required:

> … Congress wished to place a Commissioner on the same footing as an aggrieved private party: neither was held to any prescribed level of objectively verifiable suspicion at the outset of the enforcement procedure. Rather, the determination whether there was any basis to their allegations of discrimination was to be postponed until after the Commission had completed its inquiries.

*EEOC v. Shell Oil,* 466 U.S. 54, 76-77 (1984). Respondent claims there is no reasonable basis for

the charge and it is invalid. Here, it strays into a merits-based argument, denying the existence of

a hostile work environment because its campus "protests and other expressions in the public

square do not equate to the workplace harassment of employees." ECF 20, Respondent's brief at

10.[2] This argument is also at odds with *Shell Oil*, which flatly rejected the need for reasonable

cause before the issuance of a Commissioner's charge, noting that "it would drastically limit the

ability of the Commission to investigate allegations of systemic discrimination, and therefore

would be plainly inconsistent with Congress' intent." *Id.* at 78. Respondent next continues to

challenge the charge's validity, claiming no unlawful employment practice is alleged. (ECF 20,

Respondent's brief at 11). But "a hostile work environment" is itself an "unlawful employment

practice[,]" *Vereen v. Woodland Hills Sch. Dist.*, CV-06-462, 2008 WL 794451, *8 (W.D. Pa.

Mar. 24, 2008), enabled through the "terms and conditions of employment" language of section

703(a) of Title VII, 42 U.S.C. § 2000e-2(a)(1). *See Abramson v. William Paterson College,* 260

F.3d 265, 279 (3d Cir. 2001) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see

also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) ("A hostile work

---

[2] In so asserting, Respondent ignores its own documents noting the existence of "swastikas and hateful graffiti," ECF 1-10, "hateful antisemitic messages projected on buildings," "disturbing emails threatening violence to individuals purely based on their Jewish and other identities" ECF 1-14. *See also* ECF 1, n. 3.

4

environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' 42 U.S.C. § 2000e–5(e)(1)").

<div align="center">b. The Subpoena Seeks Relevant Information.</div>

EEOC's application makes clear that victims of and witnesses to a hostile work environment are relevant to a charge alleging such. ECF 1 at 16. EEOC confined its requests to faculty and staff who complained of antisemitic harassment, who belonged to Jewish affinity organizations, or who worked in the Jewish Studies Program—individuals who presumably could shed light on the nature and extent of the alleged hostile work environment at Respondent.[3] These requests were tailored to identify individuals with knowledge of the alleged environment, without a focus on an individual's particular organizational affiliation. Accordingly, EEOC is amenable to collecting the contact information without reference to anyone's particular organizational affiliation, mooting the concerns asserted by Respondent on pages 18-21 of its brief. But Respondent goes further still and claims confidentiality and Constitutional protections with respect to the individuals' contact information and hostile work environment complaints. However, there is no qualitative distinction between the information sought here and that at issue in *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990), where the Court rejected Respondent's similar claims that Constitutional and confidentiality protections over tenure materials were sufficient to defeat an EEOC subpoena. "Clearly, an alleged perpetrator of discrimination cannot be allowed to pick and choose the evidence which may be necessary for an agency investigation." *Id.* at 193 (quoting *EEOC v. Franklin and Marshall College,* 775 F.2d. 110, 116 (3d Cir. 1985)). Respondent cannot and did not distinguish this case. In short, EEOC's

---

[3] EEOC withdrew its requests for student information well before filing its subpoena enforcement action. Therefore, the Court need not reach the question whether Respondent has possession, custody, or control over those organizations.

willingness to receive individuals' contact information without regard to their organizational affiliation should address Respondent's concerns.

### c. The Subpoena Requests are not Unduly Burdensome

Respondent fails to offer any evidence that compliance with the subpoena would be unduly burdensome, evidence it must provide in order to meet the high standard courts have set forth for establishing undue burden. *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 477 (4th Cir. 1986) ("conclusory allegations" insufficient to establish that "producing the [subpoenaed] documents would seriously disrupt normal business operations."); *see In re AAM Holding Corp.,* 153 F.4th 252, 263 (2d Cir. 2025) (respondent could not demonstrate undue burden where it failed to provide sufficient evidence of normal operating costs). Instead, Respondent conflates undue burden with concerns advanced by amici and the proposed intervenors related to nonconsensual disclosure of contact information and complaints, (Respondent's brief at 13), characterizing EEOC's requests as "the compelled cataloging of Jews"—an inflammatory characterization wholly at odds with the agency's antidiscrimination mission and investigatory aims here, and which also fails to meet the requirements to satisfy the undue burden standard.

