IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>　　　　　　　　　Petitioner,<br><br>　　　　v.<br><br>THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,<br>　　　　　　　　　Respondent. | Case No. 2:25-cv-06502 (GJP) |

**INTERVENORS' PROPOSED SUR-REPLY**

The EEOC's Reply attempts to reframe Intervenors' constitutional objections as immaterial because they allege this is a "routine," "summary" subpoena enforcement proceeding brought pursuant to Title VII. But the central issue raised by Intervenors is straightforward: even where a subpoena may meet Title VII's statutory prerequisites – which this subpoena does not – the government may not compel the creation and disclosure of lists identifying individuals through proxies for protected identity and association without satisfying constitutional requirements. The Reply's contrary arguments rest on misstatements of controlling law and overread *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990), which did not involve compelled disclosure of associational ties or identity-based lists.

I. **The EEOC's Attempt to Evade the First Amendment's Requirements Fails**

　　A. **The EEOC's "Benign Purpose" Argument Misstates Compelled-Disclosure Law**

The EEOC argues that the compelled-disclosure and associational-privacy cases on which Intervenors rely are inapplicable here because the EEOC seeks employees' names and personal contact information for the assertedly legitimate purpose of investigating antisemitic harassment and discrimination. *See* EEOC Reply at 6–7 (ECF 43) (distinguishing precedents on the grounds

- 1 -

that the EEOC seeks information "for the limited purpose of investigating" and not "to probe, penalize, or chill" association). But the First Amendment's applicability does *not* depend on whether the government intends to chill association or speech. In *Americans for Prosperity Foundation v. Bonta*, for example, California asserted a concededly legitimate regulatory interest and the Court did not identify any retaliatory or censorial purpose. 594 U.S. 595, 597 (2021) ("The Court does not doubt the importance of California's interest in preventing charitable fraud and self-dealing."). Yet the Court held that compelled disclosure of identities nonetheless burdened associational rights and therefore triggered exacting scrutiny. *Id*. at 606–08. The Court's analysis turned on the associational burden imposed by compelled disclosure and on whether the government's demand was narrowly tailored to a sufficiently important interest – not on the government's subjective intent. *Id*. at 606–07. The EEOC's effort to evade that settled framework by invoking an assertedly benign purpose therefore is contrary to controlling Supreme Court precedent.

Nor can the EEOC distinguish *Bonta* on the ground that the EEOC must keep the subpoenaed information confidential: California likewise maintained that its donor disclosures would remain confidential, yet the Court held that the mandated disclosure burdened associational rights and required exacting scrutiny, which it failed. *See id.* at 608–10.

### B. Describing the Subpoena as "Summary" or "Routine" Does Not Negate the Constitution's Applicability

The EEOC also invokes the "summary" nature of subpoena enforcement proceedings, suggesting that constitutional limits are less salient here. *See* EEOC Reply at 4 (ECF 43). But constitutional protection does not turn on whether the government acts through a summary subpoena proceeding or through some other mechanism. Even where the government's demand satisfies statutory prerequisites, including Title VII's (which it does not here), it remains subject

to – and may still violate – the independent constraints of the First Amendment. *See Bonta*, 594 U.S. at 606–07; NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 462 (1958).

The EEOC also attempts to minimize the constitutional concerns at stake by characterizing the subpoena as a "routine request for information likely to lead to victims of and witnesses to the alleged hostile work environment." EEOC Reply at 3–4 (ECF 43). But the record reflects that the Jewish faculty, staff, and students the EEOC claims to protect have reacted with alarm, including by intervening in this proceeding and submitting sworn declarations describing concrete fears of harassment, doxxing, retaliation, and threats. *See* Proposed Intervenors' Opp. at 2–7 (ECF 21).

