# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>         Petitioner,<br>  v.<br><br>THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,<br><br>         Respondent. | No. 2:25-cv-06502 (GJP) |

**RESPONDENT'S SUPPLEMENTAL BRIEF
IN OPPOSITION TO APPLICATION FOR AN ORDER TO SHOW CAUSE**

During the March 10, 2026, hearing on the EEOC's Application to enforce its subpoena, the Court inquired about the application of *Nunez v. Pachman*, 578 F.3d 228 (3d Cir. 2009), to the privacy claims raised by Penn and Intervenors. Tr. 104:3-6, 109:17-110:4. As explained below, under Third Circuit precedent, including *Nunez*, religious identity and affiliation are privacy interests protected by the federal constitution, and the seven-factor balancing test in *United States v. Westinghouse*, 638 F.2d 570, 578 (3d Cir. 1980), provides the standard for evaluating the privacy claims here.

      \*   \*   \*

*Nunez* considered whether there is a cognizable privacy interest in an expunged criminal record. While the Third Circuit had long recognized that individuals do not have constitutional privacy interests in criminal records, Nunez attempted to distinguish the court's prior decision in *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 117 & n.8 (3d Cir. 1987), by arguing that the expungement of his criminal record under a New Jersey statute created a reasonable expectation of privacy. The Third Circuit disagreed. As it did in *Fraternal Order of*

*Police*, the court explained that criminal records are "beyond the purview of the Due Process Clause" privacy protections, as "criminal records, including police reports, indictments, guilty verdicts, and guilty pleas, are inherently public—not private." *Nunez*, 578 F.3d at 232. While Nunez's criminal record had been expunged, the information was "never truly private" because it had long been publicly available prior to its removal from the public record and news accounts of the information "may persist after obliteration of formal records." *Id.* at 231.

Therefore, *Nunez* was not a departure from the Third Circuit's jurisprudence applying the *Westinghouse* balancing factors to evaluate privacy claims based on the disclosure of individuals' non-public information. In *Fraternal Order of Police*, the Third Circuit applied the *Westinghouse* factors to determine if a police questionnaire requiring disclosures about medical history, financial information, and social behaviors violated applicants' privacy rights. 812 F.2d at 112-17, 119-20. The Third Circuit found that personal medical and financial information was "covered by the right to privacy" and applied the *Westinghouse* factors to determine if the government's interest in disclosure overcame the individual applicants' privacy interests. *Id.* at 112-15. In considering the questions concerning social behaviors, such as gambling, alcohol use, and prior arrests, the court noted that while gambling or alcohol consumption in public would not implicate privacy interests, the questions "also encompass[ed] private drinking habits and more secretive gambling, such as in a small group" and that *Westinghouse*'s balancing inquiry was "equally applicable" to disclosures about such behaviors that are inherently private. *Id.* at 116. However, the questions seeking "information concerning [prior] arrests" "st[ood] on a different footing," as "[a]rrests are public by their very nature"; thus, as to that information, the court did "not engage in [*Westinghouse*'s] balancing analysis." *Id.* at 117.

2

As this Court observed at the hearing, Tr. 109:17-21, the *Nunez* court explained that the federal constitution "shields from public scrutiny only that information which involves 'deeply rooted notions of fundamental personal interests derived from the Constitution.'" 578 F.3d at 232 (quoting *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986)).  Religious identity and affiliation fall paradigmatically in that category of private information.  The Supreme Court has held that the "'zones of privacy,'" *Paul v. Davis*, 424 U.S. 693, 712-13 (1976), protected by the Due Process Clause include fundamental personal rights that encompass religious belief and practice such as "freedom of thought and speech" and "liberty of the mind," *Palko v. Connecticut*, 302 U.S. 319, 326-27 (1937), *overruled on other grounds by Benton v. Maryland*, 395 U.S. 784 (1969)—rights that are secured by "the First Amendment [which] has a penumbra where privacy is protected from governmental intrusion," *Whalen v. Roe*, 429 U.S. 589, 599 n.25 (1977) (quoting *Griswold v. Connecticut*, 381 U.S. 479, 483 (1965)).

