# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                    Petitioner,          No. 2:25-cv-06502 (GJP)

   v.

THE TRUSTEES OF THE UNIVERSITY OF
PENNSYLVANIA,

                    Respondent.

## RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION FOR STAY PENDING APPEAL</u>

**TABLE OF CONTENTS**

Page

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................................................1

LEGAL STANDARD .................................................................................................................2

ARGUMENT...............................................................................................................................2

      A.      Penn Is Likely To Prevail On Appeal..........................................................................2

      B.      Penn Will Be Irreparably Harmed Absent A Stay......................................................6

      C.      A Stay Would Not Substantially Harm The EEOC....................................................8

      D.      The Public Interest Favors A Stay..............................................................................9

CONCLUSION...........................................................................................................................10

i

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*AARP v. EEOC*,
390 F. Supp. 2d 437 (E.D. Pa. 2005), *aff'd on other grounds*, 489 F.3d 558
(3d Cir. 2007)...............................................................................................................7

*Americans for Prosperity Foundation v. Bonta*,
594 U.S. 595 (2021)......................................................................................................5

*BST Holdings, L.L.C. v. OSHA*,
17 F.4th 604 (5th Cir. 2021) .........................................................................................6

*C.N. v. Ridgewood Board of Education*,
430 F.3d 159 (3d Cir. 2005)..........................................................................................4

*Connecticut Department of Environmental Protection v. OSHA*,
356 F.3d 226 (2d Cir. 2004)..........................................................................................7

*EEOC v. FedEx Corp.,*
2007 WL 9734298 (D. Ariz. Oct. 5, 2007)..............................................................7, 8, 9

*EEOC v. Kronos Inc.*,
620 F.3d 287 (3d Cir. 2010)..........................................................................................1

*EEOC v. Quad/Graphics, Inc.,*
875 F. Supp. 558 (E.D. Wis. 1995), *aff'd*, 63 F.3d 642 (7th Cir. 1995) .........................7, 8

*EEOC v. Shell Oil Co.*,
466 U.S. 54 (1984)........................................................................................................3

*EEOC v. Union Pacific Railroad*,
867 F.3d 843 (7th Cir. 2017) ........................................................................................2

*Elrod v. Burns*,
427 U.S. 347 (1976).................................................................................................6, 7

*FDIC v. Wentz*,
55 F.3d 905 (3d Cir. 1995)............................................................................................5

*Griswold v. Connecticut*,
381 U.S. 479 (1965)......................................................................................................4

*In re Citizens Bank, N.A.*,
15 F.4th 607 (3d Cir. 2021) ..........................................................................................8

*In re City of Chester*,
  2026 WL 607528 (E.D. Pa. Mar. 3, 2026)...........................................................................7

*In re Revel AC, Inc.*,
  802 F.3d 558 (3d Cir. 2015)...............................................................................2, 3, 6, 8

*K.A. ex rel. Ayers v. Pocono Mountain School District*,
  710 F.3d 99 (3d Cir. 2013)...............................................................................................6

*Matter of Subpoena 2018R00776*,
  947 F.3d 148 (3d Cir. 2020).............................................................................................2

*Nken v. Holder*,
  556 U.S. 418 (2009).........................................................................................................2

*Paul v. Davis*,
  424 U.S. 693 (1976).........................................................................................................4

*Providence Journal Co. v. FBI*,
  595 F.2d 889 (1st Cir. 1979)............................................................................................8

*Singer Management Consultants, Inc. v. Milgram,*
  650 F.3d 223 (3d Cir. 2011) (en banc)............................................................................2

*Texas Alliance for Retired Americans v. Hughs*,
  976 F.3d 564 (5th Cir. 2020) ...........................................................................................8

*United States v. Westinghouse Electric Corp.*,
  638 F.2d 570 (3d Cir. 1980).............................................................................................4

*Whalen v. Roe*,
  429 U.S. 589 (1977).........................................................................................................4

## STATUTES, RULES, AND REGULATIONS

29 C.F.R. § 1601.12(a)(3).......................................................................................................3

28 U.S.C. § 1291.....................................................................................................................1

## OTHER AUTHORITIES

11A Wright & Miller, Fed. Prac. & Proc. § 2948.1 (3d ed. Apr. 2020 update) .............................7

