**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. 2:25-CV-06502-GJP |
| THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, | ) ) ) | |
| Respondent. | ) ) ) | |

**PETITIONER EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S**
**OPPOSITION TO RESPONDENT'S MOTION FOR STAY PENDING APPEAL**

CATHERINE L. ESCHBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

DEBRA M. LAWRENCE
Regional Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Philadelphia District Office
31 Hopkins Pl., Suite 1432
Baltimore, MD 21201
410 801-6691
Debra.lawrence@eeoc.gov

**Table of Contents**

Table of Authorities ....................................................................................................iii

Introduction ...................................................................................................... 1

Argument ........................................................................................................ 1

    A.   Legal Standard Governing Stays Pending Appeal ........................................ 1

    B.   Respondent Fails To Satisfy *Any* Factor Warranting Denial Of A Stay. ......................... 3

       1.   Respondent Has Failed To Make A Strong Showing That It Is Likely To Succeed On The Merits. ................................................................................. 3

          a.    There are no novel issues and the abuse of discretion standard of review applies……………………………………………………………………..3

          b.    Rearguing the issues does not show those arguments are likely to succeed on appeal. ……………………………………………………….…………………4

       2.   Respondent Has Demonstrated No Irreparable Harm Absent A Stay. ........................ 8

       3.   The Public Interest Favors Permitting the Commission to Investigate Allegations of Antisemitic Harassment in Respondent's Workplace. ....................................10

Conclusion …………………………………………………………………………12

## Table of Authorities

### Cases

*Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265 (3d Cir. 2001) ................................. 5

*Anspach ex rel. Anspach v. City of Philadelphia, Dept. of Public Health,* 503 F.3d 256 (2007)... 8

*Bank of Nova Scotia v. Pemberton*, 964 F. Supp. 189 (D.V.I. 1997) .......................................... 5

*Church of Scientology of California v. United States,* 506 U.S. 9 (1992) ................................. 10

*Conestoga Wood Specialties Corp. v. Secretary of U.S. Dept. of Health and Human Services,*
2013 WL 1277419 (3d Cir. Feb. 8, 2013) ..................................................................... 2, 3, 11

*Consumer Fin. Prot. Bureau v. Harbour Portfolio Advisors, LLC,* 2017 U.S. Dist. LEXIS 36037
(E.D. Mich. Mar. 14, 2017) ...................................................................................................... 1

*E.E.O.C. v. Quad/Graphics, Inc.*, 875 F.Supp. 558 (E.D. Wis. 1995) ........................................ 9

*EEOC v. AAM Holding Corp.*, 2024 WL 3710151 (S.D.N.Y. Aug. 7, 2024) ............................. 1

*EEOC v. Aerotek, Inc.,* 815 F.3d 328 (7th Cir. 2016) ................................................................. 1

*EEOC v. Allstate Ins. Co.,* 1981 U.S. Dist. LEXIS 15821 (N.D. Ill. May 14, 1981) ................. 1

*EEOC v. Centura Health,* 933 F.3d 1203 (10th Cir. 2019) ....................................................... 7

*EEOC v. Optical Cable Corp.*, 1998 U.S. Dist. LEXIS 10787 (W.D. Va. May 1, 1998) ............. 1

*EEOC v. Shell Oil,* 466 U.S. 54 (1984) ......................................................................5, 6, 7, 11

*EEOC v. The Trustees of the University of Pa.,* 2026 WL 885480 (E.D. Pa. Mar. 31, 2026)…....5,
6, 11

*EEOC v. Union Pacific Railroad Company,* 867 F.3d 843 (7th Cir. 2017) ................................ 4

*Equal Employment Opportunity Commission v. FedEx Corporation*, 2007 WL 9734298 (D. Az.
Oct. 5, 2007) ............................................................................................................................. 9

*Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105 (3d Cir. 1987)....10

*In re City of Chester, Pennsylvania,* 2026 WL 607528 (E.D. Pa. Mar. 3, 2026) ........................ 9

*In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015)…………………………..………………….. . 2, 3

