**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Petitioner,    No. 2:25-cv-06502 (GJP)

   v.

THE TRUSTEES OF THE UNIVERSITY OF
PENNSYLVANIA,

        Respondent.

**RESPONDENT'S REPLY IN SUPPORT OF ITS**
**MOTION FOR STAY PENDING APPEAL**

**TABLE OF CONTENTS**

Page

ARGUMENT ...................................................................................................................3

    A.     Penn Is Likely To Prevail On Appeal.....................................................................3

    B.     Penn Will Be Irreparably Harmed Absent A Stay...................................................6

    C.     The Public Interest Favors A Stay........................................................................10

CONCLUSION..............................................................................................................12

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Americans for Prosperity Foundation v. Bonta*,
    594 U.S. 595 (2021)................................................................................................1, 8

*Chao v. Community Trust Co.*,
    474 F.3d 75 (3d Cir. 2007).....................................................................................5, 7

*Church of Scientology of California v. United States*,
    506 U.S. 9 (1992)........................................................................................................8

*City of Philadelphia v. Burgum*,
    2026 WL 431943 (E.D. Pa. Feb. 16, 2026) ...........................................................10

*Conestoga Wood Specialties Corp. v. Secretary of U.S. Department of Health &*
    *Human Services*,
    2013 WL 1277419 (3d Cir. Feb. 8, 2013)..............................................................10

*Delaware State Sportsmen's Ass'n, Inc. v. Delaware Department of Safety &*
    *Homeland Security*,
    108 F.4th 194 (3d Cir. 2024),
    *cert. denied sub nom. Gray v. Jennings*, 145 S. Ct. 1049 (2025) ................................7, 8, 9

*EEOC v. Allstate Insurance Co.*,
    1981 WL 261 (N.D. Ill. May 14, 1981) ..................................................................8

*EEOC v. FedEx Corp.*,
    2007 WL 9734298 (D. Ariz. Oct. 5, 2007).............................................................9

*EEOC v. Laidlaw Waste, Inc.*,
    934 F. Supp. 286 (N.D. Ill. 1996) ..........................................................................9

*EEOC v. Quad/Graphics, Inc.*,
    875 F. Supp. 558 (E.D. Wis. 1995).........................................................................9

*EEOC v. Shell Oil Co.*,
    466 U.S. 54 (1984)..................................................................................................1, 4

*EEOC v. Union Pacific R.R. Co.*,
    867 F.3d 843 (7th Cir. 2017) ...................................................................................4

*FDIC v. Wentz*,
    55 F.3d 905 (3d Cir. 1995).......................................................................................6

*Gillette v. Warden Golden Grove Adult Correctional Facility*,
    109 F.4th 145 (3d Cir. 2024) ......................................................................................5

*In re City of Chester*,
    2026 WL 607528 (E.D. Pa. Mar. 3, 2026)...............................................................9

*In re Grand Jury Empaneled on May 9, 2014*,
    786 F.3d 255 (3d Cir. 2015).......................................................................................5

*In re Revel AC, Inc.*,
    802 F.3d 558 (3d Cir. 2015)...............................................1, 2, 3, 4, 6, 10, 12

*In re S.S. Body Armor I., Inc.*,
    927 F.3d 763 (3d Cir. 2019).....................................................................................10

*In re Subpoena 2018R00776*,
    947 F.3d 148 (3d Cir. 2020).................................................................................3, 5

*In re World Imports Ltd.*,
    820 F.3d 576 (3d Cir. 2016).......................................................................................8

*K.A. ex rel. Ayers v. Pocono Mountain School District*,
    710 F.3d 99 (3d Cir. 2013).......................................................................................10

*McLane v. EEOC*,
    581 U.S. 72 (2017)......................................................................................................4

*Nken v. Holder*,
    556 U.S. 418 (2009).................................................................................................11

*R&L Ltd. Investments Inc v. Cabot Investment Properties, LLC*,
    2010 WL 3789401 (D. Ariz. Sept. 21, 2010).........................................................11

