**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) | Civil Action No. 2:25-CV-06502-GJP |
| | ) | |
| THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, | ) ) | |
| | ) | |
| Respondent. | ) ) | |
| | ) | |

**PETITIONER EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S
OPPOSITION TO INTERVENORS' MOTION FOR STAY PENDING APPEAL**

CATHERINE L. ESCHBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

DEBRA M. LAWRENCE
Regional Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Philadelphia District Office
31 Hopkins Pl., Suite 1432
Baltimore, MD 21201
410 801-6691
Debra.lawrence@eeoc.gov

**Table of Contents**

Table of Authorities ……………………………………………………………………...iii

Introduction.......................................................................................................................... 1

Argument .............................................................................................................................. 1

   A.  Legal Standard Governing Stays Pending Appeal ................................................... 1

   B.  Intervenors Fail To Satisfy *Any* Factor Warranting Denial Of A Stay.................................. 3

      1.    Intervenors Have Failed To Make A Strong Showing That They Are ........................... ..

      Likely To Succeed On The Merits. ....................................................................... 3

      2.    Intervenors Have Demonstrated No Irreparable Harm Absent A Stay. ......................... 8

      3.    The Public Interest Favors Permitting the Commission to Investigate..................... …11

      Allegations of Antisemitic Harassment in Penn's Workplace. ............................................ 11

Conclusion .......................................................................................................................... 13

**Table of Authorities**

**Cases**

*Acierno v. New Castle Cty.,* 40 F.3d 645 (3d Cir.1994)............................................................... 9

*Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021)……………………....6, 7

*Bank of Nova Scotia v. Pemberton*, 964 F. Supp. 189  (D.V.I. 1997) ........................................ 4

*Boles v. Colorado Dept. of Corr.,* 2023 WL 1463248 (10th Cir. Feb. 2, 2023)......................... 6

*Church of Scientology of California v. United States,* 506 U.S. 9 (1992*)* ................................10

*Cole v. Goossen*, 402 F.Supp.3d 992 (D. Kan. 2019)................................................................. 8

*Conestoga Wood Specialties Corp. v. Secretary of U.S. Dept. of Health and Human Services,*
2013 WL 1277419 (3d Cir. Feb. 8, 2013) ……………………………………..…………1,3,11

*Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351 (3d Cir. 1980)..................... 9

*E.E.O.C. v. Quad/Graphics, Inc.*, 875 F.Supp. 558 (E.D. Wis. 1995) ......................................10

*EEOC v. AAM, Inc.*, No. 24-1672 (2d Cir. Dec. 4, 2024) ......................................................... 1

*EEOC v. Shell Oil,* 466 U.S. 54 (1984)................................................................................. 5, 11

*EEOC v. The Trustees of the University of Pa.,* 2026 WL 885480 (E.D. Pa. Mar. 31, 2026) …3,
......................................................................................................................................5, 7,11

*Elrod v. Burns,* 427 U.S. 347 (1976)......................................................................................... 8

*Equal Employment Opportunity Commission v. FedEx Corporation*, 2007 WL 9734298 (D. Az.
Oct. 5, 2007) ........................................................................................................................10

*Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 118 (3d Cir. 1987)
........................................................................................................................................ 9

*Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016)................................................................... 8

*Hohe v. Casey*, 868 F.2d 69 (3d Cir. 1989) .............................................................................. 8

*In re City of Chester, Pennsylvania,* 2026 WL 607528 (E.D. Pa. Mar. 3, 2026) ........................ 9

*In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015) …………………………………………..2, 3

*In re World Imports Ltd.*, 820 F.3d 576 (3d Cir. 2016)............................................................10

*K.A. ex rel. Ayers v. Pocono Mountain School Dist.,* 710 F.3d 99 (3d Cir. 2013), ..................... 8

*Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch,* 100 Fed. App'x. 70 (3d Cir. May
28, 2004) ............................................................................................................................. 6

*Matter of Subpoena 2018R00776,*  947 F.3d 148 (3d Cir. Jan. 10, 2020) ………………………..7