2. Purported Confidentiality and Constitutional Concerns
   Provide No Legal Basis Not to Enforce EEOC's Subpoena.

Respondent alleges that the private nature of victims' and witnesses' contact information and prior complaints are automatically shielded from disclosure by the First Amendment. This is incorrect. Its cases involve circumstances where the government was seeking to investigate and probe the associational group itself, and where the Supreme Court concluded under an exacting scrutiny standard, that the asserted government interests did not outweigh the actual burdens on association. Any attempt by Respondent to make this showing would be futile.

In *Americans for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021), the California state government required that registered charities disclose complete donor information, asserting it necessary to investigate fraud. The Court found the requirement violated the First Amendment where the petitioners—tax exempt charities—had faced past threats of violence and harassment, donors would face similar risks if identified, the State previously had inadvertently published this donor information, and such disclosures rarely were used to audit or investigate charities. In so concluding, the Court explained that there was "dramatic mismatch" between the state's asserted interest in the information and the disclosure regime implemented to that end, where the record did not reflect a single instance of the compelled donor information advancing regulatory or investigatory interests. *Id.* at 613. Here, there is not a generalized compelled, upfront disclosure; instead EEOC has tailored a request likely to lead to relevant information about potential witnesses to or victims of antisemitic harassment and EEOC is required to maintain such information under strict confidentiality. *Bonta* relied on *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449 (1958), which held the First Amendment prohibited compelled disclosure of its members' identities where the Alabama Attorney General attempted to oust from the State a newly opened local NAACP chapter, whose members had been threatened with economic reprisals and violence. Here, in stark contrast, EEOC is focused exclusively on identifying witnesses and victims in order to investigate and try to remedy any hostile work environment if cause is found in the investigation. EEOC, pursuant to its law enforcement function, seeks information for the limited purpose of identifying potential witnesses or victims, and not to probe, penalize, or chill religious or associational activity, and thus the First Amendment would not shield EEOC's tailored collection of information sought in the subpoena.

7

Even if Respondent's allegations could give rise to a non-futile First Amendment claim, that would not automatically invalidate a lawfully issued government subpoena where EEOC can clearly demonstrate a compelling interest in enforcement. "Although the speech and associational protections afforded by the First Amendment have been invoked in defense of an administrative subpoena, the presence of First Amendment issues alone is not enough to thwart its enforcement." *See United States v. Institute for College Access & Success,* 27 F. Supp.3d 106, n.8 (D.D.C. 2014) (citation omitted). "A subpoena will be enforced if the government can demonstrate that it has a compelling interest in obtaining that information. '[A] compelling interest exists—and [] a subpoena will be enforced regardless of potential First Amendment issues—where the agency seeking the information is conducting an investigation pursuant to its statutory authority.'" *Id.* (citing *Federal Election Comm'n. v. Machinists Non–Partisan Political League,* 655 F.2d 380, 389–90 (D.C.C. 1981)). Here, of course, the compelling interest is a law enforcement agency's statutory mandate to remedy employment discrimination.

Additional cases relied on by Respondent similarly are distinguishable or have absolutely no application to EEOC's subpoena powers. It is well-settled that "contact information . . . generally is considered less sensitive than 'more intimate privacy interests such as compelled disclosure of medical records and personal histories.'" *Rodriguez v. Nike Retail Servs.*, 2015 U.S. Dist. LEXIS 56377, *9 (N.D. Cal. Apr. 29, 2015); *S. Ave. Partners LP v. Blasnik*, 2013 U.S. Dist. LEXIS 201226 (N.D. Tex. Jun. 21, 2013) (same). Respondent, however, relies on *U.S. v. Westinghouse Electric Corp.* 638 F.2d 570, 578 (3d Cir. 1980); *Behar v. Pennsylvania Dep't of Transp.*, 791 F. Supp. 2d 383 (M.D. Pa. 2011); and *In re Subpoena No. 25-1431-014,* 2025 WL 3252648, at *19 (E.D. Pa. Nov. 21, 2025)—all of which involve heightened privacy standards for medical records. No administrative subpoena was at issue in *Fraternal Order of Police, Lodge*