Context is crucial to understanding the chilling effect on association of a compelled disclosure. Here, that context includes rising antisemitism; the well-documented reality that students and faculty already have been subjected to harassment and doxxing based on their identities, political and religious beliefs, and associations; and the subpoena's demand for unusually sensitive personal information – including home mailing addresses – of individuals identified through proxies for Jewish affiliation. Proposed Intervenors' Opp. at 1–2, 8 (ECF 21). In this environment, compelled creation and disclosure of lists identifying Jewish-associated individuals predictably deters participation in Jewish cultural, religious, academic, and political life. The EEOC cannot avoid First Amendment scrutiny by labeling the demand "routine" or ignoring this context, as the Supreme Court has emphasized, "when it comes to the freedom of association," "[t]he *risk* of a chilling effect on association is enough, '[b]ecause First Amendment freedoms need breathing space to survive.'" *Bonta*, 594 U.S. at 618–19 (citation omitted, emphasis added). Such a risk plainly exists here.

### C. The EEOC's Attempts to Distinguish Controlling Caselaw Fail

The EEOC attempts to dismiss Intervenors' First Amendment authorities by emphasizing that many of the cited cases arise in factual settings different from this subpoena enforcement action and do not involve the EEOC or a Title VII investigation. *See* EEOC Reply at 6–8 (ECF 43). But the compelled-disclosure and anonymity precedents on which Intervenors rely do not turn on the identity of the agency or a particular regulatory context. They articulate a constitutional principle of broad and longstanding application: that the First Amendment robustly protects anonymous speech and association because compelled disclosure of identities and affiliations predictably deters participation in protected activity. *See, e.g.*, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) (recognizing that compelled disclosure of associational ties can be as chilling as direct suppression); *Bonta*, 594 U.S. at 606–07 (reaffirming that compelled disclosure burdens association and triggers exacting scrutiny); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (protecting anonymous political speech); *Talley v. California*, 362 U.S. 60, 65 (1960) (same). That these decisions arise in different contexts is not a defect; it is the point. Across a wide variety of settings – corporate registration, campaign regulation, petition circulation, and civil litigation – the Supreme Court has repeatedly recognized that anonymity is often essential to the exercise of First Amendment freedoms, and that government demands for identity information must satisfy heightened scrutiny and narrow tailoring. The EEOC identifies no authority holding that constitutional protections evaporate merely because the government invokes a civil-rights investigation or labels its demand "routine."

Nor do the EEOC's invocations of *University of Pennsylvania v. EEOC*, 493 U.S. 182, alter that conclusion. The EEOC relies heavily on *University of Pennsylvania* to suggest that this case is controlled by Supreme Court precedent and that Intervenors' constitutional objections should be rejected out of hand. *See* EEOC Reply at 2–3, 10–11 (ECF 43). But *University of*

*Pennsylvania* is readily distinguishable. That case involved an EEOC subpoena for tenure peer-review materials and addressed a generalized claim that disclosure would chill "academic freedom." 493 U.S. at 196–99. It did not involve the compelled creation of government lists identifying individuals through proxies for religious affiliation, nor did it implicate the compelled-disclosure line of cases protecting anonymous association. Here, by contrast, the subpoena demands names and personal contact information – including home addresses – of individuals identified through their association with Jewish organizations, Jewish studies, and participation in listening sessions. Intervenors' Opp. at 1–2, 8 (ECF 21). Nothing in *University of Pennsylvania* held that Title VII's confidentiality provisions extinguish First Amendment protections for anonymous association or relieve the government of its obligation to justify and narrowly tailor compelled disclosure of sensitive identity-based information.

### D. Confidentiality Provisions Do Not Cure the Constitutional Defect, Particularly Given Recent Data Breaches

Title VII's confidentiality provisions do not eliminate the constitutional burden imposed by compelled disclosure. *See* EEOC Reply at 3 (ECF 43) (arguing that statutory confidentiality provisions and criminal penalties for disclosure eliminate privacy concerns). Recent events confirm that the risks associated with compelled disclosure to the federal government are neither speculative nor abstract. Public reporting and court filings have documented improper federal data sharing and serious failures of data security. In the past year, for example, the Internal Revenue Service improperly shared confidential taxpayer data – including names and addresses – with the Department of Homeland Security, prompting litigation and court orders to halt the disclosures and dispose of improperly shared data.[1] Reports also document the sharing of sensitive Social

---

[1] Jacob Bogage, Jeff Stein, and Perry Stein, *IRS improperly disclosed confidential immigrant tax data to DHS*, Wash. Post (Feb. 11, 2026), https://www.washingtonpost.com/business/2026/02/11/immigrants-irs-dhs-tax-data/.