Indeed, privacy in religious affiliations has been widely recognized in various contexts. There is a "vital relationship between freedom to associate and privacy in one's associations," including one's association with a particular religious faith.  *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) ("'A requirement that adherents of particular religious faiths or political parties wear identifying arm-bands, for example, is obviously'" a "governmental action which might interfere with freedom of assembly" (quoting *American Commc'ns Ass'n, C.I.O., v. Douds*, 339 U.S. 382, 402 (1950)).  Without doubt, the Free Exercise Clause protects an individual's "right to harbor religious beliefs inwardly and secretly." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022); *see also New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 330 (2d Cir. 2025) ("'The Free Exercise Clause thus protects an individual's private right to religious belief[.]'" (citation omitted)), *cert. denied sub nom. Kane v. City of New*

3

*York*, 223 L. Ed. 2d 425, 2025 WL 3620461 (U.S. Dec. 15, 2025).  "Further, the government may not compel affirmation of religious belief." *Central Rabbinical Cong. of U.S. & Canada v. New York City Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014).  Consistent with this jurisprudence recognizing the constitutionally protected personal privacy interests in religious identity, the EEOC's own recordkeeping and reporting requirements for employers, 29 C.F.R. §§ 1602.7-1602.14, require the reporting of data on race, ethnicity, and gender, but not religion or disability.  *See* EEOC, EEO Data Collections, https://www.eeoc.gov/data/eeo-data-collections (last visited Mar. 16, 2026).  Similarly, the Department of Education's regulations, 34 C.F.R. § 100, require universities to report data on the race, ethnicity, and gender of staff, but not religious identity.  *See* U.S. Dep't of Educ., Nat'l Ctr. for Educ. Stats., *Statutory Requirements for Reporting IPEDS Data*, https://surveys.nces.ed.gov/ipeds/public/statutory-requirement (last visited Mar. 16, 2026).

      Where the government seeks disclosure of individuals' private information, *Westinghouse*'s seven-factor balancing test provides the standard for evaluating a violation of privacy claim.  *See Westinghouse*, 638 F.2d at 578.  Like this case, *Westinghouse* involved a subpoena issued by a federal agency to an employer that demanded the employer disclose private employee information.  *Id.* at 572-73.  The *Westinghouse* standard has been repeatedly applied in other cases involving federal government subpoenas.  *See, e.g.*, *FDIC v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) (Federal Deposit Insurance Corporation); *In re Subpoena No. 25-1431-014*, 2025 WL 3252648, at *21 (E.D. Pa. Nov. 21, 2025) (Department of Justice).  Moreover, though *Westinghouse* involved a subpoena for medical records, the Third Circuit has repeatedly applied it to disclosure-based privacy claims generally.  *See C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 161, 179-81, 189 (3d Cir. 2005) (school survey that asked students to disclose information

4

about "drug and alcohol use, sexual activity, experience of physical violence, attempts at suicide, personal associations and relationships," and "religious affiliation," among other topics); *Wentz*, 55 F.3d at 908 (subpoena seeking personal financial records of bank directors); *Fraternal Order*, 812 F.2d at 112-17, 119-20 (police questionnaire requiring disclosure of medical history, finances, and social behaviors). *Westinghouse* is "binding precedent in [this] Circuit," *In re Subpoena No. 25-1431-014*, 2025 WL 3252648, at *21, and governs the privacy claim Penn asserts here.[1]

---

[1] Independently, as previously briefed, because the information demanded here also implicates the First Amendment rights of associational and speech privacy, the EEOC must satisfy the "exacting scrutiny" standard applied in *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021), which it has made no attempt to do.

5

| | |
|---|---|
| Dated: March 16, 2026 | Respectfully submitted,<br><br>/s/ *Seth P. Waxman*<br>Seth P. Waxman (*pro hac vice*)<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>2100 Pennsylvania Avenue, NW<br>Washington, DC 20037<br>Telephone: (202) 663-6000<br>Facsimile: (202) 663-6363<br>seth.waxman@wilmerhale.com<br><br>Debo P. Adegbile (*pro hac vice*)<br>Olivia P. Greene (*pro hac vice*)<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, NY 10007<br>Telephone: (212) 230-8864<br>Facsimile: (212) 230-8888<br>debo.adegbile@wilmerhale.com<br><br>Sean V. Burke<br>Office of General Counsel<br>University of Pennsylvania<br>FMC Tower at Cira Centre South<br>2929 Walnut Street, Suite 400<br>Philadelphia, PA 19104-5099<br>Telephone: (215) 746-5200<br>Facsimile: (215) 746-5222<br><br>*Attorneys for Respondent the Trustees of the University of Pennsylvania* |