Luke Petersen, *How a federal agency used personal faculty phone numbers to investigate
  antisemitism at Penn*, THE DAILY PENNSYLVANIAN (Feb. 25, 2026),
  https://www.thedp.com/article/2026/02/penn-eeoc-antisemitism-lawsuit-investigation-
  jewish-personal-phone .......................................................................................................8

Penn respectfully moves the Court to stay its March 31, 2026, order granting enforcement of the EEOC's subpoena pending the Third Circuit's adjudication of Penn's appeal of that order.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On November 18, 2025, the EEOC filed an application to enforce its administrative subpoena served on Penn.[1] Dkt. 1. On January 5, 2026, this Court ordered Penn to show cause why the subpoena should not be enforced. Dkt. 13. Penn responded to the order to show cause on January 20, 2026, opposing enforcement on the grounds that the subpoena fails the threshold requirements for judicial enforcement and its demands unjustifiably invade Penn's employees' private affairs and First Amendment rights. Dkt. 20.

Meanwhile, on January 13, 2026, members of the Penn community whose information is at risk of disclosure moved to intervene in opposition to enforcement of the subpoena, Dkt. 14, and the Court granted the motion to intervene, Dkt. 38.

On March 31, 2026, the Court granted the EEOC's application to enforce the subpoena and ordered Penn to respond to the subpoena by May 1, 2026. Dkt. 55. The Court's order modified Request No. 2 of the subpoena, by excluding information that would "reveal any employee's affiliation with a specific Jewish-related organization" and "information regarding MEOR, Penn Hillel and the Chabad Lubavitch House." *Id*.

On April 13, 2026, Penn noticed its appeal of the Court's order, pursuant to 28 U.S.C. § 1291. *See EEOC v. Kronos Inc.*, 620 F.3d 287, 295 (3d Cir. 2010) (decisions on applications to enforce EEOC subpoenas are final appealable orders).

---

[1]    As the factual and procedural history of this case are well known to the Court, Penn provides an abbreviated background.

## LEGAL STANDARD

In weighing whether to grant a stay pending appeal, courts assess "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015).

## ARGUMENT

The Court should stay its order pending appeal because Penn is likely to prevail on the appeal, Penn will face irreparable injury absent a stay, the EEOC will not be injured by a stay, and a stay serves the public interest.

### A.    Penn Is Likely To Prevail On Appeal

To show sufficient likelihood of success on the merits, the movant must demonstrate that it has "'a reasonable chance, or probability, of winning.'" *In re Revel AC*, 802 F.3d at 568 (quoting *Singer Mgmt. Consultants, Inc. v. Milgram,* 650 F.3d 223, 229 (3d Cir. 2011) (en banc)). That chance "need not be 'more likely than not,'" but must be "significantly better than negligible." *Id.* at 569, 571. The Third Circuit employs a "sliding-scale" approach to assessing the strength of a movant's case, where the "necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment" of the other factors. *Id.* at 569 (cleaned up).

This case turns on questions regarding the limits of the EEOC's investigatory authority and the scope of constitutional rights—issues that are subject to de novo review. *See Matter of Subpoena 2018R00776*, 947 F.3d 148, 154 (3d Cir. 2020) (exercising "plenary review over questions of law" in reviewing administrative subpoena subject to First Amendment challenge); *EEOC v. Union Pac. R.R. Co.*, 867 F.3d 843, 847 (7th Cir. 2017) (exercising de novo review over

2

questions of the EEOC's investigatory authority).  And as many of these questions are matters of first impression for the Third Circuit, there is a "reasonable chance" that the Third Circuit will come to a different view of the novel issues raised here and reverse the Court's decision.  *In re Revel AC*, 802 F.3d at 568-69.

First, the Third Circuit is reasonably likely to find that the underlying charge fails to provide notice of the Commissioner's allegations that complies with the EEOC's statutory and regulatory duties.  A charge must "contain … a clear and concise statement of the facts … constituting the alleged unlawful employment practices."  29 C.F.R. § 1601.12(a)(3).  The blank charge here does not remotely do so.  Instead, it merely asserts a legal conclusion—that there is a hostile work environment.  But that is incompatible with the Supreme Court's instructions in *EEOC v. Shell Oil Co.*, that "merely … alleg[ing] that an employer has violated Title VII[,] … would be inconsistent with the evident purpose of the regulation—to encourage complainants to identify with as much precision as they can muster the conduct complained of.  And it would render nugatory the statutory limitation of the Commission's investigative authority to materials 'relevant' to a charge."  466 U.S. 54, 72 (1984).