*In re World Imports Ltd.*, 820 F.3d 576 (3d Cir. 2016).........................................................10

*Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.,* 26 F.3d 375 (3d Cir.1994) ................ 8

*Matter of Subpoena 2018R00776,* 947 F.3d 148 (3d Cir. Jan. 10, 2020) …………………………4

*McLane Co., Inc. v. E.E.O.C.*, 581 U.S. 72 (2017)…………………………………….. .3,5,6,7

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ................................................... 5

*Nken v. Holder*, 556 U.S. 418 (2009) . ........................................................................2, 10

*NLRB v. Raleigh Rest. Concepts, Inc.*, 2016 U.S. Dist. LEXIS 149456 (E.D.N.C. Oct. 27, 2016) 1

*R & L Limited Investments, Inc. v. Cabot Investment Properties, LLC.,* 2010 WL 3789401
(D. Az. Sept. 20, 2010) ...........................................................................................................12

*Republic of Philippines v. Westinghouse Elec. Corp.,* 949 F.2d 653 (3d Cir. 1991).................... 2

*Thomas v. Philadelphia Housing Authority,* 875 F. Supp. 272 (E.D. Pa. 1995) ......................... 8

*United States v. Transocean Deepwater Drilling, Inc.,* 2013 WL 3803873 (5th Cir. Jul. 23, 2013) ...................................................................................................................................... 1

*United States v. Westinghouse Electric Corp.*, 638 F.2d 570 (3d Cir. 1980) .............................. 7

*University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990)…………………………......5, 6, 7, 10

*Volkswagen Group of America, Inc. v. Saul Chevrolet, Inc. dba Cardinaleway Volkswagen,* 2015 WL 5680317 (C.D. Cal. Sept. 25, 2015)........................................................................11

**Statutes**

42 U.S.C. § 2000e–5(b) ..................................................................................................... 5

42 U.S.C. § 2000e-8(e)....................................................................................................10

Americans with Disabilities Act......................................................................................... 6

Genetic Information Nondisclosure Act ............................................................................. 7

Title VII ............................................................................................................................ 6

**Regulations**

29 C.F.R. § 1601.12(a) ..................................................................................................... 5

**Introduction**

Over a year ago, on March 27, 2025, EEOC requested from Respondent contact information for potential witnesses to and victims of an antisemitic work environment, along with employees' complaints of antisemitic harassment. (ECF 1-5). Respondent refused production which resulted in the issuance of an EEOC administrative subpoena, followed by a subpoena enforcement action. A year after EEOC's initial request, a Court Order issued directing production of this information by May 1, 2026. (ECF 55). Respondent now seeks yet more delay through a stay of the Court's Order, thereby hampering EEOC's investigation further and indefinitely. Respondent's request should be denied.

In the subpoena enforcement context, denial of an unsuccessful party's motion for stay pending appeal is well within the norm. *See, e.g., EEOC v. Aerotek, Inc.,* 815 F.3d 328, 332 (7th Cir. 2016); *United States v. Transocean Deepwater Drilling, Inc.,* 2013 WL 3803873 (5th Cir. Jul. 23, 2013); *EEOC v. AAM Holding Corp.*, 2024 WL 3710151 (S.D.N.Y. Aug. 7, 2024); *Consumer Fin. Prot. Bureau v. Harbour Portfolio Advisors, LLC,* 2017 U.S. Dist. LEXIS 36037 (E.D. Mich. Mar. 14, 2017); *NLRB v. Raleigh Rest. Concepts, Inc.*, 2016 U.S. Dist. LEXIS 149456 (E.D.N.C. Oct. 27, 2016); *EEOC v. Optical Cable Corp.*, 1998 U.S. Dist. LEXIS 10787 (W.D. Va. May 1, 1998); *EEOC v. Allstate Ins. Co.,* 1981 U.S. Dist. LEXIS 15821 (N.D. Ill. May 14, 1981). The same result is warranted here.[1]

**Argument**

    A.  Legal Standard Governing Stays Pending Appeal

---

[1] For the reasons discussed below, EEOC also opposes a stay from this Court in order to allow Respondent to seek a stay from the Third Circuit.