*Shelton v. Tucker*,
    364 U.S. 479 (1960)...................................................................................................8

*United States v. Westinghouse Electric Corp.*,
    638 F.2d 570 (3d Cir. 1980)...................................................................................5, 6

*University of Pennsylvania v. EEOC*,
    493 U.S. 182 (1990)................................................................................................4, 5

*Volkswagen Group of America, Inc. v. Saul Chevrolet, Inc.*,
    2015 WL 5680317 (C.D. Cal. Sept. 25, 2015) ......................................................12

*Westwood Village Pharmacy, Inc. v. United States*,
    421 F.3d 263 (3d Cir. 2005)......................................................................................5

All the factors favoring a stay are met here.  This case presents weighty questions of law that are matters of first impression in this circuit, and the EEOC's arguments to the contrary, *see* Dkt. 63 ("Opp.") 4-6, are without support.  Indeed, over the course of this proceeding, the EEOC has not cited a single case in which a court enforced a subpoena designed to identify employees of a specific religion.  Nor has it pointed to a single Third Circuit case that addressed the limits placed on the EEOC's authority by the statutory and regulatory requirements for a charge and by *EEOC v. Shell Oil Co.*, 466 U.S. 54 (1984), or for that matter, any Third Circuit (or other) case addressing the privacy and associational rights claims asserted here in the context of an EEOC subpoena.  In fact, the requests at issue here are anything but "routine" (Opp. 4).  They invade employees' First Amendment rights and private affairs without a compelling interest justifying that burden, and even though the agency has other, less burdensome and narrowly tailored means to accomplish its objectives.  That is why this enforcement action prompted intervention from employees and several amici, and has been the subject of extensive public commentary.

Although this Court ruled against Penn and enforced the subpoena, there are, respectfully, "'serious questions going to the merits,'" and the "balance of harms and public interest 'strongly favor' a stay."  *In re Revel AC, Inc.*, 802 F.3d 558, 570 (3d Cir. 2015) (citation omitted).

With respect to the merits, among other things, the agency does not even address, much less deny, the sufficient likelihood that the Third Circuit will find the subpoena fails the exacting scrutiny standard under *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021), which alone shows the first factor favors a stay.  The Third Circuit should have an opportunity to meaningfully review the serious legal issues presented here before the Order takes effect.  Absent a stay, the Order would require disclosures that, among other harms, would effectively moot Penn's appeal and burden its employees' constitutional rights—constituting "'harm that cannot

1

be prevented or fully rectified' by a successful appeal." *Revel*, 802 F.3d at 568. So, the second factor too favors a stay.

With respect to the balance of equities, the Order has "consequences beyond the immediate parties," *Revel*, 802 F.3d at 569, including for other universities facing similar EEOC investigations. Thus, permitting the Third Circuit to weigh in on the important issues raised by this case before they are rendered effectively moot would serve the public interest. By contrast, a stay would not materially prejudice the EEOC's interest in investigating workplace discrimination. The EEOC does not deny that while the Order is stayed it can still pursue the underlying investigation and continue contacting Penn employees as it has done during the pendency of this litigation. Nor does it deny that Penn employees would remain free to contact the EEOC during a stay.

To be clear, a stay is not a tactic to delay the investigation, and the agency's suggestion that Penn has delayed the investigation is conclusively rebutted by the record. Penn timely responded to the EEOC's initial request for a position statement following the charge. Dkt. 20-1, ¶¶4-5. Then, *the EEOC delayed its own investigation* for nearly a year, *see* Dkt. 20-1, ¶¶5-6, which it confirmed in argument to the Court, *see* Mar. 10, 2026 Hr'g Tr. ("Tr.") 19:22-20:17. Once the EEOC turned its attention back to the investigation, Penn made multiple productions of documents responding to requests for information and subpoena requests. Dkt. 20-1, ¶¶7-16, 21. The only information at issue consists of the names and/or private information of individuals who associate with Jewish organizations or the Jewish Studies Program, who participated in confidential listening sessions and surveys, or who submitted confidential complaints and expressly oppose Penn disclosing their identities to the EEOC. Dkt. 20 at 4. Penn produced nearly 900 pages of material, including all responsive complaints and names and contact

2

information for employees who consented to the disclosure or for whom that information is available publicly.  Dkt. 20-1, ¶¶10-14, 21.  And the EEOC does not deny that it is able to use the information Penn has already produced – and much more – to continue its investigation.