*McLane Co., Inc. v. EEOC*, 581 U.S. 72 (2017) .............................................................3, 5, 6

*Nken v. Holder*, 556 U.S. 418 (2009).. ..................................................................................2, 11

*R & L Limited Investments, Inc. v. Cabot Investment Properties, LLC.,* 2010 WL 3789401(D. Az.
Sept. 20, 2010) ....................................................................................................................12

*Republic of Philippines v. Westinghouse Elec. Corp.,* 949 F.2d 653 (3d Cir. 1991).................... 2

*Taylor v. Oney*, 2006 WL 2466078 (3d Cir. Aug. 24, 2006) ..................................................... 6

*University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990)……………………………………5, 6

*Volkswagen Group of America, Inc. v. Saul Chevrolet, Inc. dba Cardinaleway Volkswagen,* 2015 WL 5680317 (C.D. Cal. Sept. 25, 2015)......................................................................12

**Statutes**

42 U.S.C. § 2000e-8(e).................................................................................................. 9

**Introduction**

Intervenors once again recite a parade of horribles  --- violations of "academic freedom, association, speech, and religious liberty of thousands of employees at one of the Nation's preeminent universities" were Penn to provide personal contact information for witnesses to and victims of an antisemitic hostile work environment alleged in the Commissioner's charge by the Court's deadline of May 1, 2026. Memorandum of Law in Support of Intervenors' Motion for Stay Pending Appeal ("Intervenors' brief") at 2. Their arguments for a stay focus solely on "faculty and student organizations whose members' personal information is at issue in the subpoena, and who objected to the collection and disclosure of that personal information to the federal government," i.e. items 2 and 3 of the subpoena. Accordingly, EEOC responds solely to those arguments, which are no more compelling now than they were throughout the briefing of this matter. And having failed to make any argument except as to items 2 and 3, Intervenors have not even attempted to carry their heavy burden with respect to the remaining subpoena requests and therefore are precluded from showing entitlement to a stay as to those items. But given that the arguments Intervenors do present on items 2 and 3 also fail to carry their burden, Intervenors' Motion for Stay should be denied in its entirety.[1]

**Argument**

A.  Legal Standard Governing Stays Pending Appeal

As the Third Circuit has emphasized,  "[A] motion for a stay pending appeal … in our Court, is an extraordinary remedy." *Conestoga Wood Specialties Corp. v. Secretary of U.S. Dept.*

---

[1] For the reasons discussed below, EEOC also opposes a stay from this Court in order to allow Intervenors to seek a stay from the Third Circuit.  Moreover, the stay standard does not change—if Intervenors cannot show entitlement to a stay in this Court, there is no basis to think the Third Circuit would reach a different conclusion. *See, e.g.,* Exhibit 1, *EEOC v. AAM, Inc.*, No. 24-1672 (2d Cir. Dec. 4, 2024) (unpublished order denying stay).

*of Health and Human Services,* 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013). A stay pending

appeal "is not a matter of right, even if irreparable injury might otherwise result to the appellant."

*Nken v. Holder*, 556 U.S. 418, 427 (2009) (citation omitted). Instead, a stay is "an exercise of

judicial discretion, and the propriety of its issue is dependent upon the circumstances of the

particular case." *Id.* at 433 (quotations and alterations omitted). As the party requesting a stay,

Intervenors "bear[] the burden of showing that the circumstances justify an exercise of that

discretion." *Id.* at 434.

> Courts consider four factors in assessing a motion for stay pending appeal:
>
> > (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Republic of Philippines v. Westinghouse Elec. Corp.,* 949 F.2d 653, 658 (3d Cir. 1991). The third

and fourth factors "merge when the Government is the opposing party," as is the case here. *Nken*,

556 U.S. at 435. While the "first two factors are the most critical . . . . [i]t is not enough that the

chance of success on the merits be 'better than negligible.'" *Nken*, 556 U.S. at 434. Rather, the

standard always requires "a strong showing that [the stay applicant] is likely to succeed on the

merits." *Id.* at 426. Critically, "'if the chance of success on the merits [is only] better than

negligible' and the 'possibility of irreparable injury' is low, a stay movant's request fails." *In re*