8

*No. 5 v. City of Philadelphia*, 812 F.2d 105, 109-10, 112-13 (3d Cir. 1987), which concerned medical, financial, and behavioral questions in a law enforcement job application. *Pennsylvania State Educ. Ass'n v. Commonwealth Dep't of Cmty. & Econ. Dev.*, 148 A.3d 142, 150-52 (Pa. 2016) is likewise unhelpful to Respondent, as the public dissemination of employees' addresses is not at issue here. Respondent strays even farther afield with: *Allegheny Reproductive Health Ctr. v. Pennsylvania Dep't of Hum. Servs.*, 309 A.3d 808, 902-03 (Pa. Jan. 29, 2024), challenging the withholding of abortion funding with no application to a federal administrative subpoena seeking contact information or complaints; *U.S. Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 501 (1994), preventing the disclosure of federal workers' home addresses to labor organizations; and *Arista Records LLC v. Doe 3,* 604 F.3d 110 (2d Cir. 2010), rejecting defendants' right of anonymity as outweighed by plaintiff's allegations that defendants were downloading and/or distributing music over the Internet in violation of plaintiffs' copyrights.

Requiring Respondent to produce contact information for potential witnesses and victims does not at all impact or impair their interests—Constitutional, privacy, or otherwise. Employees are entitled to choose not to cooperate with EEOC when contacted. If they believe they were unharmed, they could say so. Such responses would be relevant in determining whether EEOC should make a cause finding following the investigation. *See Harris,* 510 U.S. at 21 (1993) ("[I]f the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation."). But nowhere in Title VII's subpoena authorities is EEOC restricted to reaching out to potential victims or witnesses only with their consent and only with the employer under investigation as the messenger— principles that Respondent repeatedly has ignored resulting in this enforcement action. Respondent also fails to acknowledge that strict statutory confidentiality requirements

9

impose criminal penalties on agency staff in this, and every other Title VII investigation undertaken by EEOC. 42 U.S.C. §2000e-8(e). Its concerns about the security of EEOC's IT systems are disingenuous, given its own recent security breaches of personal information. *See* Exhibit 1 (October 2025 breach), [Penn investigating business software data breach affecting personal records - The Daily Pennsylvanian](#) (last accessed Jan. 26, 2026)**,** and resulting class action lawsuit (*Kelly v. University Of Pennsylvania,* 2:25cv6234 (E.D. Pa. Nov. 3, 2025)).

Harassment complaints to Penn's Task Force on Antisemitism are relevant to whether the alleged incidents occurred and whether Respondent took prompt remedial action to address the complaints. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998). Claiming confidentiality as a basis for withholding this information would allow any employer to shield the records of any internal, confidential HR investigation from any subsequent EEOC investigation on the grounds of promised confidentiality. That is not and cannot be the law, for it would deprive EEOC of what is likely the *most* relevant information in any hostile work environment investigation. Further, Respondent's position remains at odds with *EEOC v. University of Pennsylvania.* Accordingly, Respondent's assurances of confidentiality to employees who participated in listening sessions, as a matter of law, cannot undermine EEOC's law enforcement functions.

<div align="center">Conclusion</div>

EEOC was forced to file this action only because Respondent impeded the underlying investigation and refused to comply with a lawful subpoena for relevant information. The law is not on Respondent's side; this Court's role in a subpoena enforcement action is "limited," *see EEOC v. UPMC*, 471 F. App'x 96, 100 (3d Cir. 2012), and Respondent fails to carry its burden to show the subpoena should not be enforced. EEOC's application must be granted.

<div align="center">10</div>

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

/s/_____
DEBRA M. LAWRENCE
Regional Attorney
Philadelphia District Office
31 Hopkins Pl., Suite 1432
Baltimore, MD 21201
410 801-6691
Debra.lawrence@eeoc.gov

CERTIFICATE OF SERVICE

I hereby certify that the above-referenced document was served this 26th day of January,

2026 via ECF to all counsel of record.

/s/_____
Debra M. Lawrence

11