Security Administration data with DHS in immigration enforcement.[2] And executive directives have expressly pushed broader cross-agency access to unclassified federal records, raising well-founded concerns about aggregation, dissemination, and mission creep.[3] These developments underscore why compelled disclosure of lists of individuals identified through proxies for religious affiliation – particularly including home addresses – cannot be dismissed as harmless merely because the receiving agency is subject to limited confidentiality rules.

## II. The EEOC's Equal Protection Argument Mischaracterizes Intervenors' Position and Misstates Equal Protection Doctrine

The EEOC suggests that Intervenors seek "special restrictions" or "special treatment" for Jewish employees in the enforcement of Title VII. EEOC Reply at 4–5 (ECF 43). That mischaracterizes Intervenors' argument. Intervenors do not ask the Court to exempt Jewish employees from Title VII enforcement or to impose a special rule for a favored group. They ask only for the application of ordinary constitutional equal protection principles, under which government action that classifies individuals based on a suspect characteristic is subject to heightened scrutiny. *Hassan v. City of New York*, 804 F.3d 277, 299 (3d Cir.2015) (collecting cases); *see also* Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 600 U.S. 181, 206–07 (2023)

Here, the EEOC does not deny that its subpoena seeks to identify and contact Jewish employees as such; it defends the demand precisely on the ground that Title VII investigations of religious discrimination "necessarily" entail gathering information about employees' religious affiliations. EEOC Reply at 2 (ECF 43). But under *SFFA*, the existence of an assertedly benign

---

[2] Vittoria Elliott, *Social Security Data Is Openly Being Shared with DHS to Target Immigrants*, WIRED (Nov. 18, 2025), https://www.wired.com/story/social-security-data-shared-with-dhs-target-immigrants/.

[3] Exec. Order 14243, 90 Fed. Reg. 13681 (Mar. 20, 2025).

motive does not relax constitutional scrutiny. 600 U.S. at 206, 230. The same principle applies where the government compels disclosure based on religious identity. *Hassan*, 804 F.3d at 299.

## CONCLUSION

For the foregoing reasons, the Court should deny the EEOC's application. The EEOC's Reply attempts to recast this case as an ordinary subpoena enforcement matter – "routine," "summary," and insulated by confidentiality provisions. But those characterizations do not engage the constitutional problem presented here: the government seeks to compel the creation and disclosure of lists identifying individuals through proxies for protected identity and association, including by compelling production of sensitive personal contact information and home addresses. The Constitution does not permit the government to obtain such identity-based lists without satisfying well-established First Amendment and equal protection requirements, which they have failed to do.

Dated: February 18, 2026

By: */s/ Matthew A Hamermesh*
 Mark A. Aronchick
 Matthew A Hamermesh
 Eitan G. Kagedan
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200
maronchick@hangley.com
mhamermesh@hangley.com
ekagedan@hangley.com

Harold Craig Becker
Norman L. Eisen
Democracy Defenders Fund
600 Pennsylvania Ave., S.E., No. 15180
Washington, D.C. 20003
(202) 594-9958
norm@democracydefenders.org
craig@democracydefenders.org

Seth Kreimer
3501 Sansom St.
Philadelphia, PA 19104
(215) 898-7447
skreimer@law.upenn.edu

Witold J. Walczak
Stephen Loney
Ariel Shapell
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
(215) 592-1513
vwalczak@aclupa.org

- 8 -

sloney@aclupa.org
ashapell@acluepa.org

Amanda Shanor
3730 Walnut Street
Philadelphia, PA 19104
(203) 247-2195
shanor@upenn.edu

*Counsel for the Proposed Intervenors*