Second, the subpoena requests at issue bear little resemblance to the requests that courts typically grant in considering applications for enforcement of an administrative subpoena.  As this Court recognized, "the EEOC can subpoena employers for employees' contact information and race and sex in racial and sexual harassment cases," but the agency "cannot issue similar subpoenas in religious harassment cases."  Dkt. 54 ("Mem. Op.") at 6.  That is because, as the EEOC admits, Congress required employers to report data on race, gender, and age to the EEOC, but did not require reporting of religion, Mar. 10, 2026 Hr'g Tr. ("Tr.") 14:8-15:12—a distinction consistent with the personal privacy interests in religious identity recognized in constitutional

3

jurisprudence, *see* Dkt. 50-1 at 3-4. Desiring information that employers do not maintain in the ordinary course of business (due to its sensitivity), the EEOC has demanded that Penn create lists designed to identify employees of a specific religion without their consent and over their objections. This demand is so novel that the EEOC has cited no authority in which a court enforced a subpoena conscripting an employer to identify employees of a specific religion (and Penn is aware of none). Against that background, the Third Circuit will be called upon to scrutinize the constitutionality of the subpoena, and, respectfully, it is reasonably likely to find that the subpoena invades constitutionally protected privacy interests and unjustifiably chills First Amendment rights.

Whether the constitution protects against the compelled disclosure of religious information lies at the heart of the privacy claim Penn asserts in defense of the subpoena, and it is not a question squarely addressed by the Court's decision. Penn's position, however, is rooted in prevailing Supreme Court precedent. Religious identity and affiliation fall paradigmatically into the fundamental personal rights Supreme Court precedent holds are secured by "zones of privacy" protected by the Due Process Clause. *Paul v. Davis*, 424 U.S. 693, 712-13 (1976); *Whalen v. Roe*, 429 U.S. 589, 599 n.25 (1977) (quoting *Griswold v. Connecticut*, 381 U.S. 479, 483 (1965)). In response to Penn's argument that the invasion of this protected privacy interest is not justified under the seven-factor balancing test in *United States v. Westinghouse Electric Corp.*, 638 F.2d 570 (3d Cir. 1980), *see* Dkt. 20 at 14-19, the EEOC failed to offer substantive argument or point to anything in the record to support a finding that the *Westinghouse* factors favor disclosure. *See* Dkt. 36 at 8 (dismissing *Westinghouse* as pertaining only to medical records); *but see C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 161, 179-81, 189 (3d Cir. 2005)

4

(applying *Westinghouse* to school survey); *FDIC v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) (applying *Westinghouse* to financial records).

With respect to associational rights, the agency conceded that its requests implicated employees' associational rights by offering to redefine the scope of its request that Penn identify members of Jewish organizations midway through the litigation. Mem. Op. at 7. But, even as revised, the subpoena remains an unjustified restraint on the freedom of association under *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021). The record shows that it is the disclosure of one's association with Jewish organizations, and not association with any specific organization, that would chill Penn community members' ability to associate. *See* Dkt. 14-3, ¶¶7, 9; Dkt. 14-4, ¶16; Dkt. 14-6, ¶14; Dkt. 14-7, ¶7. Further, the EEOC has not met its burden under the exacting scrutiny standard, which requires that there be a "substantial relation between the disclosure requirement and a sufficiently important governmental interest" and that the disclosure be "narrowly tailored to the government's asserted interest." *Americans for Prosperity*, 594 U.S. at 608. There is no substantial relation between the disclosure of which employees associate with Jewish organizations and the EEOC's investigation of an extremely broad and undefined charge that fails to identify any specific circumstances of alleged discrimination. Nor is the subpoena narrowly tailored—the EEOC can of course pursue its investigation in ways that are less burdensome on employees' associational rights. *See id.* at 611 ("The point is that a reasonable assessment of the burdens imposed by disclosure should begin with an understanding of the extent to which the burdens are unnecessary, and that requires narrow tailoring."). Penn's proposal to send notices to all employees with instructions for reaching out to the EEOC directly, Dkt. 20-1, ¶22, is far less intrusive—and there are obvious workarounds to the EEOC's concerns with Penn being an intermediary, such as engaging a third

5

party to send the notices.  Moreover, even the agency has admitted that it could have pursued its investigation by requesting information about employees without regard to employees' religious associations.  Tr. 15:13-16 ("[W]e did consider asking for the names and contact information for Penn's 20,000 employees, and some investigations are actually done this way.").