As this Circuit has emphasized,  "a motion for a stay pending appeal … in our Court, is an extraordinary remedy." *Conestoga Wood Specialties Corp. v. Secretary of U.S. Dept. of Health and Human Services,* 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013). A stay pending appeal "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citation omitted). Instead, a stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* at 433 (quotations and alterations omitted). As the party requesting a stay, Respondent "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 434.

Courts consider four factors in assessing a motion for stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Republic of Philippines v. Westinghouse Elec. Corp.,* 949 F.2d 653, 658 (3d Cir. 1991). The third and fourth factors "merge when the Government is the opposing party," as is the case here. *Nken*, 556 U.S. at 435. While the "first two factors are the most critical. . . [i]t is not enough that the chance of success on the merits be 'better than negligible.'" *Nken*, 556 U.S. at 434. Rather, the standard always requires "a strong showing that [the stay applicant] is likely to succeed on the merits." *Id.* at 426. Critically, "'if the chance of success on the merits [is only] better than negligible' and the 'possibility of irreparable injury' is low, a stay movant's request fails." *In re Revel AC, Inc.*, 802 F.3d 558, 570 (3d Cir. 2015) (quoting *Nken,* 556 U.S. at 434). And, "even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the [stay opponent] if a stay is granted, [it] is still required to show, at a minimum, 'serious questions going to the merits.'" *In re Revel AC, Inc.*, 802 F.3d at 570. "[I]f the movant does not make the

requisite showings on either of these [first] two factors, the [ ] inquiry into the balance of harms

[and the public interest] is unnecessary, and the stay should be denied without further analysis."

*Id.* at 571, citation omitted.

Likening stays to preliminary injunctions, the Third Circuit has noted that

> [s]uch stays are rarely granted, because in our Court the bar is set particularly high. Indeed, we have said that an "injunction shall issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." ... In other words, "[a] plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate."

*Conestoga Wood Specialties Corp. v. Secretary of U.S. Dept. of Health and Human Services,*

2013 WL 1277419, at *1 (citations omitted).

Whether the first two factors dominate the stay analysis, as in *Conestoga Wood*, or

whether the sliding scale analysis is used, as in *In re Revel AC, Inc.,* Respondent has failed to

show that it is entitled to a stay.

      B.      Respondent Fails To Satisfy *Any* Factor Warranting Denial Of A Stay.

          1.  Respondent Has Failed To Make A Strong Showing That It Is Likely To Succeed On The Merits.

              a.  There are no novel issues and the abuse of discretion standard of review applies.

As reflected in the Court's opinion, this matter involves the application of established

precedents and the Court properly exercised its judgment to enforce EEOC's subpoena.

Respondent cannot show that the application of established precedents to the facts here creates

novel issues, and "a district court's decision to enforce an EEOC subpoena [is] reviewed for

abuse of discretion, not *de novo*." *McLane Co., Inc. v. E.E.O.C.*, 581 U.S. 72, 85 (2017). Trying

to lessen its burden on the likelihood of success factor, Respondent argues the wrong standard of

review – claiming "EEOC's investigative authority and the scope of constitutional rights" are

subject to *de novo* review. Respondent's Memorandum of Law in Support of its Motion for Stay Pending Appeal ("Respondent's brief") at 2. Its authority for this standard, *Matter of Subpoena 2018R00776,* 947 F.3d 148 (3d Cir. Jan. 10, 2020) addresses First Amendment implications associated with restraining a grand jury witness from disclosing the witness's receipt of service to a third party, a far cry from the routine EEOC subpoena enforcement action here. Nor is Respondent aided by *EEOC v. Union Pacific Railroad Company,* 867 F.3d 843 (7th Cir. 2017), which actually addressed a legal issue of first impression – whether the EEOC could continue its investigation despite issuing a right-to-sue letter to a private party under Title VII.

> b.  Rearguing the issues does not show those arguments are likely to succeed on appeal.