For the reasons set forth below and in Penn's memorandum in support of its motion, Dkt. 57-1 ("Mot."), Penn respectfully submits that the Court should stay its March 31, 2026, Order, Dkt. 55, pending resolution of the appeal of the Order to the Third Circuit.

## ARGUMENT

### A.    Penn Is Likely To Prevail On Appeal

Penn has carried its burden on the first factor, which under Third Circuit precedent requires only that Penn show a "reasonable chance" of success, which "need not be more likely than not;" it must simply be "significantly better than negligible."  *Revel*, 802 F.3d at 569-71 (internal quotation marks omitted).

*First*, Penn is likely to succeed in reversing the Court's ruling that the demands for associational information satisfy the exacting scrutiny standard under *Bonta*.  While the agency claims that the appeal will be subject to abuse-of-discretion review, it offers no basis for why that standard would apply to the Third Circuit's review of questions of constitutional law.  To the contrary, the Third Circuit will review the Court's decision on the associational claim de novo. *In re Subpoena 2018R00776*, 947 F.3d 148, 154 (3d Cir. 2020) (exercising "plenary review over questions of law" in reviewing administrative subpoena subject to First Amendment challenge). And the agency does not otherwise address, much less dispute, Penn's sufficient likelihood of success on its associational claim.  Nor could it.  Penn has "a reasonable chance … of winning," *Revel*, 802 F.3d at 569, before a Third Circuit reviewing the Court's decision de novo, especially

considering that, as this Court observed, "judges have taken different views on how to read *Bonta*," Dkt. 54, ("Mem. Op.") 25.  That is sufficient to warrant a stay.

*Second*, Penn is likely to succeed in obtaining reversal of the ruling on the validity of the underlying charge.  With respect to whether the charge provides sufficient notice of the allegations to comply with the EEOC's statutory and regulatory requisites for a subpoena, *Shell Oil* provides the operative principles.  There, the Supreme Court instructed that a charge may not "merely … allege that an employer has violated Title VII." *Id.* at 72.  But that is exactly what the EEOC concedes the charge here did, when it argues that it was sufficient for the Commissioner simply to lodge a charge of hostile work environment, which it concedes merely states a violation of Title VII (Opp. 5).[1]  While this Court agreed with the agency in this regard, respectfully, at the very least, there is a "reasonable chance," *Revel*, 802 F.3d at 568-69, that the Third Circuit will find that a charge that merely "allege[s] that an employer has violated Title VII," *Shell Oil Co.*, 466 U.S. at 72, is invalid.

The EEOC's argument that the Court's decision will be subject to abuse of discretion review under *McLane v. EEOC*, 581 U.S. 72 (2017), is unavailing.  While *McLane* did not squarely address what deference should be given to a district court's conclusions of law, it correctly observed that a ruling based on "an erroneous view of the law" would be an abuse of discretion.  *Id.* at 81 n.3.  Following *McLane*, at least one circuit court has applied de novo review to questions of law and abuse of discretion review to questions of relevance and burden. *See EEOC v. Union Pac. R.R. Co.*, 867 F.3d 843, 847 (7th Cir. 2017) ("The appeal actually presents two issues. The first *is a question of law … which we review de novo.  …*  The second

---

[1]     While the EEOC suggests that *McLane v. EEOC*, 581 U.S. 72 (2017) and *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990) support the Court's ruling on the validity of the charge (Opp. 5), neither case involved a claim challenging the underlying charge.

[is a question of relevance] …. [which] we review under an abuse of discretion standard."