*Revel AC, Inc.*, 802 F.3d 558, 570 (3d Cir. 2015) (quoting *Nken,* 556 U.S. at 434). Conversely,

"even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to

the [stay opponent] if a stay is granted, [it] is still required to show, at a minimum, 'serious

questions going to the merits.'" *In re Revel AC, Inc.*, 802 F.3d at 570. "[I]f the movant does not

make the requisite showings on either of these [first] two factors, the [ ] inquiry into the balance

2

of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis." *Id.* at 571 (citation omitted).

Likening stays to preliminary injunctions, the Third Circuit has noted that

> [s]uch stays are rarely granted, because in our Court the bar is set particularly high. Indeed, we have said that an "injunction shall issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." ... In other words, "[A] plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate."

*Conestoga Wood Specialties Corp.,* 2013 WL 1277419, at *1 (citations omitted).

Whether the first two factors dominate the stay analysis, as in *Conestoga Wood*, or whether the sliding scale analysis is used, as in *In re Revel AC, Inc.,* Intervenors have failed to show that they are entitled to a stay.

  B. Intervenors Fail To Satisfy *Any* Factor Warranting Denial Of A Stay.

   1. Intervenors Have Failed To Make A Strong Showing That They Are Likely To Succeed On The Merits.

Intervenors cannot show that the application of established precedents to the facts here creates novel issues, and "a district court's decision to enforce an EEOC subpoena [is] reviewed for abuse of discretion, not *de novo*." *McLane Co., Inc. v. EEOC*, 581 U.S. 72, 85 (2017). Trying to lessen its burden on "the likelihood of success" factor, Intervenors argue the wrong standard of review – "need not be more likely than not" (Intervenors' brief at 6) and "significantly better than negligible" (*id.*) -- characterizing their arguments against subpoena enforcement as "serious constitutional questions" which demand *de novo* review. *Id.* at 5. But this case does not present serious, novel constitutional questions, or as this Court correctly observed, "the constitutional claims are easily dispensed with." *EEOC v. The Trustees of the University of Pa.,* 2026 WL 885480, at *3 (E.D. Pa. Mar. 31, 2026).

The Court allowed Penn's and Intervenors' seven submissions, [2] followed by a hearing lasting three and one-half hours, and then considered and correctly rejected their arguments. Intervenors' Motion for Stay reargues the same matters without demonstrating any basis for expecting a different outcome on appeal. As noted by one court within this Circuit,

> Defendant has provided the Court with no showing that error was committed in resolving this case. Defendant presents no new arguments as to why the summary judgment granted by the Court against defendant was improper. From the pleadings currently before the Court, it can only be assumed that defendant intends to base his appeal on the same arguments which this Court considered and rejected when summary judgment was granted in plaintiff's favor against the defendant. Those arguments possess no more merit now then [sic] they did previously. Defendant has failed to make a strong showing that he will succeed on appeal.

*Bank of Nova Scotia v. Pemberton*, 964 F. Supp. 189, 191 (D.V.I. 1997).

Items 2 and 3 of the subpoena [3] are self-explanatory and focus on members of the Jewish Studies Department and Jewish affinity organizations. Membership in this academic department

---

[2] ECF 014-1, ECF 020, ECF 021, ECF 035, ECF 044-1, ECF 046, ECF 050-1 (the latter submitted after oral argument).

[3] <u>Subpoena Item 2</u>: Produce a list of all clubs, groups, organizations and recreation groups (hereinafter referred to as "organizations") related to the Jewish religion, faith, ancestry/National Origin. For each organization listed, produce the following information:
   a. Name of organization;
   b. Indicate if the organization is run by employees and/or volunteers;
   c. Identify the organization Point of Contact by first and last name;
   d. Produce the organizations Point of Contact's contact information to include phone number, email address and mailing address;
   e. Produce a roster of organization members. For each member listed, indicate if they are a University employee or volunteer;
   f. For employees identified on the roster, produce their last known contact information to include personal phone number, email address and mailing address; and,
   g. Produce the organization's website, if applicable.
<u>Subpoena Item 3</u>: Produce a list of employees in the Jewish Studies Program at the University of Pennsylvania department during the period of November 1, 2022, to the present. For each employee listed, produce the following information:
   a. First and last name;
   b. Position title;
   c. Dates of employment;
   d. Location/campus; and,