Even if the Court disagrees that Penn is likely to prevail on the merits of its appeal, applying the "'sliding-scale approach,'" "viewed favorably" in this circuit, a stay is still appropriate "where factors of irreparable harm, interests of third parties and public considerations strongly favor" Penn, as they do here.  *In re Revel AC*, 802 F.3d at 569-570.

### B.       Penn Will Be Irreparably Harmed Absent A Stay

To show irreparable harm, the movant must demonstrate the harm is "likely, not merely possible."  *In re Revel AC*, 802 F.3d at 569.  That standard is readily satisfied here given the constitutional rights at stake and the absence of a remedy that could redress the harms caused by enforcement of the order if the order is overturned on appeal.

First, in reviewing the order, the Third Circuit will decide whether compliance with the subpoena (and the order enforcing it) would invade constitutionally protected First Amendment and privacy rights.  Thus, absent a stay, Penn would be required to comply with government demands that the Third Circuit may ultimately conclude violate employees' constitutional rights. The risk that Penn would be compelled to provide disclosures that deprive its employees of their constitutional rights is unquestionably irreparable injury and weighs heavily in favor of permitting full appellate review before any further disclosure in response to the subpoena occurs. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 113 (3d Cir. 2013) (same); *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (granting stay pending appellate review of OSHA

6

mandate that "threaten[ed] to substantially burden … liberty interests," which "'unquestionably constitutes irreparable injury'" (quoting *Elrod*, 427 U.S. at 373)); *Connecticut Dept. of Env't Prot. v. OSHA*, 356 F.3d 226, 231 (2d Cir. 2004) ("[T]he alleged violation of a constitutional right triggers a finding of irreparable injury."); *see also* 11A Wright & Miller, Fed. Prac. & Proc. § 2948.1 (3d ed. Apr. 2020 update) ("[W]hen there is an alleged deprivation of a constitutional right to free speech or freedom of religion, many courts find that no further showing of irreparable injury is necessary.").

Second, there is no dispute that the subpoena demands the disclosure of sensitive information. Mem. Op. at 1 ("[T]he subpoena sought information pertaining to people's faith, making its requests more intrusive and calling for greater sensitivity, something the EEOC now acknowledges."). "Once sensitive information is disclosed, it cannot be effectively retrieved, and the resulting consequences cannot be fully undone on appeal," nor can the injury from disclosure be "adequately remedied by money damages or corrected after final judgment." *In re City of Chester*, 2026 WL 607528, at *9 (E.D. Pa. Mar. 3, 2026). Indeed, requiring compliance before the Third Circuit decides Penn's appeal would effectively moot the appeal. *See EEOC v. FedEx Corp.,* 2007 WL 9734298, at *2 (D. Ariz. Oct. 5, 2007) ("If a stay is not issued Fed Ex's appeal will become moot and Fed Ex will be required to disclose confidential information."); *EEOC v. Quad/Graphics, Inc.,* 875 F. Supp. 558, 560 (E.D. Wis. 1995) (granting stay of order enforcing EEOC subpoena and observing that "[r]equiring the respondent to turn over the requested information, where its appeal is seeking to avoid such requirement, would make the appeal academic."), *aff'd*, 63 F.3d 642 (7th Cir. 1995).

Finally, to deny the stay and compel the generation and disclosure of sensitive information on employees' religious affiliations would "utterly destroy the status quo." *AARP v.*

*EEOC*, 390 F. Supp. 2d 437, 462 (E.D. Pa. 2005) (quoting *Providence Journal Co. v. FBI*, 595 F.2d 889, 889 (1st Cir. 1979)), *aff'd on other grounds*, 489 F.3d 558 (3d Cir. 2007); *see also In re Citizens Bank, N.A.*, 15 F.4th 607, 622 (3d Cir. 2021) (requiring a stay of trial pending interlocutory appeal to "preserve[] the status quo"); *Texas Alliance for Retired Americans v. Hughs*, 976 F.3d 564, 566-567 (5th Cir. 2020) (recognizing "the value of preserving the status quo in a voting case on the eve of an election").