Under any standard of review, Respondent would be hard-pressed to show any likelihood of success before the Third Circuit and concedes as much by recasting the likelihood of success factor to, "need not be more likely than not," (Respondent's brief at 2), "significantly better than negligible," (*id.*), and "reasonable chance" (*id.* at 3).  Respondent and Intervenors extensively argued this matter through seven briefs [2] and a hearing lasting three and one-half hours. The Court allowed Respondent's and Intervenors' numerous submissions, then considered and correctly rejected their arguments. Respondent's Motion for Stay reargues the same matters, but without demonstrating any basis for expecting a different outcome on appeal. As noted by one court within this Circuit,

> Defendant has provided the Court with no showing that error was committed in resolving this case. Defendant presents no new arguments as to why the summary judgment granted by the Court against defendant was improper. From the pleadings currently before the Court, it can only be assumed that defendant intends to base his appeal on the same arguments which this Court considered and rejected when summary judgment was granted in plaintiff's favor against the

---

[2] ECF 014-1, ECF 020, ECF 021, ECF 035, ECF 044-1, ECF 046, ECF 050-1 (the latter submitted after oral argument).

> defendant. Those arguments possess no more merit now then [sic] they did previously. Defendant has failed to make a strong showing that he will succeed on appeal.

*Bank of Nova Scotia v. Pemberton*, 964 F. Supp. 189, 191 (D.V.I. 1997).

This Court's decision to enforce EEOC's subpoena reflects a straightforward application of well-established principles rather than any novel or expansive approach. Its application of *EEOC v. Shell Oil,* 466 U.S. 54, 76-77 (1984), *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990), and *McLane Co., Inc. v. EEOC,* 581 U.S. 72 (2017) to this matter ensured a sound and unassailable result. *See EEOC v. The Trustees of the University of Pa.,* 2026 WL 885480, at *3 (E.D. Pa. Mar. 31, 2026). Respondent cannot establish why the Third Circuit will evaluate settled law differently from this Court. Instead, it disingenuously characterizes "many of these questions [as] matters of first impression…" Respondent's brief at 3. For example, the scope of EEOC's investigative authority is hardly novel, and Respondent's attempts to attack the validity of the Commissioner's charge are futile. This Court correctly held that the charge was valid, relying on 29 C.F.R. § 1601.12(a), 42 U.S.C. § 2000e–5(b) and *Shell Oil Co.*, 466 U.S. at 68–82, explaining in detail how Respondent had "fair notice" of the allegations. *EEOC v. The Trustees of the University of Pa.,* 2026 WL 885480, at *5. Indeed, the underlying Commissioner's charge—setting forth the dates of harm, the unlawful employment practice, the types of employees subjected to the unlawful employment practice, and the types of public information that form the basis of the allegations, including a Title VI lawsuit and Respondent's then President's congressional testimony—far exceeds what is required by *Shell Oil* and 42 U.S.C. § 2000e–5(b). The Court relied on *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) and *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 276–77 (3d Cir. 2001), recognizing that a hostile work environment constitutes an unlawful employment practice. *EEOC*

5

*v. The Trustees of the University of Pa.,* 2026 WL 885480, at \*4 and 5. These cases were not addressed by Respondent in any brief. Blanketly arguing against the charge's validity does not make it so, and most certainly cannot establish the strong showing of success required for a stay. Indeed, throughout its briefing, Respondent failed to distinguish *EEOC v. Shell Oil*, *McLane Co., Inc. v. EEOC*, and *University of Pennsylvania v. EEOC,* and again fails to do so now.

Respondent's constitutional objections are no more persuasive now than they were throughout the briefing. That this charge alleges antisemitism does not thereby render EEOC's subpoena constitutionally suspect. Indeed, this Court offered a full and fair analysis of why the subpoena at issue was not violative of anyone's constitutional protections, *EEOC v. The Trustees of the University of Pa.,* 2026 WL 885480, at \*8, 10, 11, 12, 13, 14, and recognized that "a subpoena's mere reference to religion does not mean it classifies based on religion." *Id.* at \*14. Notably, in *University of Pennsylvania v. EEOC,* the Supreme Court rejected similar constitutional and privacy arguments as a defense to an EEOC subpoena. Yet, in seeking a stay, Respondent fails to address this case as well. Its reiteration of arguments from the previously filed seven briefs does not bolster its claim that it is likely to prevail on appeal.