(emphasis added) (citing *Mclane*, 581 U.S. at 85)).  That approach is consistent with the Third

Circuit's review of subpoena enforcement decisions in other contexts.  *See, e.g.*, *Gillette v.*

*Warden Golden Grove Adult Corr. Facility*, 109 F.4th 145, 154-55 (3d Cir. 2024) ("We review

the District Court's order on the motion to quash for abuse of discretion and review its legal

conclusions de novo."); *Chao v. Community Trust Co.*, 474 F.3d 75, 79 (3d Cir. 2007) (same);

*Westwood Vill. Pharmacy, Inc. v. United States*, 421 F.3d 263, 268 n.5 (3d Cir. 2005) (same).

Thus, de novo review should apply to the legal question of the charge's validity, which is a

question of the limits placed on the EEOC's authority by the statutory and regulatory

requirements for a charge and by *Shell Oil*.[2]

 *Third*, Penn is likely to succeed in obtaining reversal of the Court's ruling on its privacy

defense.  Supreme Court authority supports the conclusion that religious identity and affiliation

are among the fundamental personal rights for which the Due Process Clause grants privacy

protection.  *See* Mot. 4.  The agency offers no argument to the contrary, nor does it distinguish

that authority.  Further, the EEOC is incorrect to suggest that the Supreme Court resolved the

privacy issues raised here in *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990) (Opp. 6).

That case addressed whether a common law privilege or principles of academic freedom

---

[2] Even if abuse of discretion applies to a district court's decision on the validity of the
charge, that standard would not apply to the constitutional questions.  A subpoena that otherwise
"satisfies the criteria for judicial enforcement" is still subject to separate review under prevailing
constitutional standards where a constitutional claim is raised in respect to its demands.  *United
States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 576-77 (3d Cir. 1980).  The Third Circuit will
review those constitutional questions de novo.  *In re Subpoena 2018R00776*, 947 F.3d at 154
(exercising "plenary review over questions of law" in reviewing administrative subpoena subject
to First Amendment challenge); *In re Grand Jury Empaneled on May 9, 2014*, 786 F.3d 255, 258
(3d Cir. 2015) (exercising "plenary review over the District Court's legal rulings" in reviewing a
grand jury subpoena subject to Fourth and Fifth Amendment challenge).

protected tenure review materials from disclosure.  It did not involve a claim that the subpoena

invaded individual privacy interests protected by the constitution.

The EEOC is also wrong to suggest that the *Westinghouse* factors do not apply and that

the only relevant authorities are cases involving EEOC subpoenas that did not implicate

individual privacy interests (Opp. 7), positions this Court's decision did not adopt.  In this regard,

the EEOC is no different than any other government agency.  When it issues subpoenas, its

authority is constrained not merely by the precedent in *Shell Oil*, *McLane*, and *University of*

*Pennsylvania*, but also by the constitution.  Under controlling circuit precedent, government

subpoenas that implicate constitutional privacy interests are subject to the *Westinghouse*

balancing factors.  *See Westinghouse*, 638 F.2d at 572-73, 578; *FDIC v. Wentz*, 55 F.3d 905, 908

(3d Cir. 1995).  That the EEOC has not, and still cannot, muster any rebuttal on those factors

only underscores that Penn's appeal presents "serious questions going to the merits." *Revel*, 802

F.3d at 570.

### B.    Penn Will Be Irreparably Harmed Absent A Stay

The EEOC does not dispute that the potential loss of constitutional rights is irreparable

harm.  *See* Mot. 6-7.  That concession renders all of the agency's stay cases involving EEOC

enforcement orders distinguishable, as none of the cases they cite (*see* Opp. 1) involved

constitutional issues.  The agency's only argument is that it is Penn's employees – not Penn itself

– that would be harmed (Opp. 8-9).  That is not so.  The Order is directed at Penn and requires