4

or these affinity organizations are not necessarily confined to Jews. Such requests are reasonable and appropriately tailored to an investigation into antisemitic workplace harassment. These facts notwithstanding, Intervenors described the items sought from items 2 and 3 as a "list of Jews" (ECF 14-6 ¶ 12; ECF 14-7 ¶ 10, ECF 41-3, ¶12), "cataloguing Jews" (ECF 41-3 ¶12), and "a registry of Jews" (ECF 14-6 ¶12). Such rhetoric certainly "raised the … temperature," *EEOC v. The Trustees of the University of Pa.,* 2026 WL 885480, at *1, but did not enhance the merits of Intervenors' position.  Moreover, consistent with EEOC's representation that the EEOC did not need associational information for individuals, the Court did not require disclosure of any individual's association with any Jewish affinity groups. *Id.* And as the Court observed, "[A] subpoena's mere reference to religion does not mean it classifies based on religion." *Id.* at *14. On their face, items 2 and 3 are wholly appropriate requests in line with the Supreme Court's subpoena enforcement authority in *EEOC v. Shell Oil,* 466 U.S. 54, 76-77 (1984), *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990), and *McLane Co., Inc. v. EEOC,* 581 U.S. 72 (2017), cases that Intervenors have failed to address.

Intervenors cannot transform non-meritorious claims into meritorious constitutional arguments evidencing "concrete fears of harassment, doxxing, retaliation, and threats, and chilling of their First Amendment rights" (Intervenors' brief at 4) sufficient to show a likelihood of success on appeal, when its representations are nothing more than conclusory and speculative assertions of harm. *See, e.g.,* ECF 40-1 ¶10; ECF 41-3, ¶¶ 11, 16; ECF 14-4 ¶10; ECF 14-5 ¶¶ 10, 11; ECF 14-7, ¶7. Speculation of potential future harm to non-identified individuals or conclusory subjective concerns about uncertain and attenuated effects untethered from any

---

e. Last known contact information to include personal email address, phone number and mailing address.

concrete evidence is insufficient for a viable constitutional claim, and absent evidentiary support, Intervenors' argument is untenable. *See University of Pennsylvania v. EEOC*, 493 U.S. at 200 (rejecting Penn's First Amendment claims for "being remote and attenuated, [and] the injury to academic freedom claimed by petitioner is also speculative.")

At bottom, subpoena enforcement actions are analyzed for abuse of discretion, (*see McLane Co., Inc. v. EEOC*, 581 U.S. at 85), and characterizing the requests as constitutionally suspect, absent evidentiary support, should not alter that standard of review. But even if Intervenors' baseless First Amendment claims were analyzed *de novo*, their failure to produce any supporting evidence is fatal to their likelihood of success on the merits. *See, e.g., Taylor v. Oney*, 2006 WL 2466078,  at *2 (3d Cir. Aug. 24, 2006) (lower court's dismissal of First Amendment claims upheld as plaintiff "points to no record support for any of these conclusory allegations"); *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch,* 100 Fed. App'x. 70, 77-78 (3d Cir. May 28, 2004) ("On the basis of the record which was available to the District Court when it decided this Motion for Preliminary Injunction, there simply was no basis for the District Court to have concluded that the Mission had a likelihood of success on … its facial challenges under the First Amendment …."); *Boles v. Colorado Dept. of Corr.,* 2023 WL 1463248, at *5 (10th Cir. Feb. 2, 2023) ("The magistrate judge found Mr. Boles's general allegations to be unsupported and insufficient to show likelihood of success on the merits. In particular, the magistrate judge observed that Mr. Boles offered no evidence to support his [First Amendment] claim other than his own affidavit, which was conclusory").