To say the very least, absent a stay, irreparable harm to Penn is "more apt to occur than not." *In re Revel AC*, 802 F.3d at 569.

## C.    A Stay Would Not Substantially Harm The EEOC

A stay would not substantially harm the EEOC.  *See In re Revel AC*, 802 F.3d at 568. "The only potential harm to the EEOC if a stay is granted is delay in the discovery of potentially relevant information." *FedEx Corp.*, 2007 WL 9734298, at *2; *see also Quad/Graphics, Inc.*, 875 F. Supp. at 560 ("If the respondent does not succeed on appeal, the only harm incurred will be a delay in the EEOC's receipt of the information that it has requested.").  The EEOC cannot claim prejudice from such a delay.  After the Commissioner filed her charge, the agency requested Penn provide a position statement, which Penn timely provided on April 16, 2024. Dkt. 20-1, ¶¶4-5.  The agency then did nothing to pursue its investigation for nearly a year and did not engage with Penn again until March 27, 2025.  Dkt. 20-1, ¶6; *see also* Tr. 19:22-20:17 (explaining that the nearly one-year delay is "not that unusual" in EEOC investigations).

What is more, a stay would not impede the EEOC from pursuing other means of contacting Penn's employees, as it has done during the pendency of this litigation.  Indeed, while the agency litigated its demand for the personal contact information of employees in Penn's Jewish Studies Program, *see* Dkt. 1 at 9; Dkt. 36 at 5, "several affiliates of Penn's Jewish Studies Program reported that they received calls on their personal cell phones from the [EEOC]."  Luke

8

Petersen, *How a federal agency used personal faculty phone numbers to investigate antisemitism at Penn*, THE DAILY PENNSYLVANIAN (Feb. 25, 2026),

https://www.thedp.com/article/2026/02/penn-eeoc-antisemitism-lawsuit-investigation-jewish-personal-phone.  The agency's own conduct during the investigation shows that it has no urgent need for the subpoenaed information.

### D.    The Public Interest Favors A Stay

A stay would not affect the right of any Penn employee, or any other person, to file a charge or otherwise contact the EEOC about allegations of antisemitism or any other form of discrimination.  With all of the publicity and campus furor about this subpoena, the EEOC's desire to hear from employees about any workplace antisemitism is known to all.  And there is a significant public interest in staying enforcement of the subpoena to permit the Third Circuit to assess the merits of this case, which raises complex, novel, and constitutional issues, which the Third Circuit has yet to address.  *See FedEx Corp.*, 2007 WL 9734298, at \*2 ("The full exploration of complex legal issues by the Court of Appeals in the Ninth Circuit is also an important public interest.").  In this case, the very people the investigation purports to protect have forcefully opposed enforcement of the subpoena.  Many have gone as far as to intervene in this action to seek protection of their constitutional rights threatened by the requests.  And while this case is without precedent, it is likely to be precedent for others, as the EEOC has initiated numerous investigations against universities based on similar charges.  *See* Dkt. 20-4.  Thus, the public interest is served by staying the order pending appeal and allowing the Third Circuit to weigh in on the important issues raised in this case.

9

## CONCLUSION

For the reasons set forth above, good cause exists to stay the Court's March 31, 2026, order (Dkt. 55), and this Court should exercise its discretion and stay the order until the Third Circuit renders its decision on Penn's appeal.

Dated:  April 13, 2026

Respectfully submitted,

*/s/ Seth P. Waxman*
Seth P. Waxman (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
seth.waxman@wilmerhale.com

Debo P. Adegbile (*pro hac vice*)
Olivia P. Greene (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8864
Facsimile: (212) 230-8888
debo.adegbile@wilmerhale.com
olivia.greene@wilmerhale.com

Sean V. Burke
Office of General Counsel
University of Pennsylvania
FMC Tower at Cira Centre South
2929 Walnut Street, Suite 400
Philadelphia, PA 19104-5099
Telephone: (215) 746-5200
Facsimile: (215) 746-5222

*Attorneys for Respondent the Trustees of the University of Pennsylvania*