Moreover, Respondent misreads the Court's observation that race and sex data are maintained by employers for EEO-1 reporting, and incorrectly suggests that the lack of a similar requirement for religious affiliation creates a heightened protection from disclosure. Respondent's brief at 3-4. But Respondent's inferential leap is not supported by the Court's ruling, or any law or EEOC policy or practice for that matter, and overlooks the many protected bases under Title VII also not subject to EEOC's reporting requirements such as pregnancy, national origin, and color – none of which are considered novel or assessed under a heightened standard. Likewise, disability data, under the Americans with Disabilities Act, and genetic

6

information data, under the Genetic Information Nondisclosure Act, are not subject to reporting requirements and also are not evaluated under any heightened standard for disclosure.

Nor does reargument of *United States v. Westinghouse Electric Corp.*, 638 F.2d 570 (3d Cir. 1980) validate Respondent's prediction of a strong showing of success on appeal. In determining whether medical records under subpoena should be disclosed, the Third Circuit developed a balancing test to determine the level of sensitivity accorded to the medical records. Here, the Court distinguished the *Westinghouse* medical records from the personal contact information at issue here, which it likened to the contents of a phone book (Tr. at 112). Moreover, because *Westinghouse* predates the EEOC subpoena enforcement law applicable here (*EEOC v. Shell Oil* (1984); *University of Pennsylvania v. EEOC* (1990); *McLane Co., Inc. v. EEOC* (2017)), the balancing test in *Westinghouse* would not inform on whether information is so highly sensitive that it could not be disclosed to EEOC. Rather, the factors set forth in the aforementioned Supreme Court cases determine the disclosure of any subpoenaed information. Indeed, sensitive information such as medical information, pursuant to a valid subpoena, *would* be disclosable to EEOC. *See, e.g., EEOC v. Centura Health,* 933 F.3d 1203 (10th Cir. 2019) (employees' disability accommodation requests, the outcome of those requests, the type of the employee's medical condition), as would other highly sensitive information such as employees' social security numbers in *McLane Co., Inc. v. EEOC*, 581 U.S. 72.[3]

In sum, Respondent has not even attempted to argue that it has a strong likelihood of success on appeal. And even in trying to make a more modest showing, Respondent flounders and fails to carry its burden on this critical factor.

---

[3] There are many such examples; these are just examples from cases already cited in EEOC's earlier briefs.

2.    Respondent Has Demonstrated No Irreparable Harm Absent A Stay.

Respondent's failure to demonstrate any likelihood of success on the merits, standing alone, precludes the Court from granting its motion for a stay. *See, e.g., Thomas v. Philadelphia Housing Authority,* 875 F. Supp. 272 (E.D. Pa. 1995) (denying stay due to unlikelihood of prevailing on merits while acknowledging irreparable harm to movant). But even considering this second factor, Respondent also fails to show irreparable harm were it to produce to EEOC witness and victim contact information and complaints of harassment.

In a threshold failing on this prong, Respondent has failed to discuss *any* alleged irreparable harm pertaining to the disclosure of employee complaints of discrimination, participants at the antisemitic task force listening sessions, the participants' complaints, the survey results, all notes generated therefrom, the "penn against the occupation" doxxing -- in effect all subpoena items except for Items 2 and 3, thereby precluding Respondent from obtaining a stay regarding disclosure of the majority of the information sought in the subpoena. *See Anspach ex rel. Anspach v. City of Philadelphia, Dept. of Public Health,* 503 F.3d 256 n. 1 (2007) ("failure to raise an argument in one's opening brief waives it"), citing *Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.,* 26 F.3d 375, 398 (3d Cir.1994).