Penn to respond to demands that it assemble constitutionally protected information about its

employees, without their consent and over their express objection, and disclose that information

to the government.  If the Third Circuit ultimately concludes that the EEOC's demands are

unconstitutional, prior compliance with the Order by Penn would expose the University to

6

potential employee claims based on its role in facilitating disclosures that are held to invade constitutional rights. It would also undermine the University community's trust that Penn will not make unjustified disclosures of their personal information, which would adversely affect the willingness of employees and other community members to come forward and participate in University efforts to root out discrimination and to participate in the expressive and associational campus activities that are essential to fostering the free inquiry and intellectual dialogue that lie at the heart of Penn's educational mission. Moreover, as discussed below, denying the stay would effectively moot Penn's appeal. *See* infra 9. In all events, the agency's argument has no practical impact on whether a stay should issue, as Intervenors have also sought a stay of the court's Order, Dkt. 61-1, and there is no meaningful dispute that the loss of constitutional rights they face is anything but irreparable harm. *See Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 204 (3d Cir. 2024) (the Third Circuit "presume[s] that First Amendment harms are irreparable"), *cert. denied sub nom. Gray v. Jennings*, 145 S. Ct. 1049 (2025). "[D]isclosure is a bell that cannot be unrung," *Chao*, 474 F.3d at 87, and the EEOC's attempts to suggest the resulting harms are minimal or can be rectified are without merit.

The subpoena does not simply seek non-sensitive contact information and complaints (Opp. 9); it seeks compelled disclosure of associations with religious organizations, among other "information pertaining to people's faith, making its requests more intrusive and calling for greater sensitivity," Mem. Op. 1, as well as implicating constitutional interests. The EEOC's argument that courts have sanctioned requests for sensitive information in other cases (Opp. 10), misses the point. The EEOC's entitlement to the sensitive information at issue *in this case* is the very subject of a pending appeal. And the harm that would result from the disclosure of the

7

sensitive, constitutionally protected information at issue here cannot be effectively undone or remedied if the Third Circuit rules that the EEOC cannot properly compel such a disclosure.

The EEOC erroneously suggests that harm resulting from disclosure can be partially remedied if the Third Circuit rules in Penn's favor because the EEOC could destroy or return the information (Opp. 10). That is wrong because at that point, Penn's employees would have already suffered an invasion of their constitutional rights, which would not be remedied by the EEOC's subsequent destruction or return of the information. Thus, this case is unlike *In re World Imports Ltd.*, 820 F.3d 576 (3d Cir. 2016), in which the Third Circuit found that the appellant's compliance with an order requiring it to deliver certain goods did not moot an appeal over the legality of that order because the appellant "asked for relief that would remedy its loss from the surrender of those goods." *Id.* at 582. This case is also unlike *Church of Scientology of California v. United States*, 506 U.S. 9 (1992), wherein the disclosure did not implicate constraints on First Amendment rights. Here, the return or destruction of disclosed information could not be even "a partial remedy," *id.* at 13, for the chilling effect that the disclosure would have on the exercise of associational rights. *See Delaware State Sportsmen's Ass'n*, 108 F.4th at 204 (the Third Circuit "presume[s] that First Amendment harms are irreparable").

Nor does the rule that the EEOC maintain investigatory materials confidentially (Opp. 10) avoid the harm of disclosure. Here, the harm lies in disclosure *to the EEOC*, unlike in authority the EEOC relies upon, where the asserted harm lay in disclosure to third parties. *See EEOC v. Allstate Ins. Co.*, 1981 WL 261, at *2 (N.D. Ill. May 14, 1981) (rejecting respondent's contention that the "EEOC will disclose the information received to unidentified third parties" as a danger that could be "eliminated through entry of a protective order pending appeal"). As the Supreme Court reiterated in *Bonta*, "disclosure requirements can chill association 'even if there

8

is no disclosure to the general public.'"  594 U.S. at 616 (alterations incorporated) (quoting *Shelton v. Tucker*, 364 U.S. 479, 486 (1960)).  There simply are no "measures" that would "mitigate," Opp. 9, the irreparable harm here.