Nor are Intervenors' chances of success on the merits elevated by their reliance on the Court's recognition that "judges have taken different views on how to read [*Americans for Prosperity Foundation v.*] *Bonta*, [594 U.S. 595 (2021)]." Intervenors' brief at 6. But this

6

statement was in the context of the appropriate level of scrutiny that applies and this Court found

that even applying the harder showing for the government, the EEOC satisfied it. *See EEOC v.*

*The Trustees of the University of Pa.,* 2026 WL 885480 at \*11. This cannot serve as a basis on

which Intervenors have a likelihood of success on appeal because this Court assumed that

Intervenors' preferred standard applied. Moreover, unlike the Intervenors, *Bonta* relied on actual

evidence of associational harm:

> [T]he court found that the petitioners had suffered from threats and harassment in the past, and that donors were likely to face similar retaliation in the future if their affiliations became publicly known. For example, the CEO of the Foundation testified that a technology contractor working at the Foundation's headquarters had posted online that he was "inside the belly of the beast" and "could easily walk into [the CEO's] office and slit his throat." And the Law Center introduced evidence that it had received "threats, harassing calls, intimidating and obscene emails, and even pornographic letters."

*Id.* at 604 (citations omitted). Applying the exacting scrutiny standard championed by

Intervenors*,* this Court correctly found that the EEOC subpoena was narrowly tailored, consistent

with *Bonta*'s suggestion that issuing a subpoena was an example of narrow tailoring. *See id.* at

597.

Nor do Intervenors' other proposed bases for showing a likelihood of success on appeal

fare better. Intervenors' First Amendment case law relating to political speech, religious free

exercise, and equal protection is inapplicable and highly distinguishable. *Matter of Subpoena*

*2018R00776,* 947 F.3d 148 (3d Cir. Jan. 10, 2020), which employed *de novo* review, addresses

First Amendment implications associated with restraining a grand jury witness from disclosing

the witness's receipt of service to a third party, a far cry from the routine EEOC subpoena

enforcement action here. Intervenors' additional cases at page 6 on narrow tailoring have been

argued earlier at ECF 21 at pages 10, 14, 17, 18, responded to by EEOC at ECF 43 at pages 6, 8,

and 9, and need not be reargued—Intervenors' conclusory citations provide no grounds to think

that the Third Circuit would analyze the issue any different than this Court. Whether reviewing the Court's opinion under a *de novo* or abuse of discretion standard, Intervenors' showing of a likelihood of success on the merits fails.

> 2.    Intervenors Have Demonstrated No Irreparable Harm Absent A Stay.[4]

Notwithstanding the well-established principle that the loss of First Amendment freedoms presumes irreparable injury, *Elrod v. Burns,* 427 U.S. 347, 373 (1976); *K.A. ex rel. Ayers v. Pocono Mountain School Dist.,* 710 F.3d 99 (3d Cir. 2013), the Third Circuit recognizes that "the assertion of First Amendment rights does not automatically require a finding of irreparable injury." *Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989). In fact, *Hohe*, reviewing for abuse of discretion, noted that "Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction." *Id.* at 73 (citation omitted). *See also Google, Inc. v. Hood*, 822 F.3d 212, 228 (5th Cir. 2016) ("[I]nvocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury."). "[G]iven that Plaintiffs have not established a likelihood of success on the merits of their First Amendment claim, the presumption of injury does not apply. In other words, there is no presumption of irreparable harm for the loss of First Amendment freedoms where Plaintiffs have not shown a First Amendment violation." *Cole v. Goossen*, 402 F.Supp.3d 992, 1019 (D. Kan. 2019).