With respect to providing Items 2 and 3, the harm alleged by Respondent is not actually harm to Respondent but attenuated and speculative harms on behalf of third parties.[4]  *See* Respondent's brief at 6 (alleging turning over information could "violate employees' constitutional rights"). But Respondent does not explain how, or offer any evidence establishing that Respondent itself will be harmed. Specifically, Respondent does not make any argument that

---

[4] Intervenors failed to coordinate the filing of their Motion to Stay with EEOC. EEOC will oppose Intervenors' arguments in a subsequent filing in accordance with the Court's local rules.

8

it will suffer any deprivation of its own constitutional rights or privacy rights, so the cases cited (at 6-7) about constitutional harm are irrelevant.

Also not persuasive is Respondent's argument that "the disclosure of sensitive information" to EEOC (Respondent's brief at 7) would result in irreparable harm because the "resulting consequences cannot be fully undone on appeal…" *Id*. (citation omitted). This is, again, an alleged harm to parties who are not Respondent, which cannot satisfy Respondent's burden. But putting that aside, the contact information and complaints are not sensitive, unlike the "confidential, proprietary, or statutorily protected information" at issue in *In re City of Chester, Pennsylvania,* 2026 WL 607528, at *9 (E.D. Pa. Mar. 3, 2026), a Title 9 bankruptcy matter, relied upon by Respondent. Because the information here is not sensitive, that alone should end this analysis. Moreover, Respondent's authority for granting a stay is flawed. In *Equal Employment Opportunity Commission v. FedEx Corporation*, 2007 WL 9734298 (D. Az. Oct. 5, 2007), the court summarily concluded that compliance with the subpoena would moot the appeal. So too, in *E.E.O.C. v. Quad/Graphics, Inc.*, 875 F.Supp. 558 (E.D. Wis. 1995) the court allowed a stay and in a perfunctory manner, decided that the employer's compliance with the subpoena would "make the appeal academic." *Id.* at 560. Neither court considered other measures, discussed below, which would mitigate against mootness.

In fact, denying Respondent's requested stay will not moot its appeal because, if Respondent prevails, the Court can still order EEOC to destroy the subpoenaed materials.

> [A]n appeal is moot in the constitutional sense only if events have taken place during the pendency of the appeal that make it impossible for the court to grant any effectual relief whatsoever. An appeal is not moot merely because a court cannot restore the parties to the *status quo ante.* Rather, when a court can fashion some form of meaningful relief, even if it only partially redresses the grievances of the prevailing party, the appeal is not moot.

*In re World Imports Ltd.*, 820 F.3d 576, 582 (3d Cir. 2016) (citation omitted); *see also Church of Scientology of California v. United States,* 506 U.S. 9, 12 (1992*)*. Because EEOC is statutorily required to maintain any responsive information produced by Respondent in response to the subpoena as confidential, the Third Circuit can still order EEOC to return or destroy the material. As in *Church of Scientology*, even though the Court cannot "withdraw all knowledge or information that" EEOC investigators "may have acquired by examination of the" material, Respondent's appeal would not be moot because the Court has "power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession." *Id.* at 13. Accordingly, Respondent's mootness argument fails.

Respondent's argument that disclosure of "sensitive information on employees' religious affiliations would utterly destroy the 'status quo'" (Respondent's brief at 7, citation omitted) also is untrue. The Supreme Court already has held that the EEOC is entitled to sensitive information in aid of its investigative authority, *see University of Pennsylvania v. EEOC*, 493 U.S. at 192, and the statutory prohibition on the EEOC's disclosure of this adequately guards against any alleged privacy violation. *See* 42 U.S.C. § 2000e-8(e) (EEOC confidentiality obligations, including criminal penalties for disclosure). "Safeguards against disclosure of private material have been held to be adequate when there exists a statutory penalty for unauthorized disclosures…" *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 118 (3d Cir. 1987).

      3.   The Public Interest Favors Permitting the Commission to Investigate Allegations of Antisemitic Harassment in Respondent's Workplace.