If Penn is required to comply with the Order and disclose the outstanding information demanded by the subpoena prior to the resolution of the appeal, the appeal will become "academic," *EEOC v. Quad/Graphics, Inc.*, 875 F. Supp. 558, 560 (E.D. Wis. 1995), and "moot," *EEOC v. FedEx Corp.*, 2007 WL 9734298, at *2 (D. Ariz. Oct. 5, 2007).[3]  The EEOC implicitly concedes as much in arguing that the public interest would be served by denying the stay so that the "the investigation could seamlessly continue *to conclusion*."  Opp. 12 (emphasis added).  Thus, disclosure before full appellate review is tantamount to denying Penn its full rights to challenge a government action that, in its view, exceeds the limits of the agency's powers.

Finally, the EEOC is also incorrect that Penn's irreparable harm arguments do not pertain to every subpoena request still at issue (Opp. 8).  Penn's arguments apply to all such information: the names and/or private information of individuals who associate with Jewish organizations or the Jewish Studies Program, who participated in confidential listening sessions and surveys, or who submitted confidential complaints and expressly oppose Penn disclosing their identities to the EEOC.  Dkt. 20 at 4.  That information is confidential and raises First Amendment associational and speech issues, in addition to constitutional privacy issues, Dkt. 20 at 5-6; Dkt. 20-12 at 3; Dkt. 20-23, ¶¶7-9, and as Penn argued in its motion (Mot. 6-7), disclosure prior to the resolution of the appeal would cause irreparable harm.  *See In re City of Chester*, 2026 WL

---

[3]    Even some of the authority the EEOC relies upon recognizes this danger.  *See EEOC v. Laidlaw Waste, Inc.*, 934 F. Supp. 286, 288 (N.D. Ill. 1996) (denying stay in part because respondent partially "complied with" an enforcement order, rendering the appeal "quite probably moot").

607528, at *9 (E.D. Pa. Mar. 3, 2026) (observing that "*confidential*, proprietary, or statutorily protected information" is "sensitive information" that once disclosed, "the resulting consequences cannot be fully undone on appeal" (emphasis added)); *Delaware State Sportsmen's Ass'n*, 108 F.4th at 204 (the Third Circuit "presume[s] that First Amendment harms are irreparable"); *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 113 (3d Cir. 2013) (same). The EEOC's argument that Penn did not discuss "employee complaints of discrimination" and investigative materials concerning the so-called "'penn against the occupation' doxxing" (Opp. 8) is misplaced because Penn has already produced those materials. *See* Dkt. 20 at 4-5, 7. In sum, the second factor favors a stay. Absent a stay, Penn's employees' First Amendment rights will be burdened, their private and confidential information will be disclosed, Penn's appeal will be effectively moot, and the consequences cannot be undone or effectively remedied.

## C.     The Public Interest Favors A Stay

As set forth above, Penn has made a "sufficient showing" under the first two factors, and the Court must "balance the relative harms considering all four factors using a 'sliding scale approach.'" *Revel*, 802 F.3d at 571.[4] Even were that not the case, "where the balance of harms and public interest 'strongly favor[ ]' a stay, a court may enter it even if the applicant didn't 'demonstrate as strong a likelihood of ultimate success as would generally be required.'" *Id.* at 570 (citation omitted). And here the public interest also strongly favors a stay.

---

[4]     The Court should not follow the EEOC's suggestion that it disregard the Third Circuit's sliding scale approach in *Revel* and follow the earlier, unreported decision in *Conestoga Wood Specialties Corp. v. Secretary of U.S. Dep't of Health & Human Servs.*, 2013 WL 1277419 (3d Cir. Feb. 8, 2013) (*see* Opp. 3, 11). The Third Circuit has continued to endorse *Revel*'s "sliding-scale" approach. *See, e.g.*, *In re S.S. Body Armor I., Inc.*, 927 F.3d 763, 772 (3d Cir. 2019) ("In *Revel*, we embraced a 'sliding-scale' approach to determining how strong a case a stay movant must show." (citation omitted)).