That Penn has been ordered to turn over information to EEOC without any associational information included—just names and contact information—cannot constitute a showing of harm

---

[4] Intervenors represented as a necessary legal requirement for intervention that their interests, protecting their members, and Penn's interests, protecting the university, diverge (ECF-14-1, at 13-15).  For this reason and consistent with the standards for a moving party to obtain a stay by showing irreparable harm to the moving party, Intervenors' allegations of constitutional harm to its members are not aligned with Penn's claim that it will suffer irreparable harm, a claim wholly unsupported by any evidence. EEOC addresses below why Intervenors cannot make a showing of irreparable harm based on alleged constitutional injury and why Intervenors' declarations do not provide the requisite evidentiary showing.

from infringement of associational rights. "A plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'" *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (quoting *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir. 1980)). Nor does turning over this information without associational information necessarily reveal any pedigree information about the employee—as noted above, members of the groups identified in subpoena items 2 and 3 may not necessarily be Jewish individuals. And Intervenors' continued refusal to acknowledge EEOC's statutory mandate to keep confidential all investigative material further dooms their showing of irreparable harm. *See* 42 U.S.C. § 2000e-8(e) (prohibiting EEOC from disclosing investigative information and imposing criminal penalties for disclosure). "Safeguards against disclosure of private material have been held to be adequate when there exists a statutory penalty for unauthorized disclosures … ." *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 118 (3d Cir. 1987).

Nor is EEOC burdening any exercise of religion—the subpoena does not in any way prohibit a religious practice or gathering. And speculation about potential attenuated effects as a result of Penn's compliance, such as individuals being less likely to gather for religious exercise or join Jewish associational groups, is not sufficient to establish irreparable harm. *See. e.g., Acierno v. New Castle Cty.,* 40 F.3d 645 (3d Cir.1994) (injunction case explaining that the "possibility of a remote future injury" cannot satisfy irreparable harm burden).

Also not persuasive is Intervenors' argument that disclosure of the information at issue will be "final and irrevocable." Intervenors' brief at 7. The contact information sought is not inherently sensitive; the Court likened it to the contents of a phone book (Tr. at 112). As such, it is far unlike the "confidential, proprietary, or statutorily protected information" at issue in *In re City of Chester, Pennsylvania,* 2026 WL 607528, at \*9 (E.D. Pa. Mar. 3, 2026), a Title 9

9

bankruptcy matter, relied upon by Intervenors. Because the information here is not sensitive, that alone should end this analysis. Moreover, Intervenors' authority for granting a stay is flawed. In *Equal Employment Opportunity Commission v. FedEx Corporation*, 2007 WL 9734298 (D. Az. Oct. 5, 2007), the court summarily concluded that compliance with the subpoena would moot the appeal. So too, in *E.E.O.C. v. Quad/Graphics, Inc.*, 875 F. Supp. 558 (E.D. Wis. 1995), the court allowed a stay and in a perfunctory manner, decided that the employer's compliance with the subpoena would "make the appeal academic." *Id.* at 560. Neither court considered other measures, discussed below, which would mitigate against mootness.

In fact, denying Intervenors' requested stay will not moot their appeal because, if Penn and Intervenors prevail, the Court can still order EEOC to destroy the subpoenaed materials.

> [A]n appeal is moot in the constitutional sense only if events have taken place during the pendency of the appeal that make it impossible for the court to grant any effectual relief whatsoever. An appeal is not moot merely because a court cannot restore the parties to the *status quo ante.* Rather, when a court can fashion some form of meaningful relief, even if it only partially redresses the grievances of the prevailing party, the appeal is not moot.

*In re World Imports Ltd.*, 820 F.3d 576, 582 (3d Cir. 2016) (citation omitted); *see also Church of Scientology of California v. United States,* 506 U.S. 9, 12 (1992*).* Because EEOC is statutorily required to maintain any information produced by Penn in response to the subpoena as confidential, the Third Circuit can still order EEOC to return or destroy the material. As in *Church of Scientology*, even though the Court cannot "withdraw all knowledge or information that" EEOC investigators "may have acquired by examination of the" material, Intervenors' appeal would not be moot because the Court has the "power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession." *Id.* at 13. Accordingly, Intervenors' mootness argument fails.

10

3.    The Public Interest Favors Permitting the Commission to Investigate Allegations of Antisemitic Harassment in Penn's Workplace.

As noted earlier, when the government opposes a stay pending appeal, courts analyze the "harm to the opposing party and the public interest" factors together. *See Nken*, 556 U.S. at 435. In considering whether to grant a stay, the Court should only weigh the public interest after the moving party has established a strong likelihood of success on the merits and irreparable injury. *See id.* Because Intervenors have not established either factor, it is not necessary for the Court to even consider whether the public interest favors permitting Penn to continue to delay EEOC's ability to investigate allegations of antisemitic harassment in its workplace. *Conestoga Wood Specialties Corp.,* 2013 WL 1277419, at *3 ("[B]ecause Plaintiffs failed to prove their likelihood of success on the merits, we DENY their request for extraordinary relief").

Nevertheless, public interest considerations strongly favor the EEOC, the federal agency responsible for enforcing federal laws prohibiting employment discrimination. *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 69 (1984) ("it is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired"). Here, EEOC is investigating a Commissioner's charge alleging antisemitic harassment throughout Penn's workplace. *See* ECF 1-4. As this Court recognized, the subpoenaed information stems from a valid charge, *EEOC v. The Trustees of the University of Pa.,* 2026 WL 885480 at *5, seeks contact information of "employees [] reasonably likely to have information relevant to whether Penn subjected Jewish employees to religious discrimination," and is not unduly burdensome. *Id.* at *7. The Court carefully analyzed and rejected Intervenors' constitutional objections, and, consistent with EEOC's representation that it did not need associational information for individuals, did not require disclosure of any individual's association with any Jewish affinity groups. *Id.* at *1.

11

EEOC, investigating and litigating on behalf of the public interest, is seriously compromised when it cannot perform its functions efficiently and timely. Were this matter stayed through an appeal, memories fade, witnesses and victims leave the organization, and potential harassing behavior persists. *See, e.g., Volkswagen Group of America, Inc. v. Saul Chevrolet, Inc. dba Cardinaleway Volkswagen,* 2015 WL 5680317, at \*4 (C.D. Cal. Sept. 25, 2015). ("'Witnesses relocate, memories fade, and persons allegedly aggrieved are unable to seek vindication or redress for indefinite periods of time on end.'") (citation omitted); *R & L Limited Investments, Inc. v. Cabot Investment Properties, LLC.,* 2010 WL 3789401, at \*2 (D. Ariz. Sept. 20, 2010) ("delay would risk 'fading memories' and lost evidence," supporting finding of substantial injury to other party). To the extent Intervenors make an unfounded suggestion that EEOC did not pursue this charge for a year plus, Penn's own evidence proves this untrue, demonstrating that investigatory steps were underway prior to engagement with Penn about requests for information and the ultimate subpoena for the information. *See* ECF No. 20-3. As this Court has explained, Intervenors (and Penn for that matter) do not get to dictate what evidence is necessary for the EEOC to collect to conduct its investigation.

Intervenors' suggestion that "University employees are free to engage with the EEOC directly if they wish" (Intervenors' brief at 9) overlooks the fact that EEOC has the affirmative right and obligation to reach out directly to individuals who might have relevant information and need not wait for witnesses and victims to come forward. There is tremendous waste of government resources associated with starting and then pausing an investigation, and then someday restarting it, which serves neither EEOC, the public, nor Penn. Were the subpoenaed matters disclosed to EEOC, the investigation could seamlessly continue to conclusion. In the absence of a finding of discrimination, Penn could move on. If there is a finding of

12

discrimination, the parties could work to ameliorate the problems. Indeed, it is in everyone's

interest to deny the stay and allow EEOC to perform its law enforcement functions.

### Conclusion

For the reasons discussed above, EEOC respectfully requests that the Court deny

Intervenors' Motion for Stay Pending Appeal.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
/s/_____
DEBRA M. LAWRENCE
Regional Attorney
Philadelphia District Office
31 Hopkins Pl., Suite 1432
Baltimore, MD 21201
410 801-6691
Debra.lawrence@eeoc.gov

### CERTIFICATE OF SERVICE

I hereby certify that the above-referenced document was served this 22nd day of April,

2026 via ECF to all counsel of record.

/s/_____
Debra M. Lawrence

13