As noted earlier, when the government opposes a stay pending appeal, courts analyze the "harm to the opposing party and the public interest" factors together. *See Nken*, 556 U.S. at 435. In considering whether to grant a stay, the Court should only weigh the public interest after the moving party has established a strong likelihood of success on the merits and irreparable injury.

10

*See id.* Because Respondent has not established either factor, it is not necessary for the Court to even consider whether the public interest favors permitting Respondent to continue to delay EEOC's ability to investigate allegations of antisemitic harassment in its workplace. *Conestoga Wood Specialties Corp. v. Secretary of U.S. Dept. of Health and Human Services,* 2013 WL 1277419, at *3 ("because Plaintiffs failed to prove their likelihood of success on the merits, we DENY their request for extraordinary relief").

Nevertheless, the public interest strongly favors EEOC, the federal agency responsible for enforcing federal laws prohibiting employment discrimination. *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 69 (1984) ("it is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired"). Here, EEOC is investigating a Commissioner's charge alleging antisemitic harassment throughout Respondent's workplace. *See* ECF 1-4. As this Court recognized, the subpoenaed information stems from a valid charge, *EEOC v. The Trustees of the University of Pa.,* 2026 WL 885480 at *5, seeks contact information of "employees [] reasonably likely to have information relevant to whether Penn subjected Jewish employees to religious discrimination," and is not unduly burdensome. *Id.* at *7. The Court carefully analyzed and rejected Intervenors' constitutional objections and, consistent with EEOC's representation that it did not need associational information for individuals, did not require disclosure of any individual's association with any Jewish affinity groups. *Id.* at *1.

EEOC, investigating and litigating on behalf of the public interest, is seriously compromised when it cannot perform its functions efficiently and timely. Were this matter stayed through an appeal, memories fade, witnesses and victims leave the organization, and potential harassing behavior persists. *See, e.g., Volkswagen Group of America, Inc. v. Saul Chevrolet, Inc. dba Cardinaleway Volkswagen,* 2015 WL 5680317, at *4 (C.D. Cal. Sept. 25, 2015)

11

("'Witnesses relocate, memories fade, and persons allegedly aggrieved are unable to seek vindication or redress for indefinite periods of time on end.'" (citation omitted)); *R & L Limited Investments, Inc. v. Cabot Investment Properties, LLC.,* 2010 WL 3789401, at *2 (D. Az. Sept. 20, 2010) ( "delay would risk 'fading memories' and lost evidence," supporting finding of substantial injury to other party).

Respondent's suggestion that perhaps the investigation would not be hampered since EEOC's desire to hear from employees exposed to antisemitism is known to all because of "publicity and campus furor about the subpoena" (based primarily on Respondent's media campaign) overlooks the fact that silence comes from those aligned with Respondent's position and also from those fearful of antagonizing Respondent – the reasons for Commissioner's charges in the first place. Indeed, the Commission need not wait around for witnesses and victims to appear but has the affirmative right and obligation to reach out to those individuals who might have relevant information. There is tremendous waste of government resources associated with starting and then pausing an investigation, and then someday restarting it, which serves neither EEOC, the public, nor Respondent. Were the subpoenaed matters disclosed to EEOC, the investigation could seamlessly continue to conclusion. In the absence of a finding of discrimination, Respondent could move on. If there is a finding of discrimination, the parties could work to ameliorate the problems. Indeed, it is in everyone's interest to deny the stay and allow EEOC to perform its law enforcement functions.

### Conclusion

For the reasons discussed above, EEOC respectfully requests that the Court deny Respondent's Motion for Stay Pending Appeal.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
/s/_____
DEBRA M. LAWRENCE
Regional Attorney
Philadelphia District Office
31 Hopkins Pl., Suite 1432
Baltimore, MD 21201
410 801-6691
Debra.lawrence@eeoc.gov

CERTIFICATE OF SERVICE

I hereby certify that the above-referenced document was served this 17th day of April, 2026 via ECF to all counsel of record.

/s/_____
Debra M. Lawrence

13