The EEOC argues that the public interest is served by the agency continuing its investigation (Opp. 11-12). However, there is also "a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations," *City of Philadelphia v. Burgum*, 2026 WL 431943, at \*19 (E.D. Pa. Feb. 16, 2026) (citation omitted), and where there are serious questions about whether the law constrains the government's action, the public interest is served by permitting full review of those legal issues. Moreover, a stay of the Court's Order merely "suspends judicial alteration of the status quo," *Nken v. Holder*, 556 U.S. 418, 428-429 (2009) (alterations incorporated), and under the status quo the EEOC's investigation continues. As Penn submitted in its motion, public reporting shows that the EEOC has continued its investigation during this litigation, including by contacting individuals whose information it seeks in this action. Mot. 8-9. The EEOC does not deny this; nor does it claim its investigation would cease during a stay. Rather, the agency suggests that a temporary delay in its receipt of the outstanding information would delay its conclusion of the investigation (Opp. 12). But it fails to explain how that outcome could prejudice the agency or harm the public interest when it failed to pursue its investigation for nearly a year after Penn first responded to the charge, *see* Dkt. 20-1, ¶¶4-6, and told this Court that such a delay was "not unusual," Tr. 19:22-20:17.

The agency's claims that memories might fade and "harassing behavior" might "persist[]" is conjecture (Opp. 11). The risk that the EEOC will not hear from witnesses because memories have faded is minimal. As noted above, the EEOC subjected itself to this risk by going silent on its investigation for a year. Moreover, at this point, the EEOC cannot deny that its investigation is well-known to the Penn community or that Penn employees would remain free to contact the EEOC during a stay. And the EEOC has not even determined that the

11

Commissioner's charge is supported by probable cause, so it is merely speculating that any alleged harassing behavior could "persist[]." These realities entirely distinguish the EEOC's cited authority, *R&L Ltd. Investments Inc v. Cabot Investment Properties, LLC*, 2010 WL 3789401, at *2 (D. Ariz. Sept. 21, 2010) and *Volkswagen Group of America, Inc. v. Saul Chevrolet, Inc.*, 2015 WL 5680317, at *4 (C.D. Cal. Sept. 25, 2015). Those cases addressed stays of discovery on claims that had already survived motions to dismiss in litigation that had been pending for years, and where there were no alternative ways for the party seeking discovery to obtain similar information during the stay. Finally, the EEOC does not deny that the public interest would be served by permitting the Third Circuit to assess the merits of this case, including the significant constitutional issues it raises, which will have "consequences beyond the immediate parties," *Revel*, 802 F.3d at 569, including for other universities subject to similar investigations by the EEOC.

## CONCLUSION

For the reasons set forth above, good cause exists to stay the Court's March 31, 2026, Order, Dkt. 55, and this Court should exercise its discretion to stay its Order until the Third Circuit renders its decision on Penn's appeal.

12

Dated:  April 21, 2026

Respectfully submitted,

*/s/ Seth P. Waxman*
Seth P. Waxman (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
seth.waxman@wilmerhale.com

Debo P. Adegbile (*pro hac vice*)
Olivia P. Greene (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8864
Facsimile: (212) 230-8888
debo.adegbile@wilmerhale.com
olivia.greene@wilmerhale.com

Sean V. Burke
Office of General Counsel
University of Pennsylvania
FMC Tower at Cira Centre South
2929 Walnut Street, Suite 400
Philadelphia, PA 19104-5099
Telephone: (215) 746-5200
Facsimile: (215) 746-5222

*Attorneys for Respondent the Trustees of the
University of Pennsylvania*

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 21, 2026, a true and correct copy of the foregoing

Respondent's Reply In Support Of Its Motion For Stay Pending Appeal was filed electronically

through the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated:  April 21, 2026                                   Respectfully submitted,

                                                         */s/ Seth P. Waxman*
                                                         Seth